UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HYDROXYCUT MARKETING AND SALES PRACTICES LITIGATION | Case No. 09-MD-2087 BTM (AJB) |
| FLOR E. MENDOZA and RENE MENDOZA,<br><br>Plaintiffs,<br><br>v.<br><br>IOVATE HEALTH SCIENCES USA, INC., IOVATE HEALTH SCIENCES INTERNATIONAL, INC., IOVATE HEALTH SCIENCES GROUP, INC. (N/K/A KERR INVESTMENT HOLDING CORP.), IOVATE HEALTH SCIENCES RESEARCH, INC., IOVATE HC 2005 FORMULATIONS, LTD. (N/K/A HDM FORMULATIONS, LTD.), MUSCLETECH RESEARCH AND DEVELOPMENT, INC. (N/K/A HDM FORMULATIONS, LTD.), and WAL-MART STORES, INC., | Civil No. 09 CV 3415<br>(Transferred from the Northern District of Illinois)<br><br>**SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

NOW COME the plaintiffs, Flor E. Mendoza and Rene Mendoza, by their attorneys, Kreisman Law Offices, and complain against the defendants, and each of them, IOVATE HEALTH SCIENCES USA, INC., IOVATE HEALTH SCIENCES INTERNATIONAL, INC., IOVATE HEALTH SCIENCES GROUP, INC. (N/K/A KERR INVESTMENT HOLDING CORP.), IOVATE HEALTH SCIENCES RESEARCH, INC., IOVATE HC 2005 FORMULATIONS, LTD. (N/K/A HDM FORUMULATIONS, LTD.), MUSCLETECH RESEARCH AND DEVELOPMENT, INC. (N/K/A HDM FORMULATIONS, LTD.) (hereinafter "Product Defendants"), and WAL-MART STORES, INC., (hereinafter "Wal-Mart"), as follows:

## NATURE OF THE CASE

1. This action seeks damages suffered by Plaintiffs, Flor E. Mendoza and Rene Mendoza, as a direct and proximate result of the wrongful conduct of the Product Defendants and Wal-Mart in connection with the design, development, testing, quality assurance, manufacturing, labeling, warning, packaging, marketing, advertising, promotion, supply, distribution, post-market monitoring and/or surveillance, sale, and recall of its Hydroxycut weight loss products ("Hydroxycut Products").

2. Product Defendants have marketed, distributed and sold a number of over-the-counter Hydroxycut Products for weight loss and as fat burners under the brand names "Iovate" and "MuscleTech".

3. The products include, but are not limited to:

a. Hydroxycut Regular Rapid Release Caplets;
b. Hydroxycut Caffeine-Free Rapid Release Caplets;
c. Hydroxycut Hardcore Liquid Caplets;
d. Hydroxycut Max Liquid Caplets;
e. Hydroxycut Regular Drink Packets;
f. Hydroxycut Caffeine-Free Drink Packets;
g. Hydroxycut Hardcore Drink Packets (Ignition Stix);
h. Hydroxycut Max Drink Packets;
i. Hydroxycut Liquid Shots;
j. Hydroxycut Hardcore RTDs (Ready-to-Drink);
k. Hydroxycut Max Aqua Shed;
l. Hydroxycut24;
m. Hydroxycut Carb Control; and
n. Hydroxycut Natural.

## INTRODUCTION

4. Plaintiffs Flor E. Mendoza and Rene Mendoza, husband and wife, (hereinafter "Plaintiff" or "Plaintiffs") are and were at all times relevant residents of the City of Aurora, State of Illinois. Plaintiff Flor E. Mendoza used Hydroxycut Products manufactured by the Product Defendants and purchased at a Chicago area Wal-Mart

store which gave rise to severe injuries. As a direct and proximate result of using Hydroxycut Products, Plaintiff Flor E. Mendoza suffered liver injuries, resulting in the injuries and damages set forth herein.

5. Iovate Health Sciences USA, Inc. is a Delaware corporation with its principal place of business at 3880 Jeffrey Blvd., Buffalo, NY 14219.

6. Iovate Health Sciences International, Inc. is a foreign corporation with its principal place of business located at 381 North Service Road West, Oakville, Ontario, Canada L6M-0H4.

7. Iovate Health Sciences Group, Inc. (n/k/a Kerr Investment Holding Corp.) is a foreign corporation with its principal place of business at 381 North Service Road West, Oakville, Ontario, Canada L6M-0H4.

8. Iovate Health Sciences Research, Inc. is a foreign corporation with its principal place of business located at 381 North Service Road West, Oakville, Ontario, Canada L6M-0H4.

9. Iovate HC 2005 Formulations Ltd. (n/k/a HDM Formulations, Inc.) is a foreign corporation with its principal place of business located at 381 North Service Road West, Oakville, Ontario, Canada L6M-0H4.

10. MuscleTech Research and Development, Inc. (n/k/a HDM Formulations, Inc.) is a foreign corporation with its principal place of business located at 7050 Telford Way, Mississauga, Ontario, Canada L5S-1B7 and in the United States in Buffalo, New York.

11. The above mentioned companies, the Product Defendants, are named as Defendants herein.

12. Defendant Wal-Mart Stores, Inc ("Wal-Mart") (NYSE: WMT), is a Delaware corporation with its principal place of business located at 702 SW 8th St., Bentonville, Arkansas 72716. Wal-Mart is one of the world's largest retailers with $401 billion in sales for the 2008 fiscal year. Wal-Mart operates Wal-Mart Discount Stores, Wal-Mart Supercenters, Sam's Club Warehouse Stores, Neighborhood Markets, walmartstores.com and walmart.com. During all times mentioned herein, Wal-Mart promoted, marketed and sold Hydroxycut-branded products throughout the United States.

13. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, that the employees of Product Defendants and Wal-Mart, their subsidiaries, affiliates and other related entities, were the agents, servants, and employees of the Product Defendants and Wal-Mart and at all times herein mentioned, each was acting within the purpose of scope of said agency and employment. Whenever reference in this complaint is made to any act or transaction of any defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or other representatives of said Product Defendants and Wal-Mart committed, knew of, performed, authorized, ratified, and/or directed such act or transaction on behalf of said Product Defendants and Wal-Mart, while actively engaged in the scope of their duties.

14. Defendant Iovate Health Sciences Group, Inc. n/k/a Kerr Investment Holding Corporation ("Iovate Group") is a Canadian corporation headquartered in Oakville, Ontario, Canada. The decisions, acts and omissions alleged were conceived by, implemented, and at all times carried out by Product Defendants. Product

Defendants were the co-participants in all of the conduct and omissions alleged. Product Defendants and subsidiaries include, Iovate Health Sciences, Inc., Iovate Health Sciences Research, Inc., Iovate Health Sciences International, inc., Iovate Health Sciences U.S.A., Inc., Iovate Health Sciences Capital, Inc. and Iovate Copyright, Inc.

15. The Paul Gardiner Family Trust owns all of the common shares of Product Defendants. Paul Gardiner was during the relevant time period President and Chief Executive Officer of Product Defendants and other Iovate subsidiaries. Product Defendants also paid for the Product Defendants' defense costs in connection with the United States class action litigation entitled *In Re: Ephedra Products Liability Litigation*, Case no. 1:04-md-01598-JSR (S.D.N.Y.). Furthermore, in connection with prior Hydroxycut-related litigation and at the request of MuscleTech Research and Development, Inc., and a former Iovate-related entity, RSM Richter, Inc., became the Court-appointed monitor of MuscleTech and other Product Defendants entities. According to the first monitor report of RSM Richter, Dated January 23, 2006:

> [A]ll new product formulations (the inventory and intellectual property, excluding the Ephedra or Prhormones Products), including the business functions related thereto were purchased and continued by Iovate Health Sciences Group, Inc. ("Iovate") and its subsidiaries. Iovate was inactive prior to this transaction[.]
>
> As part of and following the transaction noted above, [MuscleTech] and Iovate entered into license agreements (the "License Agreements"), which *inter alia*, set forth (a) the royalties to apply to products sold by Iovate based on [MuscleTech] formulations; (b) the business activities Iovate would assume on behalf of [MuscleTech], (c) indemnity provisions and other terms[.]

