# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HYDROXYCUT MARKETING AND SALES PRACTICES LITITGATION<br><br>―――――――――――――――――――<br><br>MARTIN ROBERTSON AND JAMIE LYNN ROBERTSON,<br><br>Plaintiffs,<br><br>vs.<br><br>KERR INVESTMENT HOLDING CORP., IOVATE HEALTH SCIENCES, INC., IOVATE HEALTH SCIENCES U.S.A., INC. and MUSCLETECH RESEARCH AND DEVELOPMENT, INC.,<br><br>Defendants. | CASE NO. 09MD2087-BTM (AJB)<br><br>(S.D. Cal. No. 09CV2508)<br><br>(S.D.N.Y. No. 09CV6334)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT** |

On July 15, 2009, Plaintiffs Martin Robertson and Jamie Lynn Robertson filed a complaint in the United States District Court for the Southern District of New York against Iovate Health Sciences, Inc., Iovate Health Sciences U.S.A., Inc. and MuscleTech Research and Development, Inc. Plaintiffs subsequently amended their complaint twice. On August 26, 2009,

Plaintiffs filed a First Amended Complaint ("FAC"). On September 16, 2009, Plantiffs filed a Second Amended Complaint ("SAC").

On October 16, 2009, in the United States District Court for the Southern District of New York, Defendants filed a Motion for a More Definite Statement pursuant to Fed. R. Civ. P. 12(e) and 9(b) as to the SAC ("Motion"). On November 2, 2009, Plaintiffs filed an Opposition to the Motion. On November 5, 2009, the case was transferred by the Panel on Multidistrict Litigation ("MDL") to the Southern District of California. On November 13, 2009, in the above-entitled MDL action (09MD2087), Plaintiffs filed a Reply in further support of the Motion.

For the reasons set forth below, Defendants' Motion is **DENIED**.

## I. DISCUSSION

Defendants contend that Plaintiffs' SAC does not provide fair notice of the specific products and representations that are the subject of Plaintiffs' allegations and therefore, they are unable to prepare a reasoned response to the allegations. Defendants further argue that the use of the word "plaintiffs" in its plural form makes it impossible to respond to the SAC. Defendants contend they are unable to decipher which Plaintiff, Martin Robertson or Jamie Lynn Robertson, is making each claim. Defendants also contend that "Defendants cannot reasonably identify which products are the subject of these claims, which representations and omissions Plaintiffs allege to be false, and upon which representations Plaintiffs allegedly relied." Motion, p. 5.

Upon review of the SAC, the Court holds that Defendants have failed to show that the complaint is so excessively vague as to be unintelligible.

Federal Rule of Civil Procedure 12(e) allows for an order requiring Plaintiff to provide a more definite statement when the pleading is so vague or ambiguous that the responding party cannot reasonably be required to frame a responsive pleading. Fed. R. Civ. P. 12(e). Motions for a more definite statement are disfavored. In re European Rail Pass Antitrust Litigation, 166 F. Supp. 2d 836, 844-45 (S.D.N.Y. 2001). In order to warrant a more definite statement, the complaint must be "so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." Kok v.

First Unum Life Ins. Co., 154 F. Supp. 2d 777, 781-82 (S.D.N.Y. 2001). The rule is designed to remedy unintelligible pleadings, not to correct for lack of detail. Whether or not to grant a motion for a more definite statement is in the discretion of the trial court. See Vaden v. Lantz, 459 F. Supp. 2d 149, 150 (D. Conn. 2006).

In the SAC, Plaintiffs are abundantly clear that the claims are based upon the specific product known as Hydroxycut Regular Rapid Release Caplets. Reading all the allegations as a whole, the SAC is also sufficiently clear that Plaintiffs do not allege Jamie Lynn Robertson used or ingested any Hydroxycut products. Plaintiff Martin Robertson alleges he "ingested a Hydroxycut product, namely Hydroxycut Regular Rapid Release Caplets." SAC ¶ 14. Furthermore, Plaintiff details his "Experience with Hydroxycut Regular Rapid Release Caplets." SAC, page 11. The allegations are:

- Plaintiff Martin Robertson "purchased and used Hydroxycut Regular Rapid Release Caplets from on or about November 1, 2008 through February 8, 2009." SAC ¶ 49.
- "Plaintiff used Hydroxycut Regular Rapid Release Caplets as directed, and for the purpose and in the manner for which it was normally intended." SAC ¶ 50.
- Plaintiff could not have discovered the defective nature and or dangers of Hydroxycut Regular Rapid Release Caplets. SAC ¶ 51.
- "Plaintiff Martin Robertson would not have purchased and used Hydroxycut Regular Rapid Release Caplets had Defendant properly disclosed the risks associated with the product." SAC ¶ 55.

The SAC further alleges that on or about February 8, 2009, as a direct and proximate result of using Hydroxycut Regular Rapid Release Caplets, Plaintiff was diagnosed with liver damage and kidney failure and that as a result of "*his* injuries" (emphasis added), Plaintiff was hospitalized for more than one month. SAC ¶ 52. The SAC further alleges that Plaintiffs seek "actual and punitive damages for *his* injuries resulting from *his* ingestion of Hydroxycut Regular Rapid Release Caplets." SAC ¶ 15.

The Court finds Plaintiff's reference to the "Hydroxycut products" collectively, as defined in his SAC, to be sufficiently definite. SAC ¶ 3. The fact that the SAC uses the

defined term "Hydroxycut products" to refer to characteristics or representations common to all (including Hydroxycut Regular Rapid Release Caplets) does not render the allegations unintelligible.

Moreover, the Court finds the use of the plural and singular form of the word "plaintiff" interchangeably throughout the SAC, while not a model of clarity, does not render the SAC unintelligible or require a more definite statement from the Plaintiffs.  The SAC in fact does specify that "Martin Robertson purchased and used Hydroxycut Regular Rapid Release Caplets" (SAC ¶ 49), that Martin Robertson ingested a Hydroxycut product, namely, Hydroxycut Regular Rapid Release Caplets" (SAC ¶ 14), and refers to "his" injuries (SAC ¶ 52).  When reading the SAC in its entirety, it is sufficiently clear that Plaintiff Jamie Lynn Robertson's claims are based on loss of the support, services, comfort, companionship, society and care of her husband, not on any ingestion of a Hydroxycut product.  SAC ¶¶ 54, 116-119.

Any lack of clarity can and should be remedied through the targeted and thorough discovery that defense counsel will not doubt be conducting in this case.  Indeed, rather than require Plaintiff to provide a more definite statement, the preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings.  Kok, 154 F. Supp. 2d at 782; In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., No. 00 Civ. 1898, MDL 1358, 2005 WL 1500893, at *2 (S.D.N.Y. June 24, 2005); Ontario Ltd. v. Lencore Acoustics Corp., 105 F. Supp. 2d 56, 65-66 (E.D.N.Y. 2000) (denying a motion pursuant to Rule 12(e) because discovery is appropriate method for obtaining more information about the specific issues raised in plaintiff's complaint).

Even where the more stringent pleading requirements of Federal Rule of Civil Procedure 9(b) apply, the Court holds Plaintiff's allegations to be sufficiently specific and definite.  See e.g., SAC ¶¶ 2-15, 30-39, 44-48, and 97-104.

*///*

*///*

## II. CONCLUSION

The Defendants' Motion is **DENIED**.

IT IS SO ORDERED.

DATED: February 9, 2010

*Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge