**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE HYDROXYCUT MARKETING AND SALES PRACTICES LITIGATION | CASE NO. 09MD2087-BTM (AJB) |
| | (S.D. Cal. No. 09CV2509) |
| ——————————————— | |
| JUAN A. NOYOLA, | |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS COUNTS IV AND V OF THE FIRST AMENDED COMPLAINT** |
| vs. | |
| IOVATE HEALTH SCIENCES GROUP, INC., IOVATE HEALTH SCIENCES U.S.A., INC., MUSCLETECH RESEARCH AND DEVELOPMENT, LTD., AND HEALTH SCIENCES GROUP, INC., | |
| Defendants. | |

Defendant Iovate Health Sciences, U.S.A., Inc. ("Defendant") has filed a motion to dismiss Counts IV and V of Plaintiff Juan A. Noyola's First Amended Complaint ("Motion"). For the reasons set forth below, Defendant's Motion is **GRANTED in part** and **DENIED in part**. The Court denies the Motion as to Count IV. Count V is dismissed with leave to amend. Plaintiff shall have 21 days leave to amend as to Count V. The time for leave shall run from the date of entry of this order.

## I.  BACKGROUND

On July 29, 2009, Plaintiff filed a complaint in the District Court for the Southern District of New York (S.D.N.Y. Civil Action No. 09cv6740).  On November 9, 2009, the case was transferred by the Panel on Multidistrict Litigation ("MDL") to the Southern District of California.  On December 16, 2009, in the above-entitled MDL action (09MD2087), Plaintiff filed a First Amended Complaint ("FAC").  On January 22, 2010, Defendant filed a Motion to Dismiss Count IV (breach of express and implied warranties) and Count V (violation of N.Y. General Business Law § 349) of the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.  STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the formal sufficiency of the plaintiff's statement of the claim for relief.  The Court's inquiry is whether the allegations state a sufficient claim under Fed. R. Civ. P. 8, which sets forth the requirements for pleading.  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). In the adjudication of a motion to dismiss under 12(b)(6), plaintiff's allegations must be accepted as true, drawing all inferences from the pleaded facts in plaintiff's favor.  Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Sec. LLC, 568 F.3d 374, 377 (2nd Cir. 2009).  To survive a motion to dismiss, the complaint must allege facts that, if true, would create a judicially cognizable cause of action.  South Road Assoc. v. Int'l Bus. Machines Corp., 216 F.3d 251, 253 (2nd Cir. 2000).  Only factual allegations must be accepted as true—not legal conclusions.  Iqbal, 129 S.Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Although detailed factual allegations are not required, the factual allegations "must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III.  DISCUSSION

Plaintiff, Juan A. Noyola, alleges that he suffered personal injuries, namely, acute rhabdomyalsis and liver failure, after ingesting a dietary supplement manufactured and sold by

09MD2087

defendants, namely, Hydroxycut Hardcore Liquid Caplets.  FAC ¶¶ 40, 21.  Plaintiff's complaint contains five claims for relief: negligence, products liability (defective design and failure to warn), breach of warranties, and violation of New York General Business Law.

"Count IV" of the FAC, alleges breach of express and implied warranties and is based on the New York Uniform Commercial Code.  FAC ¶¶ 88-92.  Specifically, Plaintiff alleges that defendants expressly warranted that Hydroxycut products were safe and impliedly warranted that the products were reasonably fit for their intended purpose to increase energy, burn calories, and control appetite.  FAC ¶ 89.  According to Plaintiff, Hyrdroxycut products were unfit and unsafe for those purposes.  Id.  "Count V" of the FAC alleges a violation of the New York General Business Law § 349.  FAC ¶¶ 93-97.  Specifically, Plaintiff alleges defendants engaged in unfair and deceptive acts by failing to disclose the known risks of Hyrdroxycut products.  FAC ¶ 95.  Defendant Iovate Health Sciences U.S.A., Inc. moves to dismiss Counts IV and V.

