1   ARTURO J. GONZÁLEZ (CA SBN 121490)
    WILLIAM F. TARANTINO (CA SBN 215343)
2   ALEXANDRIA A. AMEZCUA (CA SBN 247507)
    MORRISON & FOERSTER LLP
3   425 Market Street
    San Francisco, California  94105-2482
4   Telephone:  415.268.7000
    Facsimile:   415.268.7522
5
    ERIN M. BOSMAN (CA SBN 204987)
6   JAE HONG LEE (CA SBN 242203)
    MORRISON & FOERSTER LLP
7   12531 High Bluff Drive, Suite 100
    San Diego, California  92130-2040
8   Telephone:  858.720.5100
    Facsimile:   858.720.5125
9
    Attorneys for Specially Appearing Defendant
10  KERR INVESTMENT HOLDING CORP. F/K/A IOVATE
    HEALTH SCIENCES GROUP INC.
11

12                   UNITED STATES DISTRICT COURT

13                  SOUTHERN DISTRICT OF CALIFORNIA

14

15  IN RE HYDROXYCUT MARKETING AND          Case No. 3:09-md-02087-BTM-AJB
16  SALES PRACTICES LITIGATION
                                            **MEMORANDUM OF POINTS AND**
17                                          **AUTHORITIES IN SUPPORT OF**
                                            **DEFENDANT KERR INVESTMENT**
18                                          **HOLDING CORP. F/K/A IOVATE**
                                            **HEALTH SCIENCES GROUP INC.'S**
19                                          **CONSOLIDATED MOTION TO**
                                            **DISMISS FOR LACK OF PERSONAL**
20                                          **JURISDICTION (Fed. R. Civ. P.**
                                            **12(b)(2)) RELATING TO THE**
21                                          **CONSOLIDATED CLASS ACTION**

22                                          Special briefing schedule ordered.

23                                          Date:        October 13, 2010
                                            Time:        2:00 p.m.
24                                          Courtroom:   15
                                            Judge:       Hon. Barry T. Moskowitz
25
                                            Per Chambers' Rules, no oral argument
26                                          unless requested by Court.

27

28

1

**TABLE OF CONTENTS**

2
**Page**

3   I.      INTRODUCTION ............................................................................................. 1

4   II.     BACKGROUND ............................................................................................. 2

5           A.    Procedural History ............................................................................. 2

6           B.    Factual Background ............................................................................. 3

7                 1.     Factual Allegations Specific to Kerr ............................................. 4

                  2.     Jurisdictional Allegations Specific to Kerr ................................... 5

8   III.    ARGUMENT ................................................................................................. 6

9           A.    Plaintiffs Must Establish that Personal Jurisdiction over Kerr Comports
                  with the Requirements of State Long-Arm Statutes and Constitutional Due
10                Process Requirements. ........................................................................ 6

11          B.    Defendants' Motion Must Be Granted if the Exercise of Personal
                  Jurisdiction Does Not Comport with Due Process. ................................. 8

12          C.    Exercising Jurisdiction Over Kerr Does Not Comport with Due Process. ............ 8

13                1.     Plaintiffs Cannot Demonstrate General Jurisdiction over Kerr. ................ 9

                  2.     Plaintiffs Cannot Demonstrate Specific Jurisdiction over Kerr. ............... 11

14                3.     The Forum-Related Contacts of Kerr's Subsidiaries to Kerr Should
15                       Not be Imputed To Kerr. ..................................................................... 12

16                       a.     Plaintiffs Cannot Establish That Kerr's Subsidiaries are
                                Alter Egos of Kerr. ....................................................................... 12

17                              (i)     Analytical Framework for Alter Ego Theory of
                                        Jurisdiction ..................................................................... 13

18                              (ii)    Application of the Alter Ego Factors Does Not
                                        Support a Finding that Kerr is the Alter Ego of any
19                                      Defendant Subject to the Court's Jurisdiction. ................. 16

20                       b.     Plaintiffs Cannot Establish That Kerr's Subsidiaries are
                                Agents of Kerr. ............................................................................ 19

21                       c.     Plaintiffs Cannot Establish That Kerr's Subsidiaries and
                                Kerr formed a Conspiracy. ........................................................... 21

22   IV.    CONCLUSION ............................................................................................. 23

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alexander v. Circus Circus Enters., Inc.,*
  972 F.2d 261 (9th Cir. 1992)..................................................................................... 7, 11

*Am. Med. Sys., Inc. v. Biolitec, Inc.,*
  604 F. Supp. 2d 325 (D. Mass. 2009) .......................................................................... 17

*Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.,*
  551 F.2d 784 (9th Cir. 1977)......................................................................................... 7

*American Protein Corp. v. AB Volvo,*
  844 F.2d 56 (2d Cir. 1988) .......................................................................................... 17

*Anderson v. Ind. Black Expo, Inc.,*
  81 F. Supp. 2d 494 (S.D.N.Y. 2000)............................................................................. 8

*Asahi Metal Indus. Co. v. Superior Court of Cal.,*
  480 U.S. 102 (1987)................................................................................................... 7, 8

*AT&T v. Compagnie Bruxelles Lambert,*
  94 F.3d 586 (9th Cir. Cal. 1996) ................................................................................. 14

*Atlanta Gas Light Co. v. UGI Utils., Inc.,*
  No. 3:03-CV-6142005, 2005 U.S. Dist. LEXIS 43592 (M.D. Fla. Mar. 22, 2005) .............. 17

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
  223 F.3d 1082 (9th Cir. 2000)....................................................................................... 9

*Bell Oil & Gas Co. v. Allied Chem. Corp.,*
  431 S.W.2d 336 (Tex. 1968)........................................................................................ 17

*Best Cellars Inc. v. Grape Finds at Dupont, Inc.,*
  90 F. Supp. 2d 431 (S.D.N.Y. 2000)....................................................................... 22, 23

*BMC Software v. Marchand,*
  83 S.W.3d 789 (Tex. 2002).......................................................................................... 15

*BOSP Invs. v. Official Comm. of Unsecured Creditors (In re Sheridan),*
  187 B.R. 611 (N.D. Ill. 1995) ...................................................................................... 14

*Botwinick v. Credit Exch., Inc.,*
  213 A.2d 349 (Pa. 1965) ............................................................................................. 17

*Brown v. Readwood, Inc.,*
  No. 3:94-CV75-B-D,1996 U.S. Dist. LEXIS 21316 (N.D. Miss. Jan. 25, 1996).................. 13

*Calvert v. Huckins*,
    875 F. Supp. 674 (E.D. Cal. 1995)................................................................. 12, 13

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    No. 00-C-2447, 2003 U.S. Dist. LEXIS 11488 (N.D. Ill. Jul. 3, 2003)................................. 17

*Chenault v. Walker*,
    36 S.W. 3d 45 (Tenn. 2001)................................................................. 22

*China Technology Global Corp. v. Fuller, Tubb, Pomeroy & Stokes*,
    No. C-05-01793 JW, 2005 U.S. Dist. LEXIS 46137 (N.D. Cal. June 27, 2005)..................... 5

*Chirila v. Conforte*,
    47 Fed. Appx. 838 (9th Cir. 2002)......................................................... 21

*Commonwealth v. H&R Block, Inc.*,
    25 Mass. L. Rep. 92 (Mass. Super. Ct. 2008) ................................................. 20, 21

*Cross Country Home Servs., Inc. v. Home Serv. United States Corp.*,
    No. 08-61456-CIV-SEITZ/O'SULLIVAN, 2010 U.S. Dist. LEXIS 4709 (S.D. Fla.
    Jan. 5, 2010).............................................................................. 19

*Czarnecki v. Krause, Inc.*,
    No. 07-4384, 2008 U.S. Dist. LEXIS 67498 (E.D. Pa. Aug. 28, 2008) ................................. 17

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977)............................................................. 7

*Doe I v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. Cal. 2001) ...................................................... 1, 2, 7, 20

*Dole Food Co. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002).............................................................. 7

*Everitt v. Dover Downs Entm't, Inc.*,
    No. 98-6116, 1999 U.S. Dist. LEXIS 8525 (E.D. Pa. June 9, 1999) ...................................... 14

*F. Hoffman-La Roche, Ltd. v. Superior Ct.*,
    130 Cal. App. 4th 782 (Cal. App. 6th Dist. 2005) ........................................ passim

*Ferrigno v. Philips Elecs. N. Am. Corp.*,
    No. C-09-03085, 2010 U.S. Dist. LEXIS 59036 (N.D. Cal. June 1, 2010) ........................... 12

*Fields v. Sedgwick Associated Risks, Ltd.*,
    796 F.2d 299 (9th Cir. 1986).............................................................. 9

*Figi Graphics, Inc. v. Dollar Gen. Corp.*,
    33 F. Supp. 2d 1263 (S.D. Cal. 1998) .................................................. 8, 9, 10

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*,
   No. S-05-583 LKK/GGH, 2007 U.S. Dist. LEXIS 64017 (E.D. Cal. Aug. 17, 2007) ........... 16

*Gammill v. Lincoln Life & Annuity Distribs.*,
   200 F. Supp. 2d 632 (S.D. Miss. 2001) ................................................................................. 14

*Gibbons v. Brown*,
   716 So. 2d 868 (Fla. 1st DCA 1998) ...................................................................................... 8

*Goldstein v. Christiansen*,
   638 N.E.2d 541 (Ohio 1994) ................................................................................................... 8

*Gordon et al. v. Greenview Hosp., Inc.*,
   300 S.W. 3d 635 (Tenn. 2009) ...................................................................................... 17, 20

*Gregorie v. Alpine Meadows Ski Corp.*,
   No. S-08-259 LKK/DAD, 2009 U.S. Dist. LEXIS 69237 (E.D. Cal. Aug. 6, 2009) ............ 20

*Gutierrez v. Givens*,
   1 F. Supp. 2d 1077 (S.D. Cal. 1998) ..................................................................................... 21

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. Cal. 2003) ....................................................................................... 12

