1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **SOUTHERN DISTRICT OF CALIFORNIA**

9

10

11 IN RE HYDROXYCUT MARKETING
AND SALES PRACTICES LITIGATION

12

13 _____

14 CORETTA T. BROWN,

15                                   Plaintiff,

16      vs.

17 KERR INVESTMENT HOLDING CORP.;
IOVATE HEALTH SCIENCES, INC.;
18 IOVATE HEALTH SCIENCES U.S.A.,
INC.; AND MUSCLETECH RESEARCH
19 AND DEVELOPMENT, INC.,

20                                   Defendants.

21

CASE NO. 09MD2087-BTM (AJB)

(S.D. Cal. No. 10CV0237)


**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS COUNTS IV,
V, VI, AND VIII OF PLAINTIFF'S
COMPLAINT**

22        Defendants Iovate Health Sciences, Inc., Iovate Health Sciences USA, Inc., and

23 Muscletech Research and Development, Inc. ("Defendants") have filed a motion to dismiss

24 pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) ("Motion").  The Motion seeks dismissal of Count

25 IV (breach of express warranty), Count V (breach of implied warranty), Count VI (common law

26 fraud), and Count VIII (violation of New York General Business Law § 349) of the complaint

27 filed by Coretta T. Brown ("Complaint").  For the reasons set forth below, Defendants' Motion

28

1                                                     09MD2087

is **GRANTED in part** and **DENIED in part**.  The Court denies the Motion as to Count V.  The Motion is granted as to Counts IV, VI, and VIII.

## I. BACKGROUND

On December 16, 2009, Plaintiff filed a complaint in the District Court for the Southern District of New York (S.D.N.Y. Civil Action No. 09cv10231).  On January 29, 2010, the case was transferred by the Panel on Multidistrict Litigation ("MDL") to the Southern District of California.  Upon transfer, the case became part of the pending MDL entitled In re Hydroxycut Marketing and Sales Practice Litigation (09md2087), and was assigned a separate civil case number in the Southern District of California (10cv0237).  On February 2, 2010, in the above-entitled MDL action (09md2087), Defendants filed a Motion to Dismiss Counts IV, V, VI and VIII of Plaintiff's Complaint.

## II. STANDARDS

### A.      Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the formal sufficiency of the plaintiff's statement of the claim for relief.  The Court's inquiry is whether the allegations state a sufficient claim under Fed. R. Civ. P. 8, which sets forth the requirements for pleading.  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   In the adjudication of a motion to dismiss under 12(b)(6), plaintiff's allegations must be accepted as true, drawing all inferences from the pleaded facts in plaintiff's favor.  Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Sec. LLC, 568 F.3d 374, 377 (2d Cir. 2009).  To survive a motion to dismiss, the complaint must allege facts that, if true, would create a judicially cognizable cause of action.  South Road Assoc. v. Int'l Bus. Machines Corp., 216 F.3d 251, 253 (2d Cir. 2000).  Only factual allegations must be accepted as true—not legal conclusions.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Although detailed factual allegations are not required, the factual allegations "must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

**B.      Fed. R. Civ. P. 9(b)**

Rule 9(b) requires that a plaintiff state a claim for fraud with particularity as follows:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).  A court may dismiss a claim of fraud when its allegations fail to satisfy Rule 9(b) 's heightened pleading requirements. Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1107 (9th Cir. 2003).

## III.  DISCUSSION

Plaintiff, Coretta T. Brown, alleges that she suffered personal injuries, namely, a heart attack, a stroke, and renal failure, after ingesting a dietary supplement manufactured and sold by defendants, namely, Hydroxycut Regular Rapid Release Caplets.  (Compl. ¶¶ 51-53.) Plaintiff's Complaint contains eight claims for relief: negligence, strict liability–failure to warn, strict liability–defective design, breach of express warranty, breach of implied warranty, common law fraud, punitive damages, and violation of New York General Business Law § 349.    "Count IV" and "Count V" of the Complaint allege breach of express and implied warranties.  (Compl. ¶¶ 82-96.)  Specifically, Plaintiff alleges that defendants expressly and impliedly warranted that Hydroxycut products were safe for their intended purpose as a dietary supplement for weight loss. (Compl. ¶¶ 83, 92.)  According to Plaintiff, Hyrdroxycut products were unfit and unsafe for those purposes. (Compl. ¶¶ 86, 93.)  "Count VI" of the Complaint alleges common law fraud. (Compl. ¶¶ 97-104.)  Specifically, Plaintiff alleges defendants fraudulently represented that Hydroxycut Regular Rapid Release Caplets were safe, Plaintiff relied on the representations and as a result, incurred serious injuries.  (Compl. ¶¶ 98, 103-104.)  "Count VIII" of the Complaint alleges a violation of the New York General Business Law § 349. (Compl. ¶¶ 110-115.)  Specifically, Plaintiff alleges defendants engaged in fraudulent and deceptive acts by failing to disclose material facts about  Hydroxycut Regular Rapid Release Caplets.  (Compl. ¶ 111.)