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs. Jurisdiction is based on diversity of citizenship, and because plaintiffs are citizens and residents of Illinois and none of the defendants have their headquarters or principal places of business in Illinois.

17. This court has personal jurisdiction over Defendants because they are authorized to do business and to conduct business in Illinois, they have specifically marketed and sold the Products in Illinois, and have sufficient minimum contacts with this state and/or sufficiently avail themselves to the markets of this state through their promotion, sales and marketing within this state to render the exercise of jurisdiction by this Court permissible.

18. Defendants derive substantial revenue from the State of Illinois from interstate commerce.

19. Defendants have each done substantial business in each state in the United States, including Illinois.

20. The acts of the Defendants as set forth below caused the Plaintiffs' injuries in Illinois.

21. Plaintiffs in the transferred actions reserve their rights of remand to the district from which they were transferred at or before the conclusion of the pre-trial proceedings. *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

## FACTUAL ALLEGATIONS

22. The Product Defendants are in the business of formulating, designing, manufacturing, marketing, and advertising, distributing and selling various dietary supplements including muscle builders and fat burners/thermogenics.

23. Said products are sold at retail stores, such as Wal-Mart, throughout the United States, including Illinois.

24. In 2008, at least 9 million packages of Hydroxycut Products were sold in this country.

25. Wal-Mart operates retail stores that among other things are engaged in the retail sale of prescription and non-prescription drugs, and general merchandise. Wal-Mart also sells merchandise via a proprietary website which may be accessed by consumers nationwide. Wal-Mart markets, advertises and sells Hydroxycut Products in its stores and on its website.

### I. Obesity and Diet Supplements

26. Obesity has become an increasingly important public health problem in the United States. Recent data shows that more than 30% of adults are obese and 65% overweight.

27. The use of dietary supplements for weight loss has become increasingly popular, as reflected by the $55.4 billion spent in United States in 2006 for weight loss and diet control. Based on a study by the National Center for Complimentary and Alternative Medicine (NCCAM), 36% of adults are using some form of complimentary or alternative medicine, which rises to 62% when including megavitamins or prayer.

28. Although dietary and herbal supplements are governed under the DSHEA (Dietary Supplements Health and Education Act) of 1994, they are not presently regulated by the US Food and Drug Administration, and the safety profiles of many are unknown.

**II. Hydroxycut**

29. Hydroxycut is the brand name of some of America's top-selling weight-loss products which are taken by millions of consumers each year.

30. Hydroxycut is a Registered Trademark and is part of the name of many products, examples of which include Hydroxycut, Hydroxycut Hardcore, and Hydroxycut Caffeine Free. Iovate and MuscleTech, a company owned by Iovate, both market Hydroxycut Products.

31. Hydroxycut has been marketed by Iovate Health Sciences, Inc. (381 North Service Rd. W., Oakville, ON L6M 0H4, Canada) and manufactured by MuscleTech (Blassdell, NY, USA and Mississauga, Ontario, Canada) as a weight control, fat-burner, and energy enhancement dietary supplement. Hydroxycut Products bear the Iovate or MuscleTech brand names. In the United States, Hydroxycut Products are distributed by Iovate Health Sciences USA, Inc., of Blasdell, New York.

32. The products contain a variety of individual ingredients as well as numerous proprietary blends such as "Hydroxagen Plus, Hydroxy Tea, HydroxyTea CF, Hydroxycut Proprietary Blend, Max! Liqui-Burn, Max! Weight-Loss Matrix, Hydroxycut Hardcore Proprietary Blend Proxyclene, Noreidrol Intensity Focus Blend, Lasidrate Delivery Blend, or Yohimbacore."

## III. Reports of Hydroxycut-Related Injuries

33. In 2002, the Center for Food Safety and Applied Nutrition's (CFSAN) adverse event reporting system, CAERS, began receiving reports of liver-related illnesses in persons who reported consuming the dietary supplement Hydroxycut capsules/caplets for periods ranging from as short as a week to two (2) months. Since the earlier formulation of Hydroxycut contained ephedra, it was generally believed that the reports of liver injury associated with the use of the product were due either to ephedra or a combination of the ingredients found in the product. However, following the removal of ephedra from Hydroxycut capsules/caplets, CFSAN continued to receive reports of liver injury associated with the use of Hydroxycut capsules/caplets. In addition, CFSAN became aware of reports of Hydroxycut-associated liver toxicity published in peer-reviewed literature and received communications from independent hepatologists regarding cases of liver toxicity associated with the use of the Hydroxycut capsules/caplets.

***Hydroxycut-associated liver toxicity reports in CAERS.***

34. The FDA reports that 23 case reports of Hydroxycut-associated liver toxicity have been identified in CAERS for the period 2002 through 2008.

35. For cases in which gender was known, 15 (65%) were female. Ages ranged from 20 years to 51 years (median = 29 years). Sixteen cases (70%) were hospitalized. The majority of cases reported no underlying risk factors for liver disease (e.g., no history of viral hepatitis, no HIV infection, no autoimmune diseases). Although the reports vary in detail, several reports describe work-ups that ruled out infectious, autoimmune, and metabolic causes of liver disease. The severity of illness ranged from

asymptomatic elevations in serum bilirubin to acute liver failure (one patient received a liver transplant in 2002, a second patient was reportedly waiting for a liver transplant in 2004) to one death.

***Reports of Hydroxycut-associated liver toxicity in the peer-reviewed literature.***

36. The FDA indicates that it was aware of four published reports in the peer-reviewed literature that describe liver disease that occurred in six persons following the consumption of Hydroxycut capsules/caplets.

37. The FDA reports that the aforementioned cases are consistent with the diagnosis of idiosyncratic hepatotoxicity for a number of reasons: the temporal relationship between the consumption of Hydroxycut capsules/caplets and the development of acute liver injury in persons who had no history of known liver disease; the exclusion of other causes of liver disease following extensive work-ups; the resolution of liver injury upon discontinuation of Hydroxycut capsules/caplets; and the development of liver injury is not dose dependent. Also apparent were two distinct patterns of liver injury: cholestatic and necrotic. It is not unusual for a single herbal preparation to produce more than one type of clinicopathologic liver injury.

***Discussions with hepatologists.***

38. The FDA reported findings from discussions in March and April 2009 with hepatologists Tse-Ling Fong, M.D. of the University of Southern California, and William Lee, M.D. of the University of Texas, Southwestern Medical Center. CFSAN has become aware of these physicians' case series of patients with severe liver disease associated with the use of Hydroxycut capsules/caplets. Two cases from this series, (in

addition to the cases reported to CFSAN), underwent liver transplantation following acute liver failure.

## IV. FDA Writes Iovate on April 30, 2009

39. On April 30, 2009, Stephen F. Sundlot, Director of The Center for Food Safety and Applied Nutrition, wrote to Mr. Terry Begley of Iovate Health Sciences, Inc. The letter confirmed that during a meeting on March 31, 2009, the U.S. Food and Drug Administration (FDA) informed Iovate of concerns that the FDA had about liver toxicity associated with the use of multiple versions of the dietary supplement Hydroxycut marketed under the Iovate and MuscleTech brand names. The FDA's concerns were based on adverse events reported to the FDA, case reports in the peer-reviewed literature, and a case series described by hepatologists to FDA. The FDA advised Iovate that it had concluded that the ingestion of the dietary supplement Hydroxycut presented a "severe potentially life-threatening hazard to some users."

40. The FDA reported that it held a telephone conversation on April 29, 2009, between outside counsel for Iovate Health Sciences, Inc., and Mr. Eric Blumberg, Deputy Chief Counsel, Litigation, Office of Chief Counsel, FDA; wherein the FDA explained its conclusions about the safety of Hydroxycut Products and the additional actions that the FDA expected Iovate to take in response to the serious public health hazards presented by the Hydroxycut dietary supplements.