### A.    Breach of Warranty Claims - Count IV

Defendant contends that Plaintiff's breach of warranty claims fail because he has not pled "notice" as required by New York warranty law.  Specifically, Defendant argues that in order to properly plead a warranty claim under the New York Uniform Commercial Code ("N.Y.-U.C.C."), a buyer must plead factual allegations that he gave the seller prior notice of such claim.  See N.Y.-U.C.C. § 2-607(3)(a).  Section 2-607(3) of the New York Uniform Commercial Code provides:

> Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.

Plaintiff contends that the notice requirement in N.Y.-U.C.C. § 2-607 is inapplicable to a product, such as Hyrdroxycut Hardcore Liquid Caplets, which is intended for human ingestion.  In support of his contention, Plaintiff cites Fischer v. Mead Johnson Labs., 41 A.D.2d 737 (N.Y. App. Div. 1973).  The Fischer case involved breach of warranty claims against the manufacturer of an oral contraceptive.  In Fischer, the court noted that the notice provision contained in N.Y.-U.C.C. § 2-607(3)(a) is to be applied, if at all, differently in

1   commercial and retail sales situations and held the notice requirement to be inapplicable in

2   cases involving goods sold for human consumption.  Id.  The court in Fischer looked to

3   Kennedy v. Woolworth Co., 205 A.D. 648 (N.Y. App. Div. 1923), a case involving injuries

4   caused by a child's consumption of candy sold by the defendant.  In Kennedy, the plaintiff

5   brought breach of warranty claims and, based on a similar provision of the statutory

6   predecessor to section 2-607, the court recognized:

> The reason for the rule has no relevant application to the circumstances of such a case. That section apparently has to do with the sales of goods whose inspection or use discloses a defect of quality, lack of conformance to sample, failure to comply with description, or other cognate circumstances, which causes money damage to the vendee. To require a complaint which, whatever its nomenclature of form, is really grounded on tortious elements, to indicate a notice of rejection or claim of damage within a reasonable time on account of defect of edible goods in a retail transaction, would strain the rule beyond a breaking point of sense or proportion to its intended object.

13   Id. at 649.

14       Contrary to Defendant's suggestion, Fischer remains good law in New York. Neri v. R.J.

15   Reynolds Tobacco Co., 2000 WL 33911224 (N.D.N.Y. 2000).  No contrary New York authority

16   appears to exist.  Indeed, the latest version of New York Pattern Jury Instructions, presumably

17   applicable when this case goes to trial, recognizes the exception to the N.Y.-U.C.C. notice

18   provision that is carved out in Fischer.   See e.g., N.Y. P.J.I. 2:140, Comments, (fourth

19   paragraph from end.)

20       While Defendant cites to Reyes v. McDonald's Corp. 2006 WL 3253579 (N.D. Ill. 2006),

21   an unreported case from the Northern District of Illinois involving McDonald's French fries, for

22   the proposition that some courts require notice even in the context of goods for human

23   consumption, it appears that another court, in a reported opinion the following year from that

24   same district, has reached the opposite result where the case involves, as here, personal

25   injuries.  See, In re McDonald's French Fries Litigation, 503 F.Supp. 2d 953, 956-57 (N.D. Ill.

26   2007) (a case also involving breach of warranty claims relating to McDonald's French fries).

27       Defendant also relies on  Hubbard v. General Motors Corp., 1996 WL 274081 (S.D.N.Y.

28   1996), to support its position that Plaintiff must plead that notice was given as a prerequisite

1 to his breach of warranty claims.  In Hubbard, a class brought claims again General Motors

2 based, in part, on warranty theories for defects in the braking system in the Chevrolet

3 Suburban.  That case is distinguishable because the court's entire analysis of § 2-607 involved

4 a distinctly different question than that presented here.  In Hubbard, the issue was whether

5 § 2-607(3)(a) requires a buyer to give notice only to his or her immediate seller, not a remote

6 manufacturer.  Moreover, the Hubbard case is distinguishable because of the particular

7 product involved, which, as in the other cases cited by Defendant, did not involve goods

8 intended for human consumption.