*Hawkins v. Upjohn Co.*,
   890 F. Supp. 601 (E.D. Tex. 1994) ....................................................................................... 21

*Healix Infusion Therapy, Inc. v. Helix Health, LLC*,
   No. H-08-0337, 2008 U.S. Dist. LEXIS 34562 (S.D. Tex. Apr. 25, 2008) ........................... 19

*Hendrickson v. Reg O Co.*,
   657 F.2d 9 (3d Cir. V.I. 1981) ................................................................................................. 8

*Hile Assocs. v. Leap Technologies*,
   No. 6:93-CV-636, 1995 U.S. Dist. LEXIS 8756 (M.D.N.C. Apr. 24, 1995) ........................ 14

*In re Dynamic Access Memory (DRAM) Antitrust Litig.*,
   No. C-02-1486 (PJH), 2005 U.S. Dist. LEXIS 30299 (N.D. Cal. Nov. 7, 2005) .................... 6

*In re Parmalat Sec. Litig.*,
   501 F. Supp. 2d 560 (S.D.N.Y. 2007) ................................................................................... 17

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners*, *Ltd.*,
   475 F. Supp. 2d 456 (S.D.N.Y. 2007) ................................................................................... 14

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ................................................................................................................. 7

*Japan Petroleum Co. (Nigeria), Ltd. v. Ashland Oil Co.*,
   456 F. Supp. 831 (D. Del. 1978) ........................................................................................... 17

*Jazini by Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. N.Y. 1998) ................................................................. 13, 14

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
  628 F.2d 1175 (9th Cir. 1980), *cert. denied*, 449 U.S. 1062 (1980) ...................................... 17

*Linde v. Arab Bank*,
  262 F.R.D. 136 (E.D.N.Y. 2009) ................................................................. 15

*Meteoro Amusement Corp. v. Six Flags, Inc.*,
  267 F. Supp. 2d 263 (N.D.N.Y 2003) ................................................................. 20

*Microsys Computing, Inc. v. Dynamic Data Sys., LLC*,
  No. 4:05-CV-2205, 2006 U.S. Dist. LEXIS 53397 (N.D. Ohio Aug. 2, 2006) ...................... 14

*Miller Yacht Sales, Inc. v. Smith*,
  384 F.3d 93 (3d Cir. 2004) ................................................................. 21

*Nicosia v. De Rooy*,
  72 F. Supp. 2d 1093 (N.D. Cal. 1999) ................................................................. 7, 22

*Norfolk So. Railway. Co v. Maynard*,
  437 S.E. 2d 277 (W. Va. 1993) ................................................................. 15

*Olympia Steel Bldgs. Sys. Corp. v. Gen. Steel Domestic Sales, LLC*,
  No. 06-1597, 2007 U.S. Dist. LEXIS 45505 (W.D. Pa. June 22, 2007) ............................... 13

*Pathfinder Mgmt. v. Mayne Pharma PTY*,
  No. 06-CV-2204 (WJM), 2008 U.S. Dist. LEXIS 61081 (D.N.J. Aug. 5, 2008) ................ 14

*Patterson v. Home Depot*,
  684 F. Supp. 2d 1170 (D. Ariz. 2010) ................................................................. 13, 20

*Portfolio Fin. Servicing Co. v. Sharemax.com, Inc.*,
  334 F. Supp. 2d 620 (D.N.J. 2004) ................................................................. 17

*Pyle v. Hatley*,
  239 F. Supp. 2d 970 (C.D. Cal. 2002) ................................................................. 22

*Rio Properties, Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ................................................................. 11

*Rollins v. Ellwood*,
  565 N.E.2d 1302 (Ill. 1990) ................................................................. 8

*Rual Trade Ltd. v. Viva Trade LLC*,
  549 F. Supp. 2d 1067 (E.D. Wis. 2008) ................................................................. 14

*Rumble v. Waterhouse*,
  No. 5:05-CV-133(WDO), 2007 U.S. Dist. LEXIS 64352 (M.D. Ga. Aug. 30, 2007) .......... 13

*Seltzer v. I.C. Optics, Ltd.*,
    339 F. Supp. 2d 601 (D.N.J. 2004) .................................................................. 14, 15

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990)...................................................................................... 7

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal. App. 4th 523 (Cal. App. 5th Dist. 2000) ...................................... 13, 15, 17

*State ex rel. Miller v. Internal Energy Mgmt. Corp.*,
    324 N.W.2d 707 (Iowa 1982) ............................................................................... 14

*Stauffacher v. Bennett*,
    969 F.2d 455 (7th Cir. 1992)......................................................................... 22, 23

*Strickland v. Champion Enters., Inc.*,
    No.1:06-CV-682-TFM (WO), 2007 U.S. Dist. LEXIS 46329 (M.D. Ala. 2007)............. 13, 15

*Stripling v. Jordan Prod. Co.*,
    234 F.3d 863 (5th Cir. 2000)......................................................................................... 8

*Susko, et al. v. Cox Enters., et al.*,
    No. 5:07-CV-144, 2008 U.S. Dist. LEXIS 69901 (N.D. W. Va. Sept. 16, 2008) ................ 17

*Thames v. Gunter-Dunn*,
    373 So. 2d 640 (Ala. 1979) ................................................................................. 20

*Trans Nat'l Commc'ns Int'l, Inc. v. Publishers Mktg. Outlet*,
    20 Mass. L. Rep. 220 (Mass. Super. Ct. 2005). ...................................................... 14

*United States v. Arrow*,
    No. 90-5701, 1990 U.S. Dist. LEXIS 17223 (E.D. Pa. Dec. 17, 1990)................................. 22

*United States v. Best Foods*,
    524 U.S. 51 (1998).............................................................................................. 18

*VCS Samoa Packing Co. v. Blue Continent Prods. (PTY) Ltd.*,
    83 F. Supp. 2d 1151 (S.D. Cal. 1998).................................................................... 6, 7, 11

*Wallace v. Int'l Lifestyles*,
    No. 06-1468, 2008 U.S. Dist. LEXIS 17755 (E.D. Pa. Mar. 6, 2008)................................... 17

*WRR Indus. v. Prologis*,
    No. 3:04-CV-2544-L, 2006 U.S. Dist. LEXIS 4128 (N.D. Tex. Feb. 2, 2006)...................... 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 12(b)(2) ........................................................................ 1, 2, 3, 23

Pursuant to this Court's Order of July 6, 2010 (Docket No. 288), Defendant Kerr Investment Holding Corp. f/k/a Iovate Health Sciences Group Inc. ("Kerr")[1] respectfully submits this Memorandum of Points and Authorities in support of its consolidated motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## I.      INTRODUCTION

Kerr is one of several defendants whom the plaintiffs allege have marketed, advertised, distributed, and sold Hydroxycut products throughout the U.S.  However, the plaintiffs' sparse allegations regarding Kerr's involvement in the allegedly wrongful conduct are bare legal conclusions, unsupported by any facts that could justify the exercise of personal jurisdiction over Kerr.  Over the past several months, Kerr has produced two witnesses for deposition and has produced thousands of pages of financial, tax and corporate records that evidence the following essential facts: (1) Kerr does not conduct, and has never conducted, any business in the United States; (2) Kerr is a Canadian corporation headquartered in Oakville, Ontario, Canada; and (3) Kerr is the holding company for two of the named defendants in this action: Iovate Health Sciences Inc. and Iovate Health Sciences U.S.A., Inc.[2]   As the evidence submitted in support of this motion demonstrates, Kerr is not and has never been directly involved in the design, manufacture, marketing, distribution or sale of the Hydroxycut-branded products that the plaintiffs allege to have purchased and consumed.  In short, Kerr does not have the type of "minimum contacts" with the United States that could support a finding that this Court has personal jurisdiction over Kerr.  *See, e.g., Doe I v. Unocal Corp*., 248 F.3d 915, 923 (9th Cir. Cal. 2001) (stating that a defendant must have certain "minimum contacts" with the jurisdiction in order for the court to exercise general or specific jurisdiction over the defendant) (hereinafter

---

[1]  Plaintiffs in the relevant actions frequently name as a defendant Iovate Health Sciences Group Inc., which is now known as Kerr Investment Holding Corp.  For consistency's sake, this motion will refer to the entity as "Kerr."  The change of name does not alter the end result—that the Court lacks personal jurisdiction over this entity—in any way.

[2]  Neither Iovate Health Sciences Inc. nor Iovate Health Sciences U.S.A., Inc. has contested this Court's jurisdiction in any of the relevant actions.

1    *Unocal*).  Accordingly, this case must be dismissed against Kerr under Rule 12(b)(2) of the

2    Federal Rules of Civil Procedure.

3        **II.     BACKGROUND**

4            **A.     Procedural History**

5            On December 22, 2009, twenty named plaintiffs filed a First Consolidated Amended Class

6    Action Complaint (Docket No. 28[3]) against Iovate Health Sciences Group Inc. (n/k/a Kerr);

7    Iovate Health Sciences Inc.; Iovate Health Sciences U.S.A., Inc.; GNC Corporation; Wal-Mart

8    Stores, Inc.; Walgreens Company; CVS Caremark Corp.; and Vitamin Shoppe Industries, Inc.

9    ("CCA Complaint").  (CCA Complaint, 1:1-6.)  Individual personal injury actions have been filed

10   in various jurisdictions across the country alleging tort claims against similar sets of defendants, [4]

11   including Kerr.  These individual complaints[5] ("MDL Complaints") have been transferred to the

12   multidistrict litigation *In re Hydroxycut Marketing and Sales Practices Litigation*, Case No. 3:09-

13           [3] Unless otherwise noted, all docket references are made to *In re Hydroxycut Marketing*
14   *and Sales Practices Litigation*, Case No. 3:09-md-02087-BTM-AJB.