**A.      Breach of Express Warranty Claim - Count IV**

1    To plead a cause of action for breach of express warranty, Plaintiff must allege: (1) the

2    exact terms of the warranty; (2) that the warranty formed part of the basis of the bargain; (3) the

3    warranty was breached and (4) the breach caused injury to the plaintiff.  See Horowitz v. Stryker

4    Corp., 613 F. Supp. 2d 271, 286 (E.D.N.Y. 2009); Fagan v. AmerisourceBergen Corp., 356 F.

5    Supp. 2d 198, 217 (E.D.N.Y. 2004).  Defendants contend that Plaintiff's breach of express

6    warranty claim fails because Plaintiff has not alleged facts that demonstrate the formation of an

7    express warranty and Plaintiff has not pled "notice" as required by New York warranty law.  The

8    Court agrees that Plaintiff has not alleged sufficient facts that provide the basis for an express

9    warranty.  Though Plaintiff quotes specific language from Hydroxycut's website and Hydroxycut

10   product labels that assure the products' safety, nowhere does Plaintiff allege that she read that

11   language or that it was part of the reason she bought the product.  Plaintiff does allege that "but

12   for and as a direct result of Defendants' negligent and deceptive conduct, Plaintiff would not

13   have purchased products which carried such significant safety risks when used as directed"

14   (Compl. ¶ 8) and "[b]ased upon Defendants' marketing, labeling,  distribution and sale of

15   Hydroxycut products, including the Hydroxycut Regular Rapid Release Caplets, it was and is

16   reasonable for Plaintiff to rely on Defendants' representations in purchasing and taking the

17   Hydroxycut products" (Compl. ¶ 36), but fails to include any specific  allegations about which

18   information she read and relied on before purchasing the caplets.  In order to have a cause of

19   action for breach of express warranty, Plaintiff must allege that the warranty formed part of the

20   basis of the bargain.

21    Since Plaintiff has not pled the necessary elements for the formation of an express

22   warranty, her claim fails.  Defendants' further contention that Plaintiff failed to properly plead

23   "notice" as required is discussed in Part B below.  Defendants' Motion to Dismiss Count IV for

24   breach of express warranty is granted without prejudice.  The Court, however, grants Plaintiff

25   leave to amend her breach of express warranty claim.

26   **B.      Breach of Implied Warranty Claim - Count V**

27    Defendants contend Plaintiff's breach of implied  warranty claim fails because Plaintiff has

28   not plead notice.  Specifically, Defendants argue that in order to properly plead a warranty claim

under the New York Uniform Commercial Code ("N.Y.-U.C.C."), a buyer must plead factual

allegations that he gave the seller prior notice of such claim. See N.Y.-U.C.C. § 2-607(3)(a).

Section 2-607(3) of the New York Uniform Commercial Code provides:

> Where a tender has been accepted (a) the buyer must within a
> reasonable time after he discovers or should have discovered any breach
> notify the seller of breach or be barred from any remedy.

Plaintiff contends that the notice requirement in N.Y.-U.C.C. § 2-607 is inapplicable to

a product, such as Hydroxycut Regular Rapid Release Caplets, which is intended for human

ingestion. In support of her contention, Plaintiff cites Fischer v. Mead Johnson Laboratories,

41 A.D.2d 737 (N.Y. App. Div. 1973). Fischer involved breach of warranty claims against the

manufacturer of an oral contraceptive. The court noted that the notice provision contained in

N.Y-U.C.C. § 2-607(3)(a) is inapplicable in cases involving goods sold for human consumption.

Id. The court in Fischer looked to Kennedy v. Woolworth Co., 205 A.D. 648 (N.Y. App. Div.

1923), a case involving injuries caused by a child's consumption of candy sold by the

defendant. In Kennedy, the plaintiff brought breach of warranty claims and, based on a similar

provision of the statutory predecessor to section 2-607, the court recognized:

> The reason for the rule has no relevant application to the
> circumstances of such a case. That section apparently has to do with
> the sales of goods whose inspection or use discloses a defect of
> quality, lack of conformance to sample, failure to comply with
> description, or other cognate circumstances, which causes money
> damage to the vendee. To require a complaint which, whatever its
> nomenclature of form, is really grounded on tortious elements, to
> indicate a notice of rejection or claim of damage within a reasonable
> time on account of defect of edible goods in a retail transaction, would
> strain the rule beyond a breaking point of sense or proportion to its
> intended object.