41. The FDA concluded that three lines of evidence, derived from multiple disparate sources, suggest it is very likely that exposure to Hydroxycut capsules/caplets can cause idiosyncratic hepatotoxicity. First, many of the subjects described in the adverse event reports to CAERS, in the peer- reviewed literature, and in the case series

described by hepatologists reported no history of liver disease or risk factors for liver disease (e.g., alcohol consumption, previous viral infection, hereditary factors, etc.) prior to experiencing liver injury following the ingestion of Hydroxycut capsules/caplets. Second, in many subjects, thorough diagnostic evaluations performed in multiple settings ruled out a number of known causes of liver disease, including viral hepatitis, autoimmune diseases, and metabolic/inherited disorders. Third, prompt resolution of liver disease occurred in a number of patients following cessation of Hydroxycut capsules/caplets ingestion. While some adverse event reports involved users who had consumed more than the daily dosage recommended on the products' labeling, if these reports were excluded from consideration, the remaining evidence still demonstrated liver-related adverse effects following exposure to Hydroxycut capsules/caplets. In addition to Hydroxycut capsules/caplets associated liver-related adverse effects, CFSAN is aware of a number of CAERS reports that describe seizures, rhabdomyolysis, and cardiovascular signs and symptoms.

42. The FDA, based on the totality of evidence, concluded that the ingestion of the dietary supplement, Hydroxycut, presented a severe potentially life-threatening hazard to some users.

43. The FDA also disagreed with claims of Iovate that some Hydroxycut Products were safe:

> While the firm believes that the lack of reported adverse events associated with the use of the Hydroxycut shot product and the drink mixes is evidence that they are safe, FDA disagrees. The reports of acute liver injury in individuals who have consumed Hydroxycut capsules/caplets represent idiosyncratic reactions, meaning that the injuries have occurred as a result of conditions peculiar to the affected individuals. As such, the incidence of injuries of this nature is unpredictable and may result from peculiar metabolic interactions between one or more Hydroxycut

> ingredient and the host's physiologic system. There are no data to indicate that the dose or duration of use of any particular Hydroxycut ingredient, or the gender, or any other identifiable trait of a Hydroxycut user predicts the risk of an adverse event. In light of this, and because the fact that the drink mixes and 'shot' products share ingredients with products known to be associated with adverse events, and because it is unknown which ingredient(s) of Hydroxycut are responsible for producing the idiosyncratic reactions, we believe that the reasonable conclusion to be drawn is that these products present the same risks as the Hydroxycut capsules/caplets.

44. Given the seriousness of the hazard presented by Hydroxycut, Product Defendants voluntarily agreed to the following:

1. To cease distribution of all existing formulations of Hydroxycut; and

2. To recall from the marketplace, to the consumer/user level, all existing formulations of Hydroxycut.

> As we stated above, the ingestion of the dietary supplement Hydroxycut presents a severe potentially life-threatening hazard to some users. FDA considers the recalled products to be adulterated under section 402(f)(1)(A) of the Federal Food, Drug, and Cosmetic Act [21 U.S.C. § 342(f)(1)(A)] (the Act) in that the dietary supplements present a significant or unreasonable risk of illness or injury under conditions of use recommended or suggested in labeling.

## V. FDA Hydroxycut Warnings

45. On May 1, 2009, the FDA issued an advisory which stated, "Although the liver damage appears to be relatively rare, FDA believes consumers should not be exposed to unnecessary risk". The number of adverse event reports described by the FDA is small relative to the many millions of people who have used Hydroxycut Products over the seven years referenced by the FDA. Iovate's own assessment of the potential risk associated with the use of these products differs from that expressed by the agency. Every product marketed by Iovate is evaluated during its development for the safety of its individual ingredients. Additionally, independent third-party experts from

the leading independent scientific firm specializing in ingredient assessment, toxicology and product safety for the nutritional and pharmaceutical industry reviews the safety of Iovate's ingredients and formulas before products are introduced into the market place. Only after this the external review is completed does Iovate release a formula.

46. The FDA is warning consumers (5/1/09) to immediately stop using Hydroxycut Products by Iovate Health Services, Inc. of Oakville, Ontario. Some Hydroxycut Products are associated with a number of serious liver injuries. Iovate has agreed to immediately recall Hydroxycut Products from the US market.

47. The FDA issued this "dear doctor" letter that stated as follows:

Dear Health Care Professional Colleague:

We are alerting you about a dietary supplement product that we believe presents a serious public health risk. Hydroxycut Products are distributed by Iovate Health Sciences Inc., Oakville, Ontario Canada and distributed by Iovate Health Sciences U.S.A., Inc. of Blasdell, NY, and have been implicated in several cases of serious liver injury. The Food and Drug Administration (FDA) has received 23 reports of adverse liver effects in users of Hydroxycut Products, ranging from asymptomatic hyperbilirubinemia, jaundice, liver damage, liver transplant, and death. The injuries reported to FDA occurred in persons between 21 and 51 years of age. No other cause for liver disease was identified. In the majority of cases, no preexisting medical condition that would predispose the consumer to liver injury was identified. In some cases, discontinuation of Hydroxycut usage resulted in recovery of liver function. Although the liver damage appears to be relatively rare, FDA believes consumers should not be exposed to unnecessary risk. FDA has also identified several other serious adverse events associated with Hydroxycut, including cases of seizures, rhabdomyolysis, and cardiovascular disorders ranging in severity from palpitations to a heart attack.

Hydroxycut Products bear the Iovate or MuscleTech Brand name and are multi-ingredient dietary supplements marketed for weight loss, as fat burners, energy enhancers, as low carb diet aids, and to promote water loss. The following products have been recalled by the company:

• Hydroxycut Regular Rapid Release Caplets;

• Hydroxycut Caffeine-Free Rapid Release Caplets;

• Hydroxycut Hardcore Liquid Caplets;

• Hydroxycut Max Liquid Caplets;

• Hydroxycut Regular Drink Packets;

• Hydroxycut Caffeine-Free Drink Packets;

• Hydroxycut Hardcore Drink Packets (Ignition Stix);

• Hydroxycut Max Drink Packets;

• Hydroxycut Liquid Shots;

• Hydroxycut Hardcore RTDs (Ready-to-Drink);

• Hydroxycut Max Aqua Shed;

• Hydroxycut 24;

• Hydroxycut Carb Control; and

• Hydroxycut Natural.

Based on the information available to FDA, we cannot determine exactly which ingredient(s) or proprietary blends in Hydroxycut may be associated with liver injury, or what other factors, such as health condition, length of use, dosage, or use along with other dietary supplements or drugs, may affect the risk of using Hydroxycut.

FDA is warning consumers to immediately stop use of these products. FDA has issued a consumer warning advising of the potential risks associated with the use of these products and advising consumers to consult their health care provider if they are experiencing symptoms possibly associated with this product, particularly nausea, weakness or fatigue, fever, abdominal pain, or any change in skin color.

We urge you to review your cases of hepatitis in order to determine if any may be related to the use of dietary supplements in these patients. Adverse events associated with the use of dietary supplements should be reported as soon as possible to FDA's MedWatch program by telephone (1-800-332-1088) or Internet (http://www.fda.gov/medwatch).

> Thank you for your efforts and cooperation in addressing this potentially serious public health issue. For additional information, see http://www.cfsan.fda.gov.

48. On May 1, 2009, the FDA warned consumers to stop using Hydroxycut Products, as the dietary supplements were felt to be linked to one death and 23 reports of serious health problems ranging from jaundice and elevated liver enzymes, an indicator of potential liver injury, to liver damage requiring liver transplant. Other health problems reported include seizures, cardiovascular disorders, and rhabdomyolysis.

49. Liver injury was reported by patients at the doses of Hydroxycut recommended on the bottle. Symptoms of serious liver disease include jaundice (yellowing of the skin or whites of the eyes) and brown urine. Non-specific symptoms of liver disease can include nausea, vomiting, light colored stools, excessive fatigue, weakness, stomach or abdominal pain, itching and loss of appetite.

50. The packaging of the Hydroxycut Products promotes their use to "increase energy," "burn calories" and "control appetite" and boasts that they are made with "clinically proven ingredients." In addition, the packaging claims that "Hydroxycut® Works Fast!" The packaging further states as follows:

> "Hydroxycut® is America's #1 selling weight-loss supplement. Hydroxycut really does work — fast! Utilizing sophisticated Rapid-Release Caplets, Hydroxycut is doctor formulated+ with clinically proven ingredients to help you lose up to 4.5 times the weight than diet and exercise alone._,‡ Now with an improved HydroxyTea® blend, there's even more reason to love Hydroxycut®."