9         Accordingly, the Court holds Plaintiff has, at least at the pleading stage, sufficiently

10 alleged his breach of warranty claims.

11        Because the Court has held that notice is not required in this case under the applicable

12 New York law, it need not reach the question of whether adequate notice was pled based on

13 Plaintiff's allegations that the FDA informed defendants of the dangers of its Hydroxycut

14 products or whether the filing of Plaintiff's complaint constituted sufficient notice in this case.

15        **B.    New York General Business Law § 349 Claim - Count V**

16        Next, Defendant contends that Plaintiff's claim for violation of New York General

17 Business Law § 349 should be dismissed because the "allegations fail to establish the most

18 basic element of a cause of action pursuant to § 349: causation."  Motion, p. 4.  Defendant

19 argues that Plaintiff's complaint fails because he never alleges that he actually saw any

20 particular representations regarding the product prior to purchasing it.  Defendant cites Gale

21 v. Int'l Bus. Machines Corp., 781 N.Y.S. 2d 45, (N.Y. App. Div. 2004), a case in which the court

22 dismissed a § 349 claim because the plaintiff never alleged he saw any of the allegedly

23 deceptive statements before he purchased his computer hard drive.  Contrary to the plaintiff

24 in Gale, the Plaintiff here has alleged that he purchased Hydroxycut Hardcore Liquid Caplets

25 "[a]fter carefully reading and considering the claims" of defendants.  FAC ¶ 39.  The FAC

26 further specifically identifies many of the claims made by defendants and the sources from

27 which those claims came.  FAC ¶¶ 32, 34, 35.   Thus, upon review of the FAC, the Court

28 disagrees with Defendant.  Count V is not subject to dismissal for failure to plead causation.

1    For the same reasons, the Court rejects the arguments set forth in footnote 3 of

2  Defendant's Memorandum in support of its Motion to Dismiss.  See Motion, p. 5.

3    Nevertheless, the Court does agree with Defendant that Plaintiff's New York General

4  Business Law § 349 claim fails because he has not alleged the transaction in which he was

5  allegedly deceived took place in the state of New York.  The purpose and intent of § 349 is to

6  protect consumers in their transactions that take place in the sate of New York.  The authority

7  relied on by Plaintiff acknowledges such.  Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y. 2d 314,

8  324 (N.Y. 2002) ("As both the text of the statute and history suggest, the intent is to protect

9  consumers in their transactions that take place in New York State.").  In Goshen, New York's

10  highest court was called upon to determine the territorial reach of § 349 and flatly concluded

11  that "the transaction in which the consumer is deceived must occur in New York."  Id. at 324.

12    The court in Goshen specifically rejected the argument that Plaintiff makes here.

13  Specifically, Plaintiff argues that the statute is not only designed to protect consumers in New

14  York, "but also to prohibit [New York] corporations from engaging in deceptive practices."  But

15  the court in Goshen held that § 349 "*was not intended to police the out-of-state transactions*

16  *of New York companies . . .*").  Id. at 325 (emphasis added).

17    Plaintiff's broad reading of the terms "consumer" and "transaction" are unwarranted.

18  As reflected in the legislative history, this piece of consumer legislation was intended to protect

19  consumers in transactions occurring in New York:

20         Attorney General Robert Abrams' 1980 memorandum to Governor
           Hugh Carey described the law as adding "significant new protection
21         to consumers in this state" (Bill Jacket, L 1980, ch 346; see also Mem
           of Attorney General, 1963 NY Legis Ann, at 106 [noting that General
22         Business Law § 350 "borrows the substantive standards of the
           Federal Trade Commission Act and applies them to intrastate
23         transactions in New York"]).  To apply the statute to out-of-state
           transactions in the case before us would lead to an unwarranted
24         expansive reading of the statute, contrary to legislative intent, and
           potentially leading to the nationwide, if not global application of
25         General Business Law § 349 (see Oswego, 85 NY2d at 26 [striking a
           balance between protecting consumers and avoiding a "potential ...
26         tidal wave of litigation against businesses ... not intended by the
           Legislature"]).  Furthermore, the interpretation out-of-state plaintiffs
27         would have us adopt would tread on the ability of other states to
           regulate their own markets and enforce their own consumer protection
28         laws.