15           [4] In addition to those defendants named in the CCA Complaint, certain of the relevant
     individual complaints name additional defendants, including Iovate Health Sciences Research,
16   Inc.; Iovate Health Sciences Capital, Inc.; Iovate Copyright, Ltd.; Iovate HC 2005 Formulations,
     Ltd.; Muscletech Research and Development, Inc.; HDM Formulations Ltd.; Vitaquest
17   International, LLC; GN Oldco Corporation; General Nutrition Centers, Inc.; General Nutrition
     Companies, Inc.; and Wal-Mart Stores East, L.P.  See, e.g., the complaints in *Abarca v. Iovate*
18   *Health Sciences U.S.A., Inc. et. al.*, Case No. 3:09-cv-02492-BTM-AJB (hereinafter *Abarca*) ¶¶
     5-15; *Davis v. GNC Corporation, et. al.*, Case No. 3:10-cv-00587-BTM-AJB (hereinafter *Davis*)
19   ¶¶ 3-12; *Ewing v. Iovate Health Sciences U.S.A., Inc., et. al.*, Case No. 3:10-cv-01257-BTM-AJB
     (hereinafter *Ewing*) ¶¶ 4-12; *Rutherford, et. al. v. Muscletech Research & Development, et. al.*,
20   Case No. 3:10-cv-00673-BTM-AJB (hereinafter *Rutherford*) ¶ 17; *Sims v. Iovate Health Sciences*
     *U.S.A., Inc., et. al.*, Case No. 3:10-cv-01240-BTM-AJB (hereinafter *Sims*) ¶¶ 17-25.

21           [5] Specifically, the complaints in the following actions name Kerr as a defendant: *Abarca*;
22   *Bough v. Kerr Investment Holding Corp., et. al.*, Case No. 3:09-cv-02511-BTM-AJB (hereinafter
     *Bough*); *Brown v. Kerr Investment Holding Corp., et. al.*, Case No. 3:10-cv-00237-BTM-AJB
23   (hereinafter *Brown*); *Davis*; *Dremak v. Iovate Health Sciences Group, Inc., et. al.*, Case No. 3:09-
     cv-01088-BTM-AJB (hereinafter *Dremak*); *Ewing*; *Gulley v. Kerr Investment Holding Corp., et.*
24   *al.*, Case No. 3:10-cv-876-BTM-AJB (hereinafter *Gulley*); *Mendoza v. Iovate Health Sciences*
     *U.S.A., Inc., et. al.*, Case No. 3:09-cv-02370-BTM-AJB (hereinafter *Mendoza*); *Moraga v. Iovate*
25   *Health Sciences U.S.A., Inc., et. al.*, Case No. 3:09-cv-02892-BTM-AJB (hereinafter *Moraga*);
     *Noyola v. Iovate Health Sciences U.S.A., Inc., et. al.*, Case No. 3:09-cv-02509-BTM-AJB
26   (hereinafter *Noyola*);  *Robertson v. Iovate Health Sciences, Inc., et. al.*, Case No. 3:09-cv-02508-
     BTM-AJB (hereinafter *Robertson*); *Rutherford*; *Schwisow v. Iovate Health Sciences U.S.A., Inc.,*
27   *et. al.*, Case No. 3:10-cv-874-BTM-AJB (hereinafter *Schwisow*); *Sims*; and *Slyter v. GNC*
     *Corporation, et. al.*, Case No. 3:10-cv-00670-BTM-AJB (hereinafter *Slyter*).

28

1    md-02087-BTM-AJB (hereinafter *In re Hydroxycut*).  Kerr has previously filed motions to

2    dismiss most of the MDL Complaints for lack of personal jurisdiction, and has filed a motion to

3    dismiss the CCA Complaint on the same ground.[6]   On July 6, 2010, this Court issued an order

4    granting Kerr's request to withdraw the pending motions to dismiss and allowing Kerr to refile its

5    motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of

6    Civil Procedure.[7]

7                            **B.      Factual Background**

8            The CCA Complaint purports to state claims for violations of various state unfair

9    competition laws, breach of express and implied warranties, and unjust enrichment based on

10   defendants' manufacture, marketing, and sale of fourteen Hydroxycut-branded products (the

11   "Products").  (CCA Complaint ¶¶ 1-3.)  The plaintiffs allege that the Products are dangerous and

12   ineffective (*id.* ¶ 1), and that the defendants—both manufacturers and retailers—"marketed and

13   sold the Products to millions of unsuspecting consumers."  (*Id.*)  More specifically, the CCA

14   Complaint alleges that each named plaintiff "was exposed to and read" defendants' "advertising

15   claims," "purchased" one or more Products "believing [they] were reasonably safe and effective

16   as a dietary supplement and for weight-loss purposes," "used the product[s] as directed," "learned

17   of [] potential serious health risks," and "stopped consuming the products."  (*Id.* ¶¶ 7-20, 22-26.)

18          The MDL Complaints allege similar claims, asserting causes of action for negligence,

19   strict liability, breach of express and implied warranties, and related common law and statutory

20          [6]Kerr filed motions to dismiss in *Abarca* on May 26, 2010 (Docket No. 225), *Bough* on
21   November 30, 2009 (Docket No. 19), *Brown* on February 2, 2010 (Docket No. 69), *Davis* on May
     5, 2010 (Docket No. 196), *Dremak* on July 15, 2009 (Docket No. 19), *Gulley* on June 2, 2010
22   (Docket No. 233-0), *Mendoza* on January 22, 2010 (Docket No. 55), *Moraga* on March 5, 2010
     (Docket No. 109), *Noyola* on January 22, 2010 (Docket No. 48), *Robertson* on November 30,
23   2009 (Docket No. 19), *Rutherford* on April 30, 2010 (Docket No. 188), *Schwisow* on May 14,
     2010 (Docket No. 214), *Sims* on June 28, 2010 (Docket No. 278), and *Slyter* on April 16, 2010
24   (Docket No. 168).  Kerr also moved to dismiss the CCA Complaint once previously, on February
     12, 2010 (Docket No. 83).  Kerr has not filed a separate motion to dismiss in *Ewing*.

25          [7] Kerr anticipates filing this same memorandum in support of its motion(s) to dismiss the
     MDL Complaints, once the time period for the individual personal injury plaintiffs to object to
26   the withdrawal and re-filing of Kerr's motion(s) to dismiss has lapsed and any such objections
     have been resolved.  This Court by its Order of July 6, 2010 has required that the plaintiffs file
27   any such objections by July 30, 2010.

28

1   torts.  (*See, e.g.*, *Brown* complaint, ¶¶ 56-115 (asserting claims for negligence, strict liability

2   (failure to warn and defective design), breach of express and implied warranty, common law

3   fraud, punitive damages, and violation of New York G.B.L. § 349); *Rutherford* complaint, ¶¶ 48-

4   112 (asserting claims for negligence/wantonness, strict liability, intentional and negligent

5   misrepresentation, fraud and misrepresentation, breach of express and implied warranties, and

6   unjust enrichment).)

### 1.  Factual Allegations Specific to Kerr

8   The CCA Complaint and the MDL Complaints contain few factual allegations specific to

9   Kerr.  The CCA Complaint names Kerr as one of the defendants, but the only allegations relating

10   to Kerr's conduct are that "[t]he decisions, acts and omissions alleged were conceived by,

11   implemented, and at all times carried out by [Kerr]," and that Kerr "was the co-participant in all

12   of the conduct and omissions alleged."  (CCA Complaint ¶ 27.)  The CCA Complaint also alleges

13   that Kerr "paid for the Iovate Defendants' defense costs in connection with United States class

14   action litigation" and that a court-appointed monitor of the Kerr entities, RSM Richter Inc., issued

15   a monitoring report on January 23, 2006, which provided that Iovate Health Sciences Group Inc.

16   (Kerr) purchased assets from MuscleTech and entered into license agreements with MuscleTech

17   regarding how MuscleTech's business functions would be continued.  (*Id.*)  These factual

18   allegations, even if true, are insufficient to make a prima facie showing of personal jurisdiction

19   over Kerr.

20   With one exception, the MDL Complaints contain <u>no</u> factual allegations specific to Kerr.

21   Instead, they make general allegations regarding defendants as a group, such as "Defendants are

22   in the business of formulating, designing, manufacturing, marketing, advertising, distributing and

23   selling various dietary supplements including muscle builders and fat burners including, but not

24   limited to the Hydroxycut Products."  (*Davis* complaint ¶ 17.)  The sole MDL Complaint that

25   does make factual allegations specific to Kerr alleges, in the same boilerplate language used in

26   allegations against each defendant in the action, that Kerr is in the business of "manufacturing,

27   designing, labeling, advertising, promoting, distributing and/or selling dietary supplements,

28   including but not limited to Hydroxycut Products."  (Schwisow complaint ¶ 6.)  Allegations

1   against "defendants" in the aggregate and boilerplate allegations made against all defendants are

2   insufficient to make a prima facie showing that this Court may exercise personal jurisdiction over

3   Kerr.  *See China Technology Global Corp. v. Fuller, Tubb, Pomeroy & Stokes*, No. C-05-01793

4   JW, 2005 U.S. Dist. LEXIS 46137, at *9-10 (N.D. Cal. June 27, 2005) (granting defendants'

5   motion to dismiss for lack of personal jurisdiction where the complaint's allegations were "vague

6   and conclusory" because "[o]nly the well pled facts of plaintiff's complaint, as distinguished from

7   mere conclusory allegations, must be accepted as true") (internal citation omitted).

8   **2.      Jurisdictional Allegations Specific to Kerr**

9   The CCA Complaint and the MDL Complaints also lack jurisdictional allegations specific

10  to Kerr.  Instead, plaintiffs in the CCA Complaint attempt to establish personal jurisdiction over

11  all of the defendants collectively, by alleging that the defendants:

12  
13  
14  
15  
16  
17  
> are authorized to do business and are conducting business throughout the United States, including California; they have specifically marketed and sold the Products in the United States, including California; and they have sufficient minimum contacts with the various states of the United States, including California; and/or sufficiently avail themselves of the markets of the various states of the United States, including California, through their promotion, sales, and marking within the United States, including California, to render the exercise of jurisdiction by this Court permissible.