Id. at 649-50.

Defendants cite Neri v. R.J. Reynolds Tobacco Co., No. 98-CV-371, 2000 WL 33911224

(N.D.N.Y. Sept. 28, 2000), in support of New York's notice requirement, noting that the court

granted summary judgment for the defendant on plaintiffs' breach of warranty claim. While the

court in Neri did grant summary judgment, it was not based on the issue of notice. The court

granted summary judgment on the breach of express warranty claim because the plaintiff had

not shown that the cigarette advertisements created warranties that suggested cigarettes were

09MD2087

safe.  Neri, 2000 WL 33911224, at *20-21.  Thus, Neri does not stand for the proposition that notice is required for ingested products.  In fact, the court's reference to Fischer suggests that Fischer remains good law in New York.  Id. at *20.  No contrary New York authority appears to exist.  Indeed, the latest version of New York Pattern Jury Instructions, presumably applicable when this case goes to trial, recognizes the exception to the N.Y.-U.C.C. notice provision that is carved out in Fischer.  See e.g., N.Y. P.J.I. 2:140, Comments, (fourth paragraph from end).

While Defendants cite to Reyes v. McDonald's Corp. 2006 WL 3253579 (N.D. Ill. 2006), an unreported case from the Northern District of Illinois involving McDonald's French fries, for the proposition that some courts require notice even in the context of goods for human consumption, it appears that another court, in a reported opinion the following year from that same district, has reached the opposite result where the case involves, as here, personal injuries.  See, In re McDonald's French Fries Litigation, 503 F. Supp. 2d 953, 956-57 (N.D. Ill. 2007) (holding that because the plaintiffs alleged personal injuries, pre-suit notice was not required for their warranty claim).

Defendants also rely on Hubbard v. General Motors Corp., No. 95 Civ. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996), to support their position that Plaintiff must plead that notice was given as a prerequisite to her breach of warranty claims.  In Hubbard, a class brought claims again General Motors based, in part, on warranty theories for defects in the braking system in the Chevrolet Suburban.  That case is distinguishable because the court's entire analysis of § 2-607 involved a distinctly different question than that presented here.  In Hubbard, the issue was whether § 2-607(3)(a) requires a buyer to give notice only to his or her immediate seller, not a remote manufacturer.  Moreover, the Hubbard case is distinguishable because of the particular product involved, which, as in the other cases cited by Defendants, did not involve goods intended for human consumption.

Defendants also contend that notice is required for breach of warranty claims under North Carolina law.  However, under North Carolina law,

> [w]hen the plaintiff is a lay consumer and notification is given to the defendant
> by the filing of an action within the period of the statute of limitations, and when

09MD2087

1

the applicable policies behind the notice requirement have been fulfilled . . . the plaintiff is entitled to go to the jury on the issue of seasonable notice.

2

3

Maybank v. S.S. Kresge Co., 273 S.E.2d 681, 685 (N.C. 1981).  This has been followed in

4

numerous North Carolina cases, as in Horne v. Novartis Pharmaceuticals Corp., 541 F. Supp.

5

2d 768 (W.D.N.C. 2008), in which the plaintiff alleged that the medicine the defendant

6

manufactured caused birth defects in her son.  The defendant moved to dismiss the breach

7

of warranty claims because notice had not been given.  Relying on Maybank, the court denied

8

the motion and ruled that since the plaintiff filed a complaint  within the applicable statute of

9

limitations period, the plaintiff was entitled to go to the jury on the issue of seasonable notice.

10

Horne, 541 F. Supp. 2d at 786.

11

Thus, under both North Carolina and New York law, Plaintiff has satisfied her pleading

12

requirements with respect to notice on her breach of warranty claims.  Accordingly, the Court

13

holds Plaintiff has, at least at the pleading stage, sufficiently stated her breach of implied

14

warranty claim.  Defendants' Motion to Dismiss Count V, therefore, is denied.

**C.**      **Common Law Fraud Claim - Count VI**

15

To state a claim for common law fraud a plaintiff must plead: (1) a material, false

16

representation or omission; (2) an intent to defraud thereby; and (3) reasonable reliance on the

17

representation, causing damage to the plaintiff.  See e.g., City of New York v. Cyco.Net, Inc.,

18

383 F. Supp. 2d 526, 564 (S.D.N.Y. 2005); Liner v. DiCresce, 905 F. Supp. 280, 288 (M.D.N.C.

19

1994).  Federal Rule of Civil Procedure 9(b) requires that each of these elements be pled with

20

particularity.  The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state

21

the time, place and specific content of the false representations as well as the identities of the

22

parties to the misrepresentation." Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392-

23

93 (9th Cir. 1988).[1]  As Defendants point out, averments of fraud must be accompanied by the

24

25

26

---

27

[1]  The Second Circuit has similarly interpreted Rule 9(b).  See Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989) ("To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.").