The packaging also states: "[d]on't take chances — you deserve the best! Put your trust in the power of Hydroxycut® and discover for yourself why millions of men and women all across America have used Hydroxycut. For fast weights loss, make Hydroxycut® your #1 choice today!"

51. The Hydroxycut Products packaging makes much of Hydroxycut being "doctor formulated" and approved. In this regard, the side of the Hydroxycut Products packaging boasts that the Hydroxycut Products are "Backed by Science" and includes a picture of Dr. John Marshall, D.O., "Resident Physician" and his statement that "Hydroxycut® is a product that has ingredients proven to work. I've recommended it to a number of men and women and have used it myself with fantastic results." The packaging also credits Dr. Marvin Heuer, FAAFP, Iovate's Chief Scientific Officer, with formulating the Hydroxycut Products.

52. Each of the Products contains overlapping ingredients and proprietary blends that cause them to be dangerous. They also do not work. The Products are sold under various names and come in various forms, but each contains the subject ingredients, including: Hydroxagen Plus; Hydroxy Tea; Hydroxy Tea CF; Hydroxycut Proprietary Blend; Max! Liqui-Burn; Max! Weight-Loss Matrix; Hydroxycut Hardcore Proprietary Blend Proxyclene; Noreidrol Intensity Focus Blend; Lasidrate Delivery Blend; and Yohimbacore. The Products contain herbal extracts from *Garcinia cambogia, Guarana, Gymnema sylvestre, Rhodiola rosea* and *Camillia sinensis*. Hydroxycut Cleanse and Hydroxycut Hoodia contain different ingredients than the 14 Products at issue and are not included in this lawsuit.

53. *Chromium, Garcinia cambogia, Gymnema sylvestre* and *Camellia sinensis* have been associated with cases of severe hepatotoxicity.

54. *Garcinia Cambogia* is a fruit native to Asia and Africa and used by very poor people to make meals more filling. The main component of *Garcinia cambogia* and the root of the name Hydroxycut is hydroxycitric acid ("HCA"). HCA was initially

studied in rodents for dietary treatment of obesity, but randomized controlled trials in humans have conflicting results, and no clinical proof.

55. An example of Hydroxycut Products, ingredients and directions is as follows:

An example of a Hydroxycut product and its Supplement Facts is provided below.




**Supplement Facts**
Serving Size 2 Rapid Release Caplets
Servings Per Container 15

| Amount Per Serving | % Daily Value |
|---|---|
| Calcium (as hydroxycitrate)*** 150 mg | 15% |
| Chromium (as polynicotinate)** 133 mcg | 111% |
| Potassium (as hydroxycitrate)*** 218 mg | 6% |
| Hydroxagen Plus® 1.32 g | |
| Garcinia cambogia extract (rind)*** | † |
| Standardized for 60% hydroxycitric acid | |
| Gymnema sylvestre extract (leaf) | † |
| Standardized for 25% gymnemic acids | |
| Phosphatidylserine-enriched soy lecithin | † |
| Supplying 50% phosphatidylserine, 4% phosphatidylcholine, 2% phosphatidylethanolamine | |
| HydroxyTea® 473 mg | † |
| Green tea extract (as Camellia sinensis) (leaf) | † |
| Standardized for 90% polyphenols, 75% catechins, 45% epigallocatechin gallate - 117 mg EGCG | |
| Caffeine anhydrous | † |
| White tea extract (as Camellia sinensis) (leaf) | † |
| Standardized for 50% polyphenols, 35% catechins, 15% EGCG | |
| Oolong tea extract (as Camellia sinensis) (leaf) | † |
| Standardized for 50% polyphenols, 25% catechins, 15% EGCG | |
| Supplying 200 mg of caffeine | |
| Ginger extract (as Zingiber officinale) (root) | † |
| Standardized for 5% gingerols | |
| Raspberry ketone | † |
| Quercetin dihydrate (as Fava d'anta) | † |

†Daily Value not established.

OTHER INGREDIENTS: MICROCRYSTALLINE CELLULOSE, HYDROXYPROPYLCELLULOSE, COATING (POLYVINYL ALCOHOL, TITANIUM DIOXIDE, POLYETHYLENE GLYCOL, TALC), SODIUM CARBOXYMETHYLCELLULOSE, CROSPOVIDONE, STEARIC ACID, MAGNESIUM STEARATE, SILICA, ACESULFAME-POTASSIUM.

The directions for the product are stated as follows:

*For men and women:*

*Take 2 caplets with a glass of water 3 times daily, approximately 30 to 60 minutes before meals (preferably before breakfast, lunch and dinner). To assess individual tolerance, refer to the chart. Do not exceed 6 caplets in a 24-hour period. Do not take within 5 hours of bedtime. For best results, use Hydroxycut for 8 weeks in conjunction with a caloric-reduced diet and a regular exercise program. Do not snack after dinner. Consume ten glasses of water per day. Read the entire label before use and follow directions.*

56. The FDA's reasoning for the May 2009 activity and warnings over Hydroxycut Products can be found in a Health Hazard Evaluation Board document entitled "The Problem: Liver toxicity following consumption of dietary supplements, Hydroxycut". Their conclusion was, "Three lines of evidence derived from multiple disparate sources suggest it is very likely that exposure to Hydroxycut can cause idiosyncratic hepatotoxicity". The report was authored by Linda Katz, M.D., interim chief medical officer of FDA's Center for Food Safety and Applied Nutrition.

## VI. Hydroxycut Products are Recalled

57. Iovate initiated a voluntary recall when it became aware that the FDA's assessment of 23 reports about consumers having experienced liver-related problems, as well as a small number of published ease reports, was different from Iovate's analysis. As of May 1, 2009, the list of products that were voluntarily recalled by Iovate included:

HYDROXYCUT RAPID RELEASE REGULAR CAPLETS

631656893649 Hydroxycut 140ct Cap US
531656833621 Hydroxycut 60 ONC US
631656600988 Hydroxycut.300ct Caplets US
631656890129 Hydroxycut 36ct Cap US "with CARDS"
631656282245 Hydroxycut 160ct Cap US *Discontinued"
631656873214 Hydroxycut 58ct Cap US
631656813418 Hydroxycut 70ct Cap US
631656808612 Hydroxycut 70ct Caps US *Discontinued"
631656806117 Hydroxycut 100 cap US *Discontinued"
631656818642 Hydroxycut 140ct Cap US *Discontinued"
631656882414 Hydroxycut 80ct Caps US *Discontinued*
631656843262 Hydroxycut 210ct Cap US
631656828665 Hydroxycut 210 cap US *Discontinued"
631656600582 Hydroxycut 60ct + 1 Hydroxycut Sachet WB US
631656600476 Hydroxycut 72ct + Hydroxycut Sachet WB US
631656600483 Hydroxycut 100ct Caplets US
631655600506 Hydroxycut l50ct Caplets US
631656601251 Hydroxycut 170 Caplets US
631656600452 Hydroxycut 30ct Caplets US

HYDROXYCUT HARDCORE LIQUID CAPSULES

531656600650 Hydroxycut Hardcore 120ct US
531656600834 Hydroxycut Hardcore 210ct US
631656001778 Hydroxycut Hardcore 30ct US
631656601435 Hydroxycut Hardcore 252ct US
631656601848 Hydroxycut Hardcore 30ct US Trial - Bodybuilding.com
631656601 749 Hydroxycut Hardcore l20ct US NEW
631656601 763 Hydroxycut Hardcore 252ct US
631656601756 Hydroxycut Hardcore 2l0ct US NEW

HYDROXYCUT CAFFEINE-FREE CAPLETS

631658801224 Hydroxycut Caffeine Free 140ct Cap US
631656821246 Hydroxycut Caffeine Free 330ct Cap US
631656801 217 Hydroxycut Caffeine Free l00ct Cap US
631656801231 Hydroxycut Caffeine Free 58ct Cap US
631656699122 Hydroxycut Caffeine Free 36ct Cap US
631656600544 Hydroxycut Caffeine Free 60ct US

631856600551 Hydroxycut Caffeine Free 72ct US
831656600568 Hydroxycut Caffeine Free l00ct US

HYDROXYCUT MAX CAPLETS

631656601466 Hydroxycut Max 120ct Bonus + 1 Hyd Max Sachet WB US
631656601633 Hydroxycut Max 210ct Bonus + 1 Hyd Max Sachet WB US