09MD2087

1   Goshen, 98 N.Y. 2d at 325.  Thus, Plaintiff's allegations that defendants "have promoted,

2   advertised, marketed and sold Hydroxycut products and specifically Hydroxycut Hardcore

3   Liquid Caplets, in New York . . ., Michigan and all 50 states" is unavailing where Plaintiff

4   himself alleges that he both purchased the Hydroxycut product and read the representations

5   about which he claims to have been deceived solely in the state of Michigan.  FAC ¶¶ 27, 39.

6       The fact that defendants may have developed the products or hatched the marketing

7   plans in New York is not determinative.  The phrase "deceptive acts or practices" under the

8   statute "is not the mere invention of a scheme or marketing strategy" but the actual

9   misrepresentation or omission to the consumer.  Goshen, 98 N.Y. 2d at 325.  Thus, where the

10  plaintiff in Goshen conceded that he received the deceptive information in Florida, purchased

11  his policy and paid his premiums in Florida through a Florida insurance agent, the court held:

12  "Plainly, for purposes of section 349, any deception took place in Florida, not New York."  The

13  same is true here.  Plaintiff here alleges he "purchased Hydroxycut Hardcore Liquid Caplets

14  for use as fat burners in or around March 2007 from the Wal-Mart retail store in Lansing,

15  Michigan" and further alleges that the deceptive information he read was on the product's

16  packaging.  FAC ¶ 35, 39.

17      Contrary to Plaintiff's suggestion here, the assertion that the same acts or practices may

18  have also deceived some unnamed, theoretical consumers in New York is not enough.

19  Goshen, 98 N.Y. 2d at 326 (dismissing the claims of parties who alleged to have been

20  deceived by purchasing the offending material in other states, while denying dismissal as to

21  the New York plaintiffs–even where the defendant was alleged to have conceived and

22  orchestrated the allegedly deceptive plan in New York prior to dissemination to potential

23  consumers).

24      Accordingly, since Plaintiff has not alleged that the transaction in which he claims he

25  was deceived occurred in New York, Count V in his complaint for violation of New York

26  General Business Law § 349 must be dismissed.  While the Court will grant Plaintiff leave to

27  amend as to Count V if he is able to do so, the Court notes that Plaintiff has already alleged

28  he purchased the Hydroxycut Hardcore Liquid Caplets, the product about which he claims to

09MD2087

have been deceived by statements on the product's packaging, in Lansing, Michigan.  FAC ¶ 39.  Therefore, the Court cautions Plaintiff about amending Count V if there is no basis to do so following the Court's holding herein.

### III. CONCLUSION

Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part** as stated above.  As to Count IV, the Court holds Plaintiff has alleged facts sufficient to state a claim for breach of warranty under New York law and the Motion to Dismiss is **DENIED**.  As to Count V, the Court holds Plaintiff has failed to state a claim under New York General Business Law § 349 and the Motion to Dismiss Count V is **GRANTED** without prejudice.  The Plaintiff shall have 21 days from the entry of this order to file any amended complaint correcting the deficiency in Count V.

The Court believes that motions for summary judgment are more appropriate than any additional motions to dismiss any subsequent amended complaint filed pursuant to this order.

IT IS SO ORDERED.

DATED:  April 26, 2010

Honorable Barry Ted Moskowitz
United States District Judge

8

09MD2087