18  (CCA Complaint ¶ 4.)

19  The MDL Complaints make similarly general allegations, grouping defendants together

20  and alleging generally that "Defendants have each done substantial business in each state in the

21  United States . . . ."  (*Abarca* complaint ¶ 20, *Mendoza* complaint ¶ 19, *Moraga* complaint ¶ 19;

22  *see also Bough* complaint ¶ 23 (stating the defendants as a group conducted substantial business

23  in the relevant district), *Brown* complaint ¶ 23 (same), *Dremak* complaint ¶ 5 (same), *Gulley*

24  complaint ¶ 23 (same), *Robertson* complaint ¶ 22 (same), *Schwisow* complaint ¶ 8 (same), and

25  *Davis* complaint ¶ 15 (stating the defendants each derive substantial revenue from

26  Pennsylvania).)  The *Slyter* complaint does not make any jurisdictional allegations as to any of

27  the defendants.  Finally, the three remaining MDL Complaints do state that "At all times relevant

28  hereto, [Kerr] was and is doing business within this judicial district."  (*Ewing* complaint ¶ 9,

1  *Rutherford* complaint ¶ 14; *see also Sims* complaint ¶ 12.)  However, the allegations of

2  jurisdiction contained in these MDL Complaints are insufficient, as they are controverted by

3  affidavit.  (Heikkila Decl. ¶¶ 2, 4-8.)

4       As evidenced by the declaration of Jo-Ann Heikkila, the boilerplate allegations of the

5  CCA Complaint and the MDL Complaints are untrue.  Kerr does not promote, market, distribute,

6  or sell any products anywhere in the United States.  (Heikkila Decl. ¶ 2.)  It does not do any

7  business in the United States, and, therefore, it is not subject to personal jurisdiction in the United

8  States.  (*Id.*)

9      **III.    ARGUMENT**

10          **A.    Plaintiffs Must Establish that Personal Jurisdiction over Kerr
11               Comports with the Requirements of State Long-Arm Statutes and
                Constitutional Due Process Requirements.**

12       Federal courts in the Ninth Circuit apply a two-part test to determine the propriety of

13  exercising personal jurisdiction: "First, the relevant state's long-arm statute must permit

14  jurisdiction.  Second, the exercise of jurisdiction must be consistent with the demands of due

15  process."  *VCS Samoa Packing Co. v. Blue Continent Prods. (PTY) Ltd.*, 83 F. Supp. 2d 1151,

16  1153 (S.D. Cal. 1998) (quoting *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir.

17  1980)).  In an MDL such as this, the Court "is entitled to exercise personal jurisdiction over each

18  defendant only to the same degree that the original transferor court could have.  Accordingly, this

19  [C]ourt must evaluate the nature of defendant['s] contacts in the relevant forum states with regard

20  to the long-arm statutes of those states . . . [and] will look to its own circuit as the source of

21  federal law."  *In re Dynamic Access Memory (DRAM) Antitrust Litig.*, No. C-02-1486 (PJH),

22  2005 U.S. Dist. LEXIS 30299, at *7-8 (N.D. Cal. Nov. 7, 2005) (internal citation omitted).

23       In addition to demonstrating personal jurisdiction over Kerr would comport with the long-

24  arm statutes of the relevant states, the plaintiffs must also demonstrate that the exercise of

25  jurisdiction would comport with due process.  "Constitutional due process concerns are satisfied

26  when a nonresident defendant has certain minimum contacts with the forum such that the

27  maintenance of the suit does not offend traditional conceptions of fair play and substantial

28

1  justice." *Unocal,* 248 F.3d at 923 (citations and internal quotations omitted); *accord*

2  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

3       Plaintiffs bear the burden of establishing that this Court may exercise personal jurisdiction

4  over Kerr consistent with due process requirements. *Unocal*, 248 F.3d at 922; *accord VCS*

5  *Samoa*, 83 F. Supp. 2d at 1153.  To meet this burden, plaintiffs must establish a prima facie case

6  based upon facts sufficient to support a finding that jurisdiction is appropriate.  *See Sher v.*

7  *Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557

8  F.2d 1280, 1285 (9th Cir. 1977).  While the Court must assume the truth of "well pled"

9  allegations, it "need not . . . assume the truth of conclusory allegations." *Nicosia v. De Rooy*, 72

10  F. Supp. 2d 1093, 1097 (N.D. Cal. 1999).  Allegations in a complaint that are contradicted by

11  affidavit cannot support a finding of personal jurisdiction.  *See, e.g., Alexander v. Circus Circus*

12  *Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) ("[F]or purposes of personal jurisdiction, we may

13  not assume the truth of allegations in a pleading which are contradicted by affidavit[.]") (citations

14  omitted); *Data Disc*, 557 F.2d at 1284 (recognizing that a court may not assume the truth of

15  allegations in a pleading which are contradicted by an affidavit, and that a court may decide a

16  disputed issue of fact where only one side is supported by affidavit).

17       If the defendant successfully rebuts jurisdictional allegations in a complaint, the

18  "plaintiff . . . must present admissible evidence to support the court's exercise of personal

19  jurisdiction." *Nicosia*, 72 F. Supp. 2d at 1097.  Therefore, a plaintiff cannot "simply rest on the

20  bare allegations of its complaint, but rather [is] obligated to come forward with facts, by affidavit

21  or otherwise, supporting personal jurisdiction." *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.*,

22  551 F.2d 784, 787 (9th Cir. 1977) (citation omitted); *accord Dole Food Co. v. Watts*, 303 F.3d

23  1104, 1108 (9th Cir. 2002).

24       The U.S. Supreme Court has cautioned lower courts to exercise "great care and reserve"

25  when extending personal jurisdiction over a foreign citizen. *Asahi Metal Indus. Co. v. Superior*

26  *Court of Cal.*, 480 U.S. 102, 115 (1987) (internal quotation omitted).  For example, in *Asahi*

27  *Metal Industries Co.*, the Supreme Court rejected jurisdiction over a Japanese defendant

28  component manufacturer as "unreasonable and unfair," specifically holding that "[procedural and

1    substantive interests of other nations] . . . will be best served by careful inquiry into the

2    reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find

3    the serious burdens on an alien defendant outweighed by minimal interests on the part of the

4    plaintiff or the forum State." *Id*. at 115-16.

5              **B.    Defendants' Motion Must Be Granted if the Exercise of Personal
                        Jurisdiction Does Not Comport with Due Process.**
6

7              The Court must look to the long-arm statutes of the respective states under whose laws the

8    CCA Complaint and MDL Complaints were brought to determine whether it can exercise

9    personal jurisdiction over Kerr in each case.  Naturally, no state's long-arm statute may exceed

10   the bounds of the U.S. Constitution.[8]  *Hendrickson v. Reg O Co*., 657 F.2d 9, 13-14 (3d Cir. V.I.

11   1981) ("It is obvious that the reach of any long arm statute may not exceed the grasp permitted by

12   the Constitution.").  Thus, if the exercise of personal jurisdiction over Kerr does not comport with

13   due process, this Court cannot exercise personal jurisdiction over Kerr in any of the *In re*

14   *Hydroxycut* actions.

15

16

17

18   _____

19          [8] In fact, several of the relevant states have long-arm statutes that are significantly
     narrower than what is permitted by the Due Process clause.  New York, Florida, Illinois, Ohio
20   and Mississippi each have long-arm statutes that do not extend to the limits imposed by due
     process.  *See Anderson v. Ind. Black Expo, Inc*., 81 F. Supp. 2d 494, 501 (S.D.N.Y. 2000) (noting
21   that New York's long-arm statute "does not extend New York's long-arm jurisdiction to the full
     extent permitted by the Constitution") (internal quotation omitted); *Gibbons v. Brown*, 716 So. 2d
22   868, 869 (Fla. 1st DCA 1998) ("Generally speaking, Florida's long-arm statutes are of a class that
     requires more activities or contacts to allow service of process than are currently required by the
23   decisions of the United States Supreme Court."); *Rollins v. Ellwood*, 565 N.E.2d 1302, 1314 (Ill.
     1990) ("Illinois' long-arm statute . . . may well restrict the power that the courts of this State have
24   to bring nonresidents before them to a greater extent than do the Federal due process clause and
     the 'minimum contacts' standard developed over the years by the Supreme Court."); *Stripling v.*
25   *Jordan Prod. Co*., 234 F.3d 863, 869 n.7 (5th Cir. 2000) ("Mississippi's long-arm statute is not
     coextensive with due process."); *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994)
26   (noting that "Ohio has not extended long-arm jurisdiction to the limits of due process").  Kerr
     notes that under the laws of these states, even a showing that the exercise of jurisdiction comports
27   with due process may not be enough for this Court to take personal jurisdiction over Kerr.
     However, since the exercise of jurisdiction in the *In re Hydroxycut* actions does not comport with
28   due process, Kerr does not separately analyze the long-arm statutes of these states here.

**C.     Exercising Jurisdiction Over Kerr Does Not Comport with Due Process.**

Due process requires plaintiffs to make a prima facie case of either "general" or "specific" jurisdiction.  *Figi Graphics, Inc. v. Dollar Gen. Corp.*, 33 F. Supp. 2d 1263, 1265-66 (S.D. Cal. 1998).  As the plaintiffs in the *In re Hydroxycut* actions cannot establish a prima facie case for either, the due process clause prohibits the exercise of personal jurisdiction over Kerr.

**1.     Plaintiffs Cannot Demonstrate General Jurisdiction over Kerr.**

To establish general jurisdiction over Kerr, plaintiffs must demonstrate that Kerr has contacts with the states under whose laws the *In re Hydroxycut* actions were originally brought that are "substantial" or "continuous and systematic" such that the exercise of jurisdiction is reasonable and just.  *Id.* at 1265 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).  The test for determining general jurisdiction is "a fairly high standard in practice" requiring the nonresident defendant's contacts with the forum state "be of the sort that approximate physical presence." *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id.* at 1086.