28

09MD2087

1  "who, what, when, where, and how" of the misconduct charged. <u>Cooper v. Pickett</u>, 137 F.3d
2  616, 627 (9th Cir. 1997).

3      Defendants correctly analogize the present case to <u>Kearns v. Ford Motor Co.</u>, 567 F.
4  3d 1120 (9th Cir. 2009), in which the plaintiff alleged he relied on fraudulent representations
5  about Ford's Certified Pre-Owned Vehicle Program (CPO) when he made a decision to
6  purchase a CPO vehicle. <u>Id.</u> at 1125.  In <u>Kearns</u>, the court dismissed the fraud claim for lack
7  of specificity because the plaintiff did not specify what the television and sales material
8  specifically stated, when he was exposed to them and which sales material he relied upon in
9  making his decision. <u>Id.</u> at 1125-26.  Though Plaintiff here has quoted the Hydroxycut website
10 and product packaging (Compl. ¶ 29-33), she fails to specify that she was exposed to these
11 statements, when she was exposed to them, and which material (if any) she relied upon in
12 making her decision to purchase the Hydroxycut Regular Rapid Release Caplets.

13     The Court, therefore, grants Defendants' Motion to Dismiss Plaintiff's claim of common
14 law fraud as set forth in Count VIII of the Complaint.  The Motion is granted without prejudice
15 and Plaintiff is granted leave to amend.

16     **D.     New York General Business Law § 349 Claim - Count VIII**

17     To state a claim for violation of New York General Business Law § 349, the plaintiff must
18 show that the defendant's material deceptive act caused the injury. <u>Gale v. Int'l Bus. Machines</u>
19 <u>Corp.</u>, 781 N.Y.S. 2d 45, 46 (N.Y. App. Div. 2004).  In <u>Gale</u>, the court dismissed a § 349 claim
20 because the plaintiff never alleged he saw any of the allegedly deceptive statements before
21 he purchased his computer hard drive.  The Court agrees with Defendants' contention that
22 Plaintiff's complaint fails because she never alleged that she actually saw or read any of the
23 deceptive statements regarding Hydroxycut Regular Rapid Release Caplets prior to purchasing
24 them.

25     The Court further agrees with Defendants that Plaintiff's New York General Business
26 Law § 349 claim fails because she has not alleged the transaction in which she was allegedly
27 deceived took place in the state of New York.  In order to state a claim under § 349, Plaintiff
28 must allege deceptive acts or practices that occurred in the state of New York. <u>Goshen v. Mut.</u>

09MD2087

1  Life Ins. Co. of N.Y., 98 N.Y. 2d 314, 324 (N.Y. 2002) ("As both the text of the statute and

2  history suggest, the intent is to protect consumers in their transactions that take place in New

3  York State.").

4         Plaintiff cites Leider v. Ralfe, 387 F. Supp. 2d (S.D.N.Y. 2005), for the proposition that

5  while the transaction in which the customer is deceived must occur in New York, the entirety

6  of the conduct does not need to occur in New York.  Plaintiff then alleges that because Iovate

7  Health Sciences, USA, Inc. and MuscleTech Research and Development, Inc. both have their

8  principal place of business in New York, "it is a reasonable inference that at least part of the

9  deceptive conduct required for the GBL claim occurred in New York." (Opp'n, p. 7.)  It is

10  irrelevant whether part of the deceptive conduct took place in New York because it is the

11  transaction at issue that must have occurred in New York.  See In re Hydroxycut Marketing

12  and Sales Practices Litigation, 2010 WL 1734948, at *4-*5 (S.D. Cal. April 26, 2010).  While

13  Plaintiff acknowledges this essential element of the claim, she fails to allege any facts to show

14  that she bought Hydroxycut Regular Rapid Release Caplets in New York.

15         Accordingly, since Plaintiff has not alleged that she read or saw any of the allegedly

16  deceptive statements before buying Hydroxycut Regular Rapid Release Caplets or that the

17  transaction occurred in the state of New York, Defendants' Motion to Dismiss Count VIII for

18  violation of New York General Business Law § 349 is granted.  The Motion is granted,

19  however, without prejudice and the Court grants Plaintiff leave to amend if she is able to do

20  so.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

09MD2087

### III.  CONCLUSION

Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part** as stated above.  Counts IV, VI, and VIII are dismissed without prejudice.  The motion to dismiss Count V is **DENIED**.  Plaintiff has leave to file an amended complaint within 21 days of the entry of this order.

**IT IS SO ORDERED.**

DATED:  July 20, 2010

Honorable Barry Ted Moskowitz
United States District Judge

10                                                      09MD2087