HYDROXYCLIT REGULAR DRINK PACKET

631656860191 Hydroxycut Weight Loss Drink Mix 21pk Sachet-Wild Berry US
631656660313 Hydroxycut Weight Loss Drink Mix 21pk Sachet - Country Lemonade US

HYDROXYCIJT HARDCORE DRINK PACKET (IGNITION STIX)
631656701326 Hydroxycut Hardcore Drink Mix 2.7g Sachet - Blue Raspberry US
631656701319 Hydroxycut Hardcore Drink Mix 2.69 Sachet - Fruit Punch US
631656760115 Hydroxycut Hardcore DrinkMix4Opkx2g Sachet- FruitPunch US
631655760125 Hydroxycut Hardcore Drink Mix 4Opk x 2g Sachet - Blue Raspberry US

HYDROXYCUT CAFFEINE-FREE DRINK PACKET

631658760095 Hydroxycut Caffeine Free Drink Mix 21 pk x 3.6g Sachet - Raspberry lce US

HYDROXYCUT MAX DRINK PACKET

631556850375 Hydroxycut Max Drink Mix 40plc x 2.4g Sachet - Wild Berry US
631656860382 Hydroxycut Max Drink Mix 40pkx2.7g Sachet-Lemonade US

HYDROXYCUT LIQUID SHOT

631556800159 Hydroxycut Weight Loss Single Shot 2oz -Wild Berry US
631656860207 Hydroxycut Weight Loss Shot2 x2oz Pk-Wild Berry US
631656860498 Hydroxycut Instant Weight Loss Shot 12 x 2oz - Wild Berry US

HYDROXYCUT MAX AQUA SHED

631656601855 Hydroxycut MaxAqua Shed 60ct Capsules US

HYDROXYCUT HARDCORE RTD

631656850436 Hydroxycut Hardcore 4 x8oi RTD - Grape Infusion US
531655860399 Hydroxycut Hardcore 4 x 8oz RTD -Triple Wild Berry US
631656860665 Hydroxycut Hardcore 12-pack RTD - Grape Infusion US
631655850467 Hydroxycut Hardcore 3 x 4-pack RTD - Grape Infusion US
631656860443 Hydroxycut Hardcore 3 x 4-pack RTD - Triple Wild Berry US
631656860443 Hydroxycut Hardcore 3x4-pack RTD-Triple Wild Berry US
631656560568 Hydroxycut Hardcore 12-pack RTD -Triple Wild Berry US

HYDROXYCUT 24

631656600933 Hydrozycut24 (96 caps/ blister pack) US

HYPROXYCUT CARE CONTROL

631656800038 Hydroxycut Carb Control 58ct Cap US
631656800029 Hydroxycut Carb Control 100ct Cap US

631666800012 Hydroxycut Carb Control 140ct Cap US

HYDROXYCUT NATURAL

631656600889 Hydroxycut Natural 100ct US

Please note that Hydroxycut Hoodia and Hydroxycut Cleanse products are not included in this recall; nor are any other lovate products.

58. On May 7, 2009, the scope of the Hydroxycut recall was widened. Additional products all involve additional packages and sizes of products previously referenced. The TJPC numbers added to the May 1, 2009 list are as follows:

631656800265 Hydroxycut Hardcore 8 fl. oz. Grape Explosion
631656800210 Hydroxycut Hardcore 8 fl. oz. Triple Wildberry
631656001501 Hydroxycut 280ct-3 Pak Kit *Discontinued*
631656001563 Hydroxycut 280ct-6 Pak Kit *Discontinued*
631656000658 Hydroxycut l00ct-6 month supply (7 bottles+ 4 free) Kit
631656600896 Hydroxycut 2x60ct Club Pack US Kit
631656000672 Hydroxycut l00ct-1 month supply (1 bottle+1 free) Kit *Discontinued*
631656874693 Hydroxycut 58 cap 12-pack Target US Kit *Discontinued*
631656000665 Hydroxycut l00ct-3 month supply (4 bottles+2 free) Kit *Discontinued*
631656002362 Hydroxycut Sachet Twin Pack US Kit
631656860498 Hydroxycut Instant Weight Loss Shot 12 x 2oz - Wild berry US Kit
631656660623 Hydroxycut Hardcore Shredded Stack Kit 20ct
631656500585 Hydroxycut 60 Rapid Release Caplets

59. Product Defendants and Wal-Mart negligently formulated, designed, manufactured, marketed, advertised, promoted, distributed and/or sold Hydroxycut Products that can potentially cause serious health problems including, but not limited to, jaundice and liver failure.

60. Product Defendants failed to properly research the ingredients used in the Hydroxycut Products to ensure that they were safe for consumption and did not cause adverse health effects.

61. As a result of the acts and practices detailed herein, Plaintiff's reasonable belief in the quality and safety of Hydroxycut Products, and the consequent reasonable belief that Hydroxycut Products would not have adverse health effects, Plaintiff was

misled into purchasing the unsafe Hydroxycut Products. Hydroxycut Products did not provide the attributes and benefits Plaintiff reasonably expected to receive, sought and thought she was receiving. As a result, Plaintiff bought the product labeled as Hydroxycut at Wal-Mart stores located at 2900 Kirk Road, Aurora, Illinois and 776 S. State Route 59, Naperville, Illinois, beginning in February 2009 and ending around April 22, 2009. Plaintiff was taking precisely the doses prescribed by the Hydroxycut label. The Hydroxycut was not safe for consumption. She would not have purchased the product had Product Defendants and Wal-Mart disclosed the material facts detailed herein, which were in their exclusive possession and that they were obligated to disclose, or should reasonably have disclosed. Attached as Exhibit 1, is a copy of a photograph of the Hydroxycut product purchased by Plaintiff.

62. Product Defendants and Wal-Mart failed to warn Plaintiff of the unreasonably dangerous characteristics associated with Hydroxycut Products, including the fact that it may cause serious liver problems and other health problems. Product Defendants failed to institute an earlier recall of Hydroxycut.

63. Based on the above material facts and statements, Product Defendants and Wal-Mart owed a legal duty to Plaintiff to formulate, design, manufacture, market, advertise, distribute and sell Hydroxycut Products that were safe for human consumption or else to not sell such products.

64. Product Defendants and Wal-Mart breached their duty, which directly and proximately caused or resulted in Plaintiff suffering injury in fact, a loss of money or property, the personal expenditure of time and resources and/or other forms of injury and/or damage.

65. In addition, based on the duties owed to Plaintiff by Product Defendants and Wal-Mart not to expose consumers to potentially harmful products, Plaintiff is entitled to the reasonable value of the cost of medically monitoring her condition, as the need for medical monitoring is a reasonable consequence of suffering liver-related injuries due to the consumption of Hydroxycut Products and is thus necessitated as a direct result of use, and is reasonable considering:

1) the significance and extent of the consumption of Hydroxycut Products;

2) the relative increase in the chance of onset of liver problems as a result of using Hydroxycut Products, when compared to the chances of liver problems absent such use;

3) the seriousness of the conditions for which the Plaintiff is at risk; and

4) the clinical value of early detection.

66. Product Defendants and Wal-Mart, in the exercise of reasonable care, knew or should have known that Hydroxycut Products potentially cause liver problems and other health problems including, but not limited to, jaundice and liver failure. Plaintiff might have reasonably been expected by Product Defendants and Wal-Mart to purchase and ingest Hydroxycut Products and be adversely affected by its defective condition.

67. As Hydroxycut reports of side effects, including, but not limited to, liver damage, came to light, Wal-Mart knew or should have known that Hydroxycut Products were not safe to sell to the public and Plaintiff.

## VII. Plaintiff's Experience

68. Between February 2009 and April 22, 2009, Plaintiff purchased Hydroxycut at the Wal-Mart stores at 2900 Kirk Road, Aurora, Illinois and 776 S. State Route 59, Naperville, Illinois, and did so because she had been exposed to the promotion, advertising and marketing of Hydroxycut Products as set forth in detail herein. Entrusting Product Defendants, she relied on the reputations of the Product Defendants in purchasing Hydroxycut, and was misled into thinking that Hydroxycut was healthy and safe for use, which was false and misleading since the Hydroxycut Products caused liver problems and other health problems, including but not limited to, jaundice and liver failure. As a result of the Product Defendants' deceptive marketing scheme and a reliance on the purported trustworthiness and safety of Hydroxycut Products, she was misled in the purchasing and spending money on Hydroxycut Products. In exchange for her money, Plaintiff received something other than what was represented, and as a result she was injured.