The CCA Complaint and the MDL Complaints are completely devoid of allegations demonstrating that Kerr has contacts "of the sort that approximate physical presence" in any of the states under whose laws the *In re Hydroxycut* actions were originally brought.  In fact, Kerr has not conducted <u>any</u> activities or business in the United States.  In support of this motion, Kerr has submitted the declaration of Jo-Ann Heikkila, which establishes the following facts:

- Kerr does not manufacture or sell, and has never manufactured or sold, any Hydroxycut-branded products to consumers.  (Heikkila Decl. ¶ 2.)

- Kerr is a foreign holding company, incorporated in and with its principal place of business in Canada. (*Id.* ¶ 3.)

- Kerr is not, and has never been, licensed to do business in the United States, and has not done business anywhere in the country. (*Id.* ¶ 4.)

- Kerr does not maintain and has never maintained an office, bank account or telephone number in the United States. (*Id.* ¶ 5.)

- Kerr does not maintain and has never maintained a website that can be accessed in the United States. (*Id.* ¶ 6.)

- Kerr does not pay, nor has it ever paid, any business taxes anywhere in the United States. (*Id.* ¶ 7.)

- Kerr does not own or lease, nor has it ever owned or leased, any real or personal property in the United States. (*Id.* ¶ 8.)

- Kerr does not advertise or solicit, nor has it ever advertised or solicited, business from customers in the United States. (*Id.* ¶ 9.)

In light of this evidence, the plaintiffs' conclusory jurisdictional allegations are insufficient to make a prima facie case of general jurisdiction. Plaintiffs' allegation that Kerr paid the defense costs of the Iovate Defendants in previous litigation in the United States is inadequate to establish substantial or continuous and systematic contacts by Kerr with any of the forum states. (CCA Complaint ¶ 27.) Further, the RSM Richter report quoted in the CCA Complaint, taken on its face, merely establishes that Kerr purchased assets from MuscleTech; however, Kerr's *subsidiaries*—not Kerr—continued the business functions following the purchase, including the sale of Hydroxycut-branded products. As established by Ms. Heikkila, Kerr has never manufactured or sold Hydroxycut-branded products in the United States or anywhere else. (Heikkila Decl. ¶ 2.)

Plaintiffs have thus failed to allege, and cannot show, that Kerr had substantial or continuous and systematic contacts with California or any of the other states under whose laws the *In re Hydroxycut* actions were originally brought of the sort that could approximate physical presence. They have failed to meet their burden of establishing a basis for this Court to exercise general jurisdiction over Kerr, a Canadian corporation. *See Figi Graphics*, 33 F. Supp. 2d at 1265-66 (granting motion to dismiss for lack of personal jurisdiction where nonresident

1    corporation did not conduct business, maintain offices, have bank accounts, or market or sell

2    products in the forum state).

3              **2.        Plaintiffs Cannot Demonstrate Specific Jurisdiction over Kerr.**

4          Where, as here, the Court cannot exercise general jurisdiction over the nonresident

5    defendant, the issue arises whether it may nevertheless exercise specific jurisdiction over the

6    defendant in that particular case.  To make a prima facie case of specific jurisdiction, plaintiffs

7    must show that "(1) defendant purposefully availed itself of the privilege of conducting activities

8    in [the forum state]; (2) the claims arose from defendant's activities in [the forum state]; and

9    (3) jurisdiction is reasonable." *VCS Samoa*, 83 F. Supp. 2d at 1155.  Where specific jurisdiction

10   is premised on conduct occurring outside the state, a "non-resident defendant purposefully avails

11   itself of the forum if its contacts with the forum are attributable to (1) intentional acts;

12   (2) expressly aimed at the forum; (3) causing harm, the brunt of which is suffered—and which the

13   defendant knows is likely to be suffered—in the forum." *Rio Properties, Inc. v. Rio Int'l

14   Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (analyzing the "effects doctrine" to establish

15   purposeful availment prong of specific jurisdiction test).

16         The CCA Complaint and MDL Complaints fail to allege that Kerr engaged in conduct in

17   any of the relevant states.  Nor do the plaintiffs allege that Kerr engaged in any conduct outside of

18   the relevant states but with an effect in these states that could establish purposeful availment.  As

19   discussed above, the only allegations in any of the relevant complaints that could be construed as

20   demonstrating jurisdictional contacts are contradicted by affidavit.  (Heikkila Decl. ¶¶ 2-9.)

21   While the plaintiffs might argue that their plain allegations are enough to establish purposeful

22   availment by Kerr, such allegations are insufficient as a matter of law.  *See Alexander*, 972 F.2d

23   at 262 (allegations contradicted by affidavit cannot support a prima facie case).

24         In sum, the CCA Complaint and MDL Complaints do not support a finding of specific

25   jurisdiction over Kerr.  Plaintiffs have not alleged that Kerr purposefully availed itself of the

26   privileges of conducting business in California or any of the other states under whose laws the *In

27   re Hydroxycut* actions were originally brought by virtue of some activity that has given rise to

28   their claims.

**3.      The Forum-Related Contacts of Kerr's Subsidiaries to Kerr Should Not be Imputed To Kerr.**

As Kerr lacks any jurisdictional contacts of its own with the United States, due process does not allow for the exercise of jurisdiction over Kerr.  Still, Kerr anticipates that the plaintiffs in the will claim that the forum-related contacts of Kerr's subsidiaries, including Iovate Health Sciences U.S.A., Inc. and Iovate Health Sciences Inc., should be imputed to Kerr for purposes of the jurisdictional analysis.  Plaintiffs have previously informed the Court that they intend to argue that the subsidiary defendants are the alter egos or agents of Kerr.  As demonstrated below, neither of these theories provide a basis for this Court to exercise jurisdiction over Kerr.  Nor can the Court exercise jurisdiction over Kerr on the basis of any alleged conspiracy between Kerr and its subsidiaries.

**a.      Plaintiffs Cannot Establish That Kerr's Subsidiaries are Alter Egos of Kerr.**

The alter ego theory is a means of obtaining personal jurisdiction over a non-resident defendant.  *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. Cal. 2003) (stating that if an alter ego relationship exists, a subsidiary's forum-related contacts may be imputed to the out-of-state parent corporation for jurisdictional purposes); *F. Hoffman-La Roche, Ltd. v. Superior Ct.*, 130 Cal. App. 4th 782, 796 (Cal. App. 6th Dist. 2005) ("Under [the alter ego and agency] theories, the jurisdictional analysis bypasses the foreign defendant's direct "minimum contacts" with California as the contacts of that company are imputed via the presence of the local [subsidiary], through whom the foreign [parent company] acts.").

Plaintiffs bear the burden of demonstrating that an alter ego relationship exists, and must overcome the presumption of corporate separateness.  *See Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (noting that establishing jurisdiction based on an alter ego theory carries a higher burden than demonstrating personal jurisdiction would usually require, due to the presumption of corporate separateness); *Ferrigno v. Philips Elecs. N. Am. Corp.*, No. C-09-03085, 2010 U.S. Dist. LEXIS 59036, at *10-12 (N.D. Cal. June 1, 2010) (granting a defendant's

1   motion to dismiss for lack of personal jurisdiction where plaintiff had not established a prima

2   facie case of alter ego); *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 540

3   (Cal. App. 5th Dist. 2000) (stating that mere allegations of an alter ego relationship are

4   insufficient for the court to take jurisdiction over an out-of-state defendant, instead plaintiffs

5   "must present evidence to justify a finding that the requisite jurisdictional minimum contacts

6   exist") (hereinafter *Sonora Diamond*); *Olympia Steel Bldgs. Sys. Corp. v. Gen. Steel Domestic*

7   *Sales, LLC*, No. 06-1597, 2007 U.S. Dist. LEXIS 45505, at *15-18 (W.D. Pa. June 22, 2007)

8   (granting defendant's motion to dismiss and noting that once a defendant has challenged the

9   court's jurisdiction and jurisdictional discovery has been granted, the plaintiff must come forward

10   with facts that demonstrate jurisdiction is appropriate).  Unless the court finds that an alter ego

11   relationship exists, the subsidiary's forum-related contacts cannot be imputed to the parent

12   corporation.  *See generally F. Hoffman-La Roche, Ltd.*, 130 Cal. App. 4th at 796.

13                     **(i)      Analytical Framework for Alter Ego Theory of
                                  Jurisdiction**
14

15          Alter ego is an "extreme remedy." *Calvert*, 875 F. Supp. at 678 (internal quotation

16   omitted).  Courts in the Ninth Circuit and elsewhere are reluctant to apply the alter ego theory to

17   assert jurisdiction over out-of-state defendants, and note that the theory should be utilized "only

18   in exceptional circumstances."  *Id.*; *accord Brown v. Readwood, Inc.*, No. 3:94-CV75-B-D,1996

19   U.S. Dist. LEXIS 21316, at *4 (N.D. Miss. Jan. 25, 1996) ("The doctrine of piercing the

20   corporate veil should be applied with great caution, and not precipitately.") (internal quotation

21   omitted).

22          To invoke the alter ego theory of jurisdiction, the laws of the relevant jurisdictions

23   generally require plaintiffs to demonstrate that (1) there is a unity of interest and ownership

24   between two corporate entities such that there does not exist a separateness between them; and (2)

25   fraud or injustice would result if the acts in question were treated as those of only one of the

26   corporate entities.[9]  *See, e.g., Sonora Diamond*, 83 Cal. App. 4th at 538; *Jazini by Jazini v. Nissan*

27   _____
     [9] *See also Strickland v. Champion Enters., Inc.*, No.1:06-CV-682-TFM (WO), 2007 U.S. Dist.
     LEXIS 46329, at *12 (M.D. Ala. 2007) (requiring a showing of fraud, injustice or inequitable

28                                                          (Footnote continues on next page.)