69. Beginning April 22, 2009, Plaintiff became ill. She was lethargic and jaundiced. She was hospitalized. Upon examination it was determined that the Plaintiff had sustained liver damage and ultimately required a liver transplant on May 16, 2009.

70. She is required to attend many doctors' appointments, including a liver specialist, along with undergoing constant blood work monitoring. Plaintiff must take anti-rejection medicines for the remainder of her life.

71. In May 2009, Plaintiff was told by her physicians that in all likelihood her injuries were caused by use of Hydroxycut. There is no other reason for her condition, but for the use of Hydroxycut; all other causes were ruled out by medical doctors.

Plaintiff never had or was diagnosed with any kind of liver ailment or disease. Plaintiff never was diagnosed with hepatitis or liver disease associated with drinking alcohol to excess.

**COUNT I**
**PRODUCT LIABILITY ACTION**

72. Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

73. The Product Defendants designed, formulated, manufactured, promoted, marketed, and advertised, packaged, labeled, and distributed Hydroxycut Products to consumers.

74. The use of Hydroxycut Products at doses recommended can cause serious liver problems including, but not limited to, jaundice and liver failure.

75. The subject matter Hydroxycut was not reasonably safe at the time it left the Product Defendants.

76. That according to generally accepted production practices at the time said Hydroxycut left the control of the Product Defendants, a practical and technically feasible alternative production practice was available that would have prevented the harm including, but not limited to, not supplying it to the general public in a context that it was given and/or changing the formula so as not to create risk of injury.

77. The subject matter Hydroxycut was not altered from the date of manufacture to the date of use.

78. The subject matter Hydroxycut was not misused by the Plaintiff.

79. As a direct and proximate result of the Product Defendants' defective condition of the Hydroxycut, Plaintiff, Flor E. Mendoza, has sustained serious and permanent injuries including, but not limited to, liver damage resulting in liver transplant.

80. As a direct and proximate result of the Product Defendants' defective condition of the Hydroxycut and the sale and distribution by Wal-Mart, Plaintiff, Flor E. Mendoza, has sustained loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress.

81. As a direct and proximate result of the Product Defendants' defective condition of the Hydroxycut and the sale and distribution by Wal-Mart, Plaintiff, Flor E. Mendoza, will sustain in the future loss of earning capacity, loss of services, incur medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress because said conditions are permanent.

82. Plaintiff, Rene Mendoza, has sustained a past, present and future loss of services, support, and consortium as a direct result of the Product Defendants' and Wal-Mart's conduct.

WHEREFORE, Plaintiffs, Flor E. and Rene Mendoza, pray for judgment against Product Defendants, Iovate Health Sciences USA, Inc., Iovate Health Sciences International, Inc., Iovate Health Sciences Group, Inc. (n/k/a Kerr Investment Holding Corp.), Iovate Health Sciences Research, Inc., Iovate HC 2005 Formulations, Ltd. (n/k/a HDM Formulations, Ltd.), MuscleTech Research and Development, Inc. (n/k/a HDM Formulations, Ltd.) and Wal-Mart Stores, Inc., Jointly and Severally, as follows:

a. Adjudge and decree that Product Defendants and Wal-Mart have engaged in the conduct alleged herein;

b. Award Plaintiffs judgment and all damages as allowed under the law;

c. Award Plaintiffs pre- and post-judgment interest as allowed by law;

d. Award counsel for Plaintiffs reasonable attorneys' fees, experts' fees and costs as allowed by law;

e. Exemplary damages to punish Defendants and to deter others from such conduct; and

f. Granting such other and further relief that this Court may deem just and proper.

**COUNT II**
**PRODUCT LIABILITY ACTION – WARNING**

83. Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

84. The Product Defendants and Wal-Mart designed, formulated, manufactured, promoted, marketed, and advertised, packaged, labeled, and distributed Hydroxycut Products to consumers.

85. The use of Hydroxycut at doses recommended potentially causes serious liver problems including, but not limited to, jaundice and liver failure.

86. That Plaintiff, Flor E. Mendoza, was not a sophisticated user of Hydroxycut and did not understand its chemistry, but rather relied upon false statements made by the Product Defendants and Wal-Mart as to the safety of the Product.

87. Liver damage is not an inherent characteristic that is necessary in the formulation of dietary supplements.

88. Plaintiff, Flor E. Mendoza, did not recognize the inherent danger in the use of the subject Hydroxycut, for she was a person with ordinary knowledge in the community.

89. The Product Defendants and Wal-Mart failed to warn of the dangers of liver damage when using the aforesaid Hydroxycut.

90. As a direct and proximate result of the Product Defendants' and Wal-Mart's failure to adequately warn, Plaintiff, Flor E. Mendoza, sustained serious and permanent injuries including, but not limited to, liver damage, liver transplant and is permanently medicated.

91. As a direct and proximate result of the Product Defendants' and Wal-Mart's failure to adequately warn, Plaintiff, Flor E. Mendoza, has sustained loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress.

92. As a direct and proximate result of the Product Defendants' and Wal-Mart's failure to adequately warn, Plaintiff, Flor E. Mendoza, will sustain in the future loss of earning capacity, loss of services, incur medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress because said conditions are permanent.

93. Plaintiff, Rene Mendoza, has sustained a past, present and future loss of services, support, and consortium as a direct result of the Product Defendants' and Wal-Mart's conduct.

WHEREFORE, Plaintiffs, Flor E. and Rene Mendoza, pray for judgment against Product Defendants, Iovate Health Sciences USA, Inc., Iovate Health Sciences International, Inc., Iovate Health Sciences Group, Inc. (n/k/a Kerr Investment Holding Group), Iovate Health Sciences Research, Inc., Iovate HC 2005 Formulations Ltd. (n/k/a

HDM Formulations, Ltd.), MuscleTech Research and Development, Inc. (n/k/a HDM Formulations, Ltd.), and Wal-Mart Stores, Inc., Jointly and Severally, as follows:

a. Adjudge and decree that Product Defendants and Wal-Mart have engaged in the conduct alleged herein;

b. Award Plaintiffs judgment and all damages as allowed under the law;

c. Award Plaintiffs pre- and post-judgment interest as allowed by law;

d. Award counsel for Plaintiffs reasonable attorneys' fees, experts' fees and costs as allowed by law;

e. Exemplary damages to punish Defendants and to deter others from such conduct; and

f. Granting such other and further relief that this Court may deem just and proper.

**COUNT III**
**BREACH OF EXPRESSED WARRANTY**

94. Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

95. The Product Defendants designed, formulated, manufactured, promoted, marketed, and advertised, packaged, labeled, and distributed Hydroxycut Products to consumers.

96. The Product Defendants and Wal-Mart sold the subject matter Hydroxycut.

97. The use of Hydroxycut at doses recommended potentially causes serious liver problems including, but not limited to, jaundice and liver failure.

98. The Product Defendants and Wal-Mart supplied Hydroxycut which failed to conform to its expressed warranty of being safe to use.

99. As a direct and proximate result of the Product Defendants' and Wal-Mart's breach of expressed warranty, Plaintiff, Flor E. Mendoza, has sustained serious

and permanent injuries including, but not limited to, liver damage, liver transplant and is permanently medicated.

100. As a direct and proximate result of the Product Defendants' and Wal-Mart's breach of expressed warranty, Plaintiff, Flor E. Mendoza, has sustained loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress.

101. As a direct and proximate result of the Product Defendants' and Wal-Mart's breach of expressed warranty, Plaintiff, Flor E. Mendoza, will sustain in the future loss of earning capacity, loss of services, incur medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress because said conditions are permanent.

102. Plaintiff, Rene Mendoza, has sustained a past present and future loss of services, support, and consortium as a direct result of the Product Defendants' and Wal-Mart's conduct.