1    *Motor Co.*, 148 F.3d 181, 185 (2d Cir. N.Y. 1998) (noting common ownership is "essential" to a

2    finding that a subsidiary is a "mere department" of its parent company).  The level of control the

3    parent corporation exerts over the subsidiary must greatly exceed the control one would expect to

4    find in a healthy parent-subsidiary relationship, and must rise to the level of "domination" or a

5    similar extreme.  *See Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 610-11 (D.N.J. 2004)

6    (refusing to assert jurisdiction over a defendant parent company based on the alter ego theory of

7    jurisdiction where the parent company's control of the subsidiary "did not reach the point of

8    dominance.") (internal quotation omitted); *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586,

9    591 (9th Cir. Cal. 1996) (affirming that no alter ego relationship existed where, even after

10   _____

     (Footnote continued from previous page.)

11   result under Alabama law); *Patterson v. Home Depot*, 684 F. Supp. 2d 1170, 1178 (D. Ariz.
     2010) (requiring a showing of fraud or injustice under Arizona law); *Rumble v. Waterhouse*, No.

12   5:05-CV-133(WDO), 2007 U.S. Dist. LEXIS 64352, at *15 (M.D. Ga. Aug. 30, 2007) (granting
     defendant's motion to dismiss under Georgia law in part because there was no "evidence of the

13   type of abuse of the corporate entity that would justify [a] finding [of] alter ego") (internal
     quotations omitted); *BOSP Invs. v. Official Comm. of Unsecured Creditors (In re Sheridan)*, 187

14   B.R. 611, 614 (N.D. Ill. 1995) (demonstrating that Illinois law views a showing of fraud or
     injustice as a prerequisite to piercing the veil on the basis of the alter ego theory of jurisdiction);

15   *Trans Nat'l Commc'ns Int'l, Inc. v. Publishers Mktg. Outlet*, 20 Mass. L. Rep. 220, at *13 (Mass.
     Super. Ct. 2005) (holding that plaintiffs had not sufficiently demonstrated a basis for alter ego

16   jurisdiction under Massachusetts law where they failed to provide facts evidencing fraud);
     *Gammill v. Lincoln Life & Annuity Distribs.*, 200 F. Supp. 2d 632, 634 (S.D. Miss. 2001) (noting

17   that Mississippi law requires a showing of fraud or injustice); *Pathfinder Mgmt. v. Mayne
     Pharma PTY*, No. 06-CV-2204 (WJM), 2008 U.S. Dist. LEXIS 61081, at *15-16 (D.N.J. Aug. 5,

18   2008) (noting the fraud requirement under New Jersey law); *Hile Assocs. v. Leap Technologies*,
     No. 6:93-CV-636, 1995 U.S. Dist. LEXIS 8756, at *21 (M.D.N.C. Apr. 24, 1995) (noting fraud

19   requirement under North Carolina law); *Everitt v. Dover Downs Entm't, Inc.*, No. 98-6116, 1999
     U.S. Dist. LEXIS 8525, at *17-18 (E.D. Pa. June 9, 1999) (finding no jurisdiction over

20   defendants under Pennsylvania law where plaintiffs made no allegations of fraud or injustice);
     *WRR Indus. v. Prologis*, No. 3:04-CV-2544-L, 2006 U.S. Dist. LEXIS 4128, at *26 (N.D. Tex.

21   Feb. 2, 2006) (noting that the alter ego theory of jurisdiction under Texas law requires a showing
     that "holding only the acting corporation liable would result in an injustice."); *Rual Trade Ltd. v.

22   Viva Trade LLC*, 549 F. Supp. 2d 1067, 1074 (E.D. Wis. 2008) (stating that under Wisconsin law,
     "It must also be apparent that applying the corporate fiction would accomplish some fraudulent

23   purpose, operate as a constructive fraud, or defeat some strong equitable claim.") (internal
     quotation omitted); *but see Int'l Equity Invs., Inc. v. Opportunity Equity Partners*, Ltd., 475 F.

24   Supp. 2d 456, 459 (S.D.N.Y. 2007) (stating that New York law does not require a showing of
     fraud to recognize an alter ego relationship in the jurisdictional context); *State ex rel. Miller v.

25   Internal Energy Mgmt. Corp.*, 324 N.W.2d 707, 714 (Iowa 1982) (not requiring a showing of
     fraud under Illinois' "fiduciary shield doctrine" to pierce the corporate veil and assert jurisdiction

26   over a non-resident director); *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05-
     CV-2205, 2006 U.S. Dist. LEXIS 53397 (N.D. Ohio Aug. 2, 2006) (noting that while the

27   imposition of alter ego liability requires a showing of fraud, under Ohio law the jurisdictional
     theory of alter ego does not).

28

MPA iso Def's Consolidated MTD  for
Lack of Personal Jurisdiction
sf-2864958                                    14                    Case No. 3:09-md-02087-BTM-AJB

1   discovery, plaintiffs could not demonstrate the parent corporation's "domination" over its

2   subsidiary).  Both of these elements must be established before the presumption of corporate

3   separateness can be disregarded.

4       Beyond these two essential factors, courts in the relevant jurisdictions also consider the

5   following additional factors as possible indicators of an alter ego relationship:

6       (a) whether the parent corporation fails to observe corporate formalities, *see, e.g., Linde v.*

7           *Arab Bank*, 262 F.R.D. 136, 144 (E.D.N.Y. 2009);

8       (b) whether the parent corporation's officers and directors or corporate documents refer to

9           the subsidiary as a mere department or division of the parent corporation, *see, e.g.,*

10          *Norfolk So. Railway. Co v. Maynard*, 437 S.E. 2d 277, 282 (W. Va. 1993);

11      (c) if the two corporations have overlapping boards—which on its own is not indicative of

12          an alter ego relationship—whether the directors and officers of the subsidiary

13          corporation act at the direction of and in the interest of the parent corporation rather

14          than acting independently in the subsidiary's best interest, *see id.*;

15      (d) whether the parent corporation, and not the subsidiary, makes personnel and related

16          decisions for the subsidiary, *see, e.g., Seltzer*, 339 F. Supp. 2d at 610;

17      (e) whether the subsidiary is grossly undercapitalized, *see id.*;

18      (f) whether the entities fail to keep separate corporate records, *see id.*;

19      (g) whether the funds of the corporations are intermingled or whether the parent treats

20          subsidiary's income as its own, *see BMC Software v. Marchand*, 83 S.W.3d 789 (Tex.

21          2002); and

22      (h) whether the parent corporation pays the subsidiary's losses and expenses, or provides

23          key services to the subsidiary free of charge, *see Strickland*, 2007 U.S. Dist. LEXIS

24          46329, at *13-15 (M.D. Ala. 2007).

25      No individual factor or combination of factors is dispositive; rather, courts in the relevant

26  jurisdictions assess these factors on a case-by-case basis. *See, e.g.*, *Sonora Diamond*, 83 Cal. App.

27  4th at 539 ("No one characteristic governs, but the courts must look at all the circumstances to

28  determine whether the doctrine should be applied.").

       **(ii)**    **Application of the Alter Ego Factors Does Not Support a Finding that Kerr is the Alter Ego of any Defendant Subject to the Court's Jurisdiction.**

Consideration of the above factors demonstrates that none of Kerr's subsidiaries are the alter egos of Kerr. As a threshold matter, the plaintiffs will be unable to establish that this Court's recognition of the corporate separateness of Kerr and its subsidiaries would result in fraud or injustice to any plaintiff. Without such a showing, the alter ego inquiry cannot proceed. *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, No. S-05-583 LKK/GGH, 2007 U.S. Dist. LEXIS 64017 (E.D. Cal. Aug. 17, 2007)(granting holding company's motion to dismiss for lack of personal jurisdiction because plaintiff could not show any risk of injustice arising from failure to include parent companies in lawsuit).

Assuming that the Court would consider other factors, Kerr and its subsidiaries have conducted their business in such a way that they remain entitled to the presumption of corporate separateness. Kerr and its subsidiaries consistently observe corporate formalities, including maintenance of separate corporate records and accounts, and segregation of the respective functions of Kerr and each of its subsidiaries and their respective employees.[10] (*See* Declaration of William Tarantino in Support of Consolidated Motion to Dismiss; Ex. 1[11], Heikkila April 14, 2010 Deposition ("Heikkila Depo.") at ¶¶ 17:24-19:16, 55:5-67:11 (describing functions of the entities that relate to the Products); Ex. 2, Pica April 15, 2010 Deposition ("Pica Depo.") at ¶¶ 19:3-10, 52:9-17, 53:14-18, 92:19-93:24; Exs. 3 and 4, KERR 0933, 3011-3015 (organizational

---

[10] Kerr is a holding company, and as such does not make any personnel or related decisions for its subsidiaries. (*See* Ex. 1, Heikkila Depo. at ¶¶ 136:11-14.) Kerr itself does not have any employees, and does not make any personnel or related decisions whatsoever. (*See id.* at ¶¶ 50:4-7, 112:3-19, 118:22-119:14, 122:2-7; Ex. 2, Pica Depo. at ¶¶ 61:18-24, 83:12-18, 177:2-7, 209:4-12, 245:11-13, 264:8-16; *see also* Ex. 7, Response to Interrogatory 15 (First Set), Dec. 30, 2009; Ex. 8, Response to Request for Admission 3 (Second Set), Apr. 12, 2010.) In fact, Kerr contracts with Iovate Health Sciences Inc. for administrative services. (*See* Ex. 1, Heikkila Depo. at ¶¶ 65:6-66:5, 118:22-119:14, 141:12-22; Ex. 2, Pica Depo. at ¶¶ 86:11-87:15; *see also* Ex. 9, KERR 0711-0719 ("Services Agreement").)

[11] All references to exhibit numbers are to exhibits attached to the Declaration of William Tarantino in Support of this Consolidated Motion to Dismiss for Lack of Personal Jurisdiction.

1   charts by entity); Ex. 5, KERR 3126-3133 (organizational charts by division); Ex. 6, KERR 3222-

2   3228 ("Employee Roster").