WHEREFORE, Plaintiffs, Flor E. and Rene Mendoza, pray for judgment against Product Defendants, Iovate Health Sciences USA, Inc., Iovate Health Sciences International, Inc., Iovate Health Sciences Group, Inc. (n/k/a Kerr Investment Holding Corp.), Iovate Health Sciences Research, Inc., Iovate HC 2005 Formulations, Ltd. (n/k/a HDM Formulations, Ltd.), MuscleTech Research and Development, Inc. (n/k/a HDM Formulations, Ltd.) and Wal-Mart Stores, Inc., Jointly and Severally, as follows:

a. Adjudge and decree that Product Defendants and Wal-Mart have engaged in the conduct alleged herein;

b. Award Plaintiffs judgment and all damages as allowed under the law;

c. Award Plaintiffs pre- and post-judgment interest as allowed by law;

d. Award counsel for Plaintiffs reasonable attorneys' fees, experts' fees and costs as allowed by law;

e. Exemplary damages to punish Defendants and to deter others from such conduct; and

f. Granting such other and further relief that this Court may deem just and proper.

**COUNT IV**
**NEGLIGENCE**

103. Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

104. The Product Defendants designed, formulated, manufactured, promoted, marketed, and advertised, packaged, labeled, and distributed Hydroxycut Products to consumers.

105. The use of Hydroxycut at doses recommended potentially causes serious liver problems including, but not limited to, jaundice and liver failure.

106. Product Defendants and Wal-Mart have a duty to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Hydroxycut Products, including a duty to ensure that Hydroxycut Products are safe for use and a duty to warn that Hydroxycut Products may cause serious liver problems and other health problems, including, but not limited to, jaundice and liver failure.

107. As set forth in detail above, Product Defendants and Wal-Mart failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Hydroxycut by failing to ensure that Hydroxycut was safe for use.

108. Specifically, Product Defendants and Wal-Mart were negligent in the formulation, design, manufacture, promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Hydroxycut Products and Hydroxycut in that they, among other things:

a. Failed to use reasonable care in formulating, designing and manufacturing Hydroxycut Products so as to ensure that they were safe for use and did not cause adverse health effects including liver problems and other health problems;

b. Failed to conduct adequate safety testing of Hydroxycut Products and the ingredients used to make Hydroxycut Products;

c. Failed to accompany Hydroxycut Products with proper warnings regarding the possible adverse health effects associated with its use including, but not limited to, jaundice and liver failure;

d. Failed to take proper action to ensure the safety of Plaintiff when reports of injuries and death were received;

e. Failed to use reasonable care that the Hydroxycut ingredients were pure and safe for normal use;

f. Were careless and negligent in the manufacturing process of Hydroxycut Products; and

g. Were careless and negligent in the sale and distribution of Hydroxycut Products.

109. At the time of supply of Hydroxycut, the Product Defendants and Wal-Mart had actual knowledge that the product was defective and that there was a substantial likelihood that the defect would cause injury that is the basis of this action, and the Product Defendants and Wal-Mart willfully disregarded that knowledge in the supply of Hydroxycut Products.

110. Despite the fact that Product Defendants and Wal-Mart knew or should have known that its Hydroxycut Products could cause serious adverse health effects, it continued to market and sell them to consumers, including Plaintiff, despite the reasonable possibility that Hydroxycut Products caused liver problems and other health

problems including, but not limited to, jaundice and liver failure. They failed to institute an earlier recall.

111. Product Defendants and Wal-Mart knew or should have known that Plaintiff would foreseeably be put at risk for liver problems and other health problems as a result of Product Defendants' failure to give warning of the adverse health effects associated with use of Hydroxycut.

112. As a direct and proximate result of the Product Defendants' and Wal-Mart's negligence, Plaintiff, Flor E. Mendoza, has sustained serious and permanent injuries including, but not limited to, liver damage, liver transplant, requires to be permanently medicated, including the taking of anti-rejection medicines; a shortened life expectancy and is at greater risk for illness, including future liver failure.

113. As a direct and proximate result of the Product Defendants' and Wal-Mart's negligence, Plaintiff, Flor E. Mendoza, has sustained loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, mental anxiety, trauma and emotional distress.

114. As a direct and proximate result of the Product Defendants' and Wal-Mart's negligence, Plaintiff, Flor E. Mendoza, will sustain in the future loss of earning capacity, loss of services, incur medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress because said conditions are permanent.

115. Plaintiff, Rene Mendoza, has sustained a past, present and future loss of services, support, and consortium as a direct result of the Product Defendants' and Wal-Mart's negligence.

WHEREFORE, Plaintiffs, Flor E. and Rene Mendoza, pray for judgment against Product Defendants, Iovate Health Sciences USA, Inc., Iovate Health Sciences International, Inc., Iovate Health Sciences Group, Inc. (n/k/a Kerr Investment Holding Corp.), Iovate Health Sciences Research, Inc., Iovate HC 2005 Formulations, Ltd. (n/k/a HDM Formulations, Ltd.), MuscleTech Research and Development, Inc. (n/k/a HDM Formulations, Ltd.) and Wal-Mart Stores, Inc., Jointly and Severally, as follows:

a. Adjudge and decree that Product Defendants and Wal-Mart have engaged in the conduct alleged herein;

b. Award Plaintiffs judgment and all damages as allowed under the law;

c. Award Plaintiffs pre- and post-judgment interest as allowed by law;

d. Award counsel for Plaintiffs reasonable attorneys' fees, experts' fees and costs as allowed by law;

e. Exemplary damages to punish Defendants and to deter others from such conduct; and

f. Granting such other and further relief that this Court may deem just and proper.

## COUNT V
## GROSS NEGLIGENCE

116. Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

117. That prior to the date of incident, Product Defendants and Wal-Mart had knowledge that said Hydroxycut Products were defective and there was a substantial likelihood that the defects would cause of action injury to others including, but not limited to, Plaintiff, and failed to notify others.

118. That prior to the date of incident, Product Defendants and Wal-Mart willfully disregarded knowledge of defective conditions within the aforesaid Hydroxycut Products and of Hydroxycut.

119. That Product Defendants' and Wal-Mart's misconduct, as alleged herein, was a proximate cause of the injuries and damages sustained by Plaintiff.

WHEREFORE, Plaintiffs, Flor E. and Rene Mendoza, pray for judgment against Product Defendants, Iovate Health Sciences USA, Inc., Iovate Health Sciences International, Inc., Iovate Health Sciences Group, Inc. (n/k/a Kerr Investment Holding Corp.), Iovate Health Sciences Research, Inc., Iovate HC 2005 Formulations, Ltd. (n/k/a HDM Formulations, Ltd.), MuscleTech Research and Development, Inc. (n/k/a HDM Formulations, Ltd.) and Wal-Mart Stores, Inc., Jointly and Severally, as follows:

a. Adjudge and decree that Product Defendants and Wal-Mart have engaged in the conduct alleged herein;

b. Award Plaintiffs judgment and all damages as allowed under the law;

c. Award Plaintiffs pre- and post-judgment interest as allowed by law;

d. Award counsel for Plaintiffs reasonable attorneys' fees, experts' fees and costs as allowed by law;

e. Exemplary damages to punish Defendants and to deter others from such conduct; and

f. Granting such other and further relief that this Court may deem just and proper.

## COUNT VI
## RECKLESSNESS

120. Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

121. That prior to the date of incident, Product Defendants and Wal-Mart had knowledge that said Hydroxycut Products were defective and there was a substantial likelihood that the defect would cause injury including, but not limited to, that which is the basis of this action herein involved.

122. Product Defendants and Wal-Mart willfully disregarded that knowledge.

123. That Product Defendants' and Wal-Mart's misconduct, as herein alleged, was a proximate cause of the injuries and damages sustained by Plaintiff.

WHEREFORE, Plaintiffs, Flor E. and Rene Mendoza, pray for judgment against Product Defendants, Iovate Health Sciences USA, Inc., Iovate Health Sciences International, Inc., Iovate Health Sciences Group, Inc. (n/k/a Kerr Investment Holding Corp.), Iovate Health Sciences Research, Inc., Iovate HC 2005 Formulations, Ltd. (n/k/a HDM Formulations, Ltd.), MuscleTech Research and Development, Inc. (n/k/a HDM Formulations, Ltd.) and Wal-Mart Stores, Inc., Jointly and Severally, as follows:

a. Adjudge and decree that Product Defendants and Wal-Mart have engaged in the conduct alleged herein;

b. Award Plaintiffs judgment and all damages as allowed under the law;

c. Award Plaintiffs pre- and post-judgment interest as allowed by law;

d. Award counsel for Plaintiffs reasonable attorneys' fees, experts' fees and costs as allowed by law;

e. Exemplary damages to punish Defendants and to deter others from such conduct; and

f. Granting such other and further relief that this Court may deem just and proper.