3          None of Kerr's employees or corporate documents refer to any of its subsidiaries as mere

4   departments or divisions of Kerr.  (*See* Heikkila Declaration at ¶ 10; *see also* Ex. 1, Heikkila

5   Depo. at ¶¶ 48:2-12; Ex. 2, Pica Depo. at ¶¶ 81:22-83:18.)  And while it is true that Kerr and

6   some of its subsidiaries share directors,[12] the directors and officers of Kerr's subsidiary

7   corporations act on behalf of each independent entity, and each company performs its obligations

8   in accordance with intercompany agreements designed to protect each company's commercial

9   interests.  (*See generally* Ex. 1, Heikkila Depo. at ¶¶ 79:1-24; Ex. 2, Pica Depo. at ¶¶ 80:14-22,

10  252:21-254:8; Ex. 10, KERR 3010 ("Iovate Health Sciences Group of Companies, Formal

11  Signatory List - Officers/Directors"); Ex. 11, KERR 3229-3626 (entity chart listing officers and

12  directors at different points during the Relevant Period).)

---

13        [12] The fact that a parent and subsidiary corporation have overlapping boards is not enough
      to find an alter ego relationship between the two.  *See American Protein Corp. v. AB Volvo*, 844
14    F.2d 56, 57 & 60 (2d Cir. 1988) (calling interlocking directorates the "commonplace
      circumstance of modern business"); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175,
15    1177 (9th Cir. 1980) (overlapping president and director insufficient to find alter ego or agency),
      *cert. denied*, 449 U.S. 1062 (1980); *In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 588
16    (S.D.N.Y. 2007) (sharing of CEO and CFO did not make one entity an agent of another);
      *Czarnecki v. Krause, Inc.*, No. 07-4384, 2008 U.S. Dist. LEXIS 67498, at *14-15 (E.D. Pa.
17    Aug. 28, 2008) (holding that interlocking officers and directors was insufficient to find
      jurisdiction); *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, No. 00-C-2447, 2003 U.S. Dist.
18    LEXIS 11488, at *18-19 (N.D. Ill. Jul. 3, 2003) ("The shared board members and the effect the
      shared board members had on issues affecting Coolsavings  are consistent with the normal
19    relationship between a parent company and its subsidiary[.]"); *Am. Med. Sys., Inc. v. Biolitec,
      Inc.*, 604 F. Supp. 2d 325, 329-330 (D. Mass. 2009) (no agency or alter ego where parent and
20    subsidiary shared president and CEO); *Japan Petroleum Co. (Nigeria), Ltd. v. Ashland Oil Co.*,
      456 F. Supp. 831, 841-46 (D. Del. 1978) (finding there was no agency or alter ego where
21    directors completely overlapped between parent and subsidiary); *Susko, et al. v. Cox Enters., et
      al.*, No. 5:07-CV-144, 2008 U.S. Dist. LEXIS 69901, at *22 (N.D. W. Va. Sept. 16, 2008) ("[A]
22    court cannot ignore separate corporate structures and imply liability, simply because one
      corporation controls another or the two such corporations share officers."); *Wallace v. Int'l
23    Lifestyles*, No. 06-1468, 2008 U.S. Dist. LEXIS 17755, at *20 (E.D. Pa. Mar. 6, 2008) (same);
      *Portfolio Fin. Servicing Co. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 629 (D.N.J. 2004)
24    (same); *Atlanta Gas Light Co. v. UGI Utils., Inc.*, No. 3:03-CV-6142005, 2005 U.S. Dist. LEXIS
      43592, at *28-29 (M.D. Fla. Mar. 22, 2005) (same); *Sonora Diamond*, 83 Cal. App. 4th at 548-
25    49; *Gordon et al. v. Greenview Hosp., Inc.*, 300 S.W. 3d 635, 652 (Tenn. 2009) (same); *Bell Oil
      & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 340-41 (Tex. 1968) (reversing finding of
26    agency, despite shared directors between parent and subsidiary); *Botwinick v. Credit Exch., Inc.*,
      213 A.2d 349, 353-54 (Pa. 1965) ("[T]he fact that a single individual is the active chief executive
27    of both corporations will [not] per se justify a court in piercing the corporate veil[.]") (citations
      omitted).
28

The CCA Complaint implies that Paul Gardiner's involvement in the management of Kerr and its subsidiaries is necessarily indicative of an alter ego relationship. However, Mr. Gardiner—like many individuals who simultaneously serve as directors and officers of affiliated U.S. companies—is able to pursue the best interests of each entity independently. (*See* Ex. 1, Heikkila Depo. at ¶¶ 71:22-72:4, 144:23-145:3; Ex. 2, Pica Depo. at ¶¶ 22:18-24, 232:11-233:4.) In fact, the Supreme Court in *United States v. Best Foods* stated that it "is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." 524 U.S. 51, 69 (1998). The Court went on to state that it is a "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership." *Id.* (internal quotations omitted). Paul Gardiner's dual roles do not create an alter ego relationship between Kerr and Iovate Health Sciences Inc.

Documents produced in discovery and deposition testimony further establish that Kerr and its subsidiaries consistently keep separate and thorough corporate records. (*See* Ex. 1, Heikkila Depo. at ¶¶ 22:2-23:24, 177:19-23, 178:16-181:19; Ex. 2, Pica Depo. at ¶¶ 93:14-24, 184:17-185:22, 205:9-13; Ex. 12, KERR 0001-0200 (corporate minutes).) Moreover, those records demonstrate that Kerr and its subsidiaries do not improperly intermingle funds. Kerr does not and has never treated its subsidiaries' income as its own. (*See* Ex. 2, Pica Depo. at ¶¶ 37:22-40:25, 135:16-18 (stating that neither Kerr nor any of its subsidiaries have ever breached the terms of intercompany agreements), 138:24-139:16 (financial statements produced both for individual entities and for group of companies), 145:1-4 (demonstrating that the relevant entities file individual tax returns).) In fact, Kerr and its subsidiaries maintain sophisticated intercompany agreements that govern lines of credit and other borrowing and lending between entities. (*See id.*, Pica Depo. at ¶¶ 37:22-40:25, 123:2-124:18 (describing financial instruments), 125:22-126:19 (same), 184:17-185:22; *see also* Ex. 13, KERR 0754-0842 (master credit agreement); Ex. 14, KERR 2865-2895 (assumption and confirmation agreement).)

1    Kerr and its subsidiaries maintain separate bank accounts in all cases, and maintain assets

2    or insurance to cover their reasonably anticipated liabilities.  (*See* Ex. 1, Heikkila Depo. at ¶¶

3    135:5-8; Ex. 2, Pica Depo. at ¶¶ 51:22-52:8, 93:14-24;  Ex. 1, Heikkila Depo. at ¶¶ 187:17-

4    188:20; Ex. 2, Pica Depo. at ¶ 207:5-19; Exs. 15 and 16, KERR 0452, 2896 (Certificates of Good

5    Standing); Ex. 17, KERR 0843 (products liability insurance policy); Ex. 18, KERR 0881

6    (commercial general liability insurance policy).)

7    In sum, an analysis of the factors typically considered by the relevant jurisdictions

8    establishes that Kerr's subsidiaries are not its alter egos, and the Court cannot exercise personal

9    jurisdiction over Kerr under an alter ego theory.

10                     **b.      Plaintiffs Cannot Establish That Kerr's Subsidiaries are
                                 Agents of Kerr.**
11

12    Kerr anticipates that the plaintiffs will also argue that Kerr's subsidiaries are the agents of

13    Kerr in order to assert personal jurisdiction over a non-resident defendant.  *See F. Hoffman-La*

14    *Roche, Ltd.*, 130 Cal. App. 4th at 796.  As with the alter ego theory, if the court finds an agency

15    relationship exists, the subsidiary's forum-related contacts can be imputed to the parent

16    corporation, such that the court may be able to assert jurisdiction over the out-of-state parent

17    corporation. *Id.*

18    The burden of proof demonstrating that an agency relationship exists rests with the

19    plaintiffs.  *See  Unocal*, at 930-931 (granting defendant's motion to dismiss where plaintiffs had

20    not met their burden of demonstrating the defendant's subsidiaries with California contacts

21    should be treated as its agents for jurisdictional purposes); *Healix Infusion Therapy, Inc. v. Helix*

22    *Health, LLC*, No. H-08-0337, 2008 U.S. Dist. LEXIS 34562, at *12-13 (S.D. Tex. Apr. 25, 2008)

23    (dismissing claims against moving defendant where plaintiff had failed to meet its burden of

24    establishing an agency or alter ego relationship); *Cross Country Home Servs., Inc. v. Home Serv.*

25    *United States Corp.*, No. 08-61456-CIV-SEITZ/O'SULLIVAN, 2010 U.S. Dist. LEXIS 4709, at

26    *10-13 (S.D. Fla. Jan. 5, 2010) (granting defendant's motion to dismiss where the plaintiff failed

27    "to establish the existence of an agency relationship, through sworn testimony or affidavits, in

28    order to establish personal jurisdiction over [the defendant].").

1    Outside of the Ninth Circuit, the agency doctrine is often conflated with alter ego.  *See,*

2    *e.g.*, *Thames v. Gunter-Dunn*, 373 So. 2d 640, 642 (Ala. 1979) ("Thus the corporation could not

3    be said to have acted as an agent of the individual appellees so as to become their alter egos and

4    to warrant personal jurisdiction over them."); *Gordon v. Greenview Hosp., Inc.*, 300 S.W. 3d 635,

5    652 ("An alter ego or agency relationship is typified by the parent corporation's control of the

6    subsidiary corporation's internal affairs or daily operations.") (citing *Unocal*, 248 F.3d at 926).

7    Jurisdictions that do recognize a separate agency theory for the purpose of asserting personal

8    jurisdiction over an out-of-state defendant generally consider the same basic factors considered in

9    an alter ego analysis when evaluating whether an agency relationship exists.