## COUNT VII
## BREACH OF IMPLIED WARRANTY

124. Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

125. That Product Defendants and Wal-Mart impliedly warranted that said Hydroxycut Products were free of defect and reasonable safe for its reasonably foreseeable use.

126. Product Defendants and Wal-Mart breached its implied warranty in that said Hydroxycut Products and Hydroxycut were defective and not reasonably fit for its reasonably foreseeable use.

127. That Product Defendants and Wal-Mart breached its implied warranty in the following particulars, including, but not limited to:

a. Aforesaid Hydroxycut was defectively manufactured and assembled;

b. Aforesaid Hydroxycut was not properly labeled;

c. Aforesaid Hydroxycut was not properly tested for safety to reduce the risk of injury;

d. Aforesaid Hydroxycut was not supplied with adequate warnings and instructions, nor were such warnings and instructions supplemented up to the time of incident.

128. That the defective conditions of said Hydroxycut Products were a proximate cause of Plaintiffs' injuries and damages as alleged.

WHEREFORE, Plaintiffs, Flor E. and Rene Mendoza, pray for judgment against Product Defendants, Iovate Health Sciences USA, Inc., Iovate Health Sciences International, Inc., Iovate Health Sciences Group, Inc. (n/k/a Kerr Investment Holding Corp.), Iovate Health Sciences Research, Inc., Iovate HC 2005 Formulations, Ltd. (n/k/a HDM Formulations, Ltd.), MuscleTech Research and Development, Inc. (n/k/a HDM Formulations, Ltd.) and Wal-Mart Stores, Inc., Jointly and Severally, as follows:

a. Adjudge and decree that Product Defendants and Wal-Mart have engaged in the conduct alleged herein;

b. Award Plaintiffs judgment and all damages as allowed under the law;

c. Award Plaintiffs pre- and post-judgment interest as allowed by law;

d. Award counsel for Plaintiffs reasonable attorneys' fees, experts' fees and costs as allowed by law;

e. Exemplary damages to punish Defendants and to deter others from such conduct; and

f. Granting such other and further relief that this Court may deem just and proper.

## COUNT VIII
## FRAUD AND MISREPRESENTATION

129. Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

130. As set out more fully above, the Product Defendants stated that Hydroxycut: "really does work," "is doctor formulated," "with clinically proven ingredients," "don't take chances – you deserve the best," and "put your trust in the power of Hydroxycut." *See* paragraph 50.

131. The Product Defendants stated that Hydroxycut was "Backed by Science," "Hydroxycut is a product that has ingredients proven to work," and recommended by "Dr. John Marshall, D.O., Resident Physician." *See* paragraph 51.

132. The label of the Hydroxycut purchased by plaintiff claimed that Hydroxycut "Is America's #1 Selling Weight-Loss Supplement" and it contained "Clinically Proven Ingredients." *See* Exhibit 1 to this Amended Complaint.

133. Plaintiffs, at the time they decided to purchase Hydroxycut, had heard and relied on the statements and label of the Product Defendants as set out above.

134. The Product Defendants, at the time plaintiffs were purchasing Hydroxycut, knew or should have known that these statements and the label were false and incorrect, and they knew that serious questions about the safety of the Hydroxycut had already been raised and that 23 cases of liver damage had been reported before plaintiff took Hydroxycut.

135. Alternatively, the Product Defendants knew or should have known that no data or scientific studies supported the statements on their label, and thus the statements were made by them in reckless disregard of their truth or falsity.

136. Product Defendants' representations that Hydroxycut was safe for its reasonably foreseeable uses amounted to fraud and misrepresentation.

137. As a proximate result of said fraud and misrepresentation, Plaintiff sustained injuries and damages as alleged.

WHEREFORE, Plaintiffs, Flor E. and Rene Mendoza, pray for judgment against Product Defendants, Iovate Health Sciences USA, Inc., Iovate Health Sciences International, Inc., Iovate Health Sciences Group, Inc. (n/k/a Kerr Investment Holding Corp.), Iovate Health Sciences Research, Inc., Iovate HC 2005 Formulations, Ltd. (n/k/a HDM Formulations, Ltd.), MuscleTech Research and Development, Inc. (n/k/a HDM Formulations, Ltd.), and Wal-Mart Stores, Inc., Jointly and Severally, as follows:

a. Adjudge and decree that Product Defendants and Wal-Mart have engaged in the conduct alleged herein;

b. Award Plaintiffs judgment and all damages as allowed under the law;

c. Award Plaintiffs pre- and post-judgment interest as allowed by law;

d. Award counsel for Plaintiffs reasonable attorneys' fees, experts' fees and costs as allowed by law;

e. Exemplary damages to punish Defendants and to deter others from such conduct; and

f. Granting such other and further relief that this Court may deem just and proper.

**COUNT IX**
**ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

138. Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

139. In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 ILCS 505/1 *et seq.* ("the Act"), prohibits, *inter* alia, "concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment . . . in the conduct of any trade or commerce." 815 ILCS 505/2.

140. That Product Defendants and Wal-Mart are in the business of "trade or commerce" as defined in 815 ILCS 505/1.

141. The Hydroxycut purchased by Plaintiff is a consumer item as that term is defined by the Act.

142. As set forth in paragraphs 126 to 137 above, Product Defendants and Wal-Mart committed deceptive acts and practices in Illinois in violation of the Act.

143. Defendants' deceptive acts occurred in a course of conduct involving trade and commerce, and specifically of Defendants' efforts to sell Hydroxycut in Illinois.

144. Defendants' deceptive acts caused Plaintiffs to incur the damages set out above, namely to incur medical expenses, liver damage, liver transplant, and all of the other damages specifically set forth.

WHEREFORE, Plaintiffs, Flor E. and Rene Mendoza, pray for judgment against Product Defendants, Iovate Health Sciences USA, Inc., Iovate Health Sciences International, Inc., Iovate Health Sciences Group, Inc. (n/k/a Kerr Investment Holding Corp.), Iovate Health Sciences Research, Inc., Iovate HC 2005 Formulations, Ltd. (n/k/a

HDM Formulations, Ltd.), MuscleTech Research and Development, Inc. (n/k/a HDM Formulations, Ltd.) and Wal-Mart Stores, Inc., Jointly and Severally, as follows:

a. Adjudge and decree that Product Defendants and Wal-Mart have engaged in the conduct alleged herein;

b. Award Plaintiffs judgment and all damages as allowed under the law;

c. Award Plaintiffs pre- and post-judgment interest as allowed by law;

d. Award counsel for Plaintiffs reasonable attorneys' fees, experts' fees and costs as allowed by law;

e. Exemplary damages to punish Defendants and to deter others from such conduct; and

f. Granting such other and further relief that this Court may deem just and proper.

Dated: December 15, 2009

Respectfully submitted,

KREISMAN LAW OFFICES

s/ Robert D. Kreisman, one of the attorneys for the plaintiffs

Kreisman Law Offices
55 W. Monroe St., Suite 3720
Chicago, IL 60603
312-346-0045
bob@robertkreisman.com

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in the instant action pursuant to Fed. R. Civ. P 38.

Respectfully submitted,

KREISMAN LAW OFFICES

s/ Robert D. Kreisman, one of the attorneys for the plaintiffs

Kreisman Law Offices
55 W. Monroe St., Suite 3720
Chicago, IL 60603
312-346-0045
bob@robertkreisman.com


America's #1 SELLING
Weight-Loss Supplement**
HYDROXYCUT®
Lose Weight Fast™▲,‡
INCREASE ENERGY▲
CONTROL APPETITE▲
BURN CALORIES*
CLINICALLY PROVEN INGREDIENTS
60 RAPID RELEASE CAPLETS
DIETARY SUPPLEMENT

**EXHIBIT 1**