10   Across the relevant jurisdictions, the key inquiry in evaluating whether an agency

11   relationship exists is usually whether the parent corporation exerted an extraordinary, pervasive

12   degree of control over the day-to-day operations of the subsidiary corporation. *See, e.g.*, *F.*

13   *Hoffman-La Roche*, 130 Cal. App. 4th at 798 (rejecting personal jurisdiction based on agency

14   theory, and finding that parent's control over subsidiary must be "over and above that to be

15   expected as an incident of the parent's ownership of the subsidiary and must reflect the parent's

16   *purposeful disregard of the subsidiary's independent corporate existence*." (emphasis added)).

17   The primary inquiry in evaluating whether an agency relationship exists is thus very similar to the

18   analysis courts will perform in examining whether an alter ego relationship exists.  *Gregorie v.*

19   *Alpine Meadows Ski Corp.*, No. S-08-259 LKK/DAD, 2009 U.S. Dist. LEXIS 69237, at *15-16

20   (E.D. Cal. Aug. 6, 2009) (noting that the agency inquiry into whether the parent exercised day-to-

21   day control over its subsidiary is encompassed in the first prong of the alter ego theory).

22   Alternatively or in addition to this fundamental inquiry, some jurisdictions apply a "but

23   for" test, asking whether the tasks carried out by the subsidiary are so important to the parent's

24   business that "but for the domestic entity's existence, the foreign entity would be performing

25   those functions in the forum itself."  *F. Hoffman-La Roche, Ltd.*, 130 Cal. App. 4th at 798 (citing

26   *Sonora Diamond*, 83 Cal. App. 4th at 540-46); *see also Patterson v. Home Depot, USA, Inc.*, 684

27   F. Supp. 2d 1170, 1181 (D. Ariz. 2010); *Meteoro Amusement Corp. v. Six Flags, Inc.*, 267 F.

28   Supp. 2d 263, 270 (N.D.N.Y 2003); *Commonwealth v. H&R Block*, Inc., 25 Mass. L. Rep. 92,

1   *53 (Mass. Super. Ct. 2008).  Finally, certain jurisdictions also require a showing that failure to

2   recognize the subsidiary as the agent of the parent corporation would perpetrate a fraud or

3   injustice.  *See F. Hoffman-La Roche, Ltd*., 130 Cal. App. 4th at 798.

4        Kerr's subsidiaries are not agents of Kerr.  As explained above, Kerr does not exercise the

5   sort of extraordinary, pervasive control over its subsidiaries that the agency theory of

6   jurisdiction—like the alter ego theory of jurisdiction—requires.  Furthermore, even if Kerr's

7   subsidiaries that do conduct business in the United States or have submitted to jurisdiction in the

8   United States did not exist, Kerr would never perform the functions of those subsidiaries itself, as

9   it is only a holding company.  (*See* Ex. 2, Pica Depo. at ¶¶ 77:3-7 (describing the formation of

10  operating subsidiaries).)  Nor was the corporate structure of the Iovate defendants, including Kerr

11  and its subsidiaries, created to perpetrate a fraud or injustice.  This corporate structure is instead a

12  common and legitimate corporate structure under the laws of the jurisdictions where these entities

13  operate.  (*See* Ex. 1, Heikkila Depo. at ¶¶ 24:24-25:3; Ex. 2, Pica Depo. at ¶¶ 146:5-15, 239:17-

14  240:1.)

15       For these and the reasons discussed above concerning the alter ego theory of jurisdiction,

16  Kerr's subsidiaries are not the agents of Kerr, the Court cannot impute their forum-related

17  contacts to Kerr, and thus this Court cannot exercise personal jurisdiction over Kerr.

18                           **c.    Plaintiffs Cannot Establish That Kerr's Subsidiaries and**
                                 **Kerr formed a Conspiracy.**
19

20       Many of the relevant jurisdictions, including California, do not recognize a conspiracy

21  theory of jurisdiction.  *See, e.g., Chirila v. Conforte*, 47 Fed. Appx. 838, 842 (9th Cir. 2002)

22  (stating that there is a "great deal of doubt surrounding the legitimacy of the conspiracy theory of

23  personal jurisdiction.");  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 102 n.8 (3d Cir. 2004)

24  (noting New Jersey courts do not recognize a conspiracy theory of jurisdiction);  *Gutierrez v.*

25  *Givens*, 1 F. Supp. 2d 1077, 1083-84 (S.D. Cal. 1998) (rejecting under California law the

26  assertion of jurisdiction premised on conspiracy theory);  *Hawkins v. Upjohn Co*., 890 F. Supp.

27  601, 609 (E.D. Tex. 1994) (stating that the plaintiff's allegation of a conspiracy with a local

28

1    defendant was insufficient to assert jurisdiction over an out-of-state defendant under Texas law,

2    since personal jurisdiction must be based on each individual defendant's forum-related acts).

3         Kerr anticipates that the plaintiffs will still argue that Kerr conspired with those of its

4    subsidiaries who are subject to this Court's jurisdiction to defraud or otherwise injure the

5    plaintiffs.  If this were true, the Court could exercise jurisdiction over Kerr on the basis of its

6    subsidiaries' forum-related contacts.  Specifically, the CCA Complaint makes reference to Kerr

7    as a "co-participant" in all of the conduct alleged.  (CCA Complaint ¶ 27.)  Not only should the

8    Court disregard such conclusory allegations (*see Nicosia*, 72 F. Supp. 2d at 1097) but the "cases

9    are unanimous that a bare allegation of a conspiracy between the defendant and a person within

10   the personal jurisdiction of the court is not enough [to establish personal jurisdiction]."

11   *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992); *see also Pyle v. Hatley*, 239 F. Supp.

12   2d 970, 979 (C.D. Cal. 2002) (holding that "conclusory conspiracy allegations are insufficient to

13   establish . . . personal jurisdiction"). Instead, jurisdictions that do recognize the conspiracy theory

14   of jurisdiction require plaintiffs to allege facts which demonstrate a number of required factors.

15        Under the laws of the relevant states that do recognize a conspiracy theory of jurisdiction,

16   before a court can assert personal jurisdiction over an out-of-state defendant on this basis,

17   plaintiffs must (a) make a prima facie showing that a conspiracy exists, *see Chenault v. Walker*,

18   36 S.W. 3d 45, 53 (Tenn. 2001); (b) demonstrate the out-of-state defendant's involvement in that

19   conspiracy, *see Best Cellars Inc. v. Grape Finds at Dupont, Inc*., 90 F. Supp. 2d 431, 446

20   (S.D.N.Y. 2000); and (c) demonstrate that the conspirators have committed an overt act in

21   furtherance of the conspiracy, usually within the relevant jurisdiction, *see United States v. Arrow*,

22   No. 90-5701, 1990 U.S. Dist. LEXIS 17223, at *22 (E.D. Pa. Dec. 17, 1990) (requiring that the

23   overt act in furtherance of the conspiracy have been committed in Pennsylvania).[13]

24        [13] In addition, certain jurisdictions with well-developed conspiracy theories of jurisdiction
25   require a showing that (d) the out-of-state defendant had an awareness or at least could have
     reasonably expected that its actions would lead to consequences in the forum state, and (e) the co-
26   conspirators who are located in the jurisdiction acted at the direction of or on behalf of the out-of-
     state defendant. *See, e.g.*, *Best Cellars Inc.*, 90 F. Supp. 2d at 446.  The plaintiffs in the relevant
27   actions have made no such showings, but since they have not even alleged the basic elements
     required to assert a conspiracy theory of jurisdiction, Kerr does not address these additional
28   factors here.

1   Plaintiffs have failed to allege facts that are sufficient to support a finding of a conspiracy

2   between Kerr and its subsidiaries that have submitted to the jurisdiction of this Court, let alone

3   demonstrate all the elements that would be necessary for this Court to exercise personal

4   jurisdiction over Kerr on the basis of the conspiracy theory.  A prima facie case of conspiracy

5   generally requires that there be an allegation of a primary tort along with four other elements: (1)

6   a corrupt agreement; (2) an overt act in furtherance of the agreement; (3) intentional participation;

7   and (4) damages.  *See Best Cellars Inc.*, 90 F. Supp. 2d at 446.  In addition, the plaintiff must

8   establish that the out-of-state defendant was a member of the conspiracy by showing a

9   relationship between the co-conspirators.  *Id*.  Simply referring to Kerr as a "co-participant" in all

10   of the alleged conduct, as the CCA Complaint does, is not enough to demonstrate these elements.

11   The MDL Complaints are even more deficient in this regard, as they uniformly fail to allege that

12   Kerr was a co-participant in any of the complained-of conduct.

13   "[A] bare allegation of a conspiracy between the defendant and a person within the

14   personal jurisdiction of the court" is insufficient to demonstrate that a conspiracy exists.

15   *Stauffacher*, 969 F.2d at 460.  Thus, the plaintiffs have failed to adequately allege the first factor

16   required to assert a conspiracy theory of jurisdiction. Nor does such an allegation demonstrate

17   Kerr's involvement in any conspiracy, the second required factor.  As the plaintiffs have failed to

18   allege the elements required to assert a conspiracy theory of jurisdiction, the Court cannot

19   exercise jurisdiction over Kerr on this basis.

20   **IV.   CONCLUSION**

21   Plaintiffs have not met and cannot meet their burden of establishing that this Court can

22   exercise personal jurisdiction over Kerr.  Even after extensive jurisdictional discovery, the

23   essential facts demonstrate that Kerr is a Canadian holding company that conducts business only

24   in Canada.  Kerr does not engage in any business activities—related to the Products or

25   otherwise—in the United States.  Accordingly, the Court should dismiss the CCA Complaint and

26   the MDL Complaints as to Kerr pursuant to Rule 12(b)(2) of the Federal Rules of Civil

27   Procedure.

28

Dated: July 9, 2010                    MORRISON & FOERSTER LLP


                                       By:    s/William F. Tarantino
                                              WILLIAM F. TARANTINO
                                              WTarantino@mofo.com

                                       Attorneys for Specially Appearing
                                       Defendant
                                       KERR INVESTMENT HOLDING
                                       CORP. F/K/A IOVATE HEALTH
                                       SCIENCES GROUP INC.