# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HYDROXYCUT MARKETING AND SALES PRACTICES LITIGATION | Case No. 09md2087 BTM(AJB) |
| CASEY L. SLYTER,<br><br>                    Plaintiff,<br>     v.<br>GNC CORPORATION, et al.,<br><br>                    Defendants. | Case No. 10cv670 BTM(AJB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS** |

Defendants Iovate Health Sciences USA, Inc., Iovate Health Sciences, Inc., Iovate Health Sciences Research, Inc., Iovate Health Sciences International, Inc., Iovate HC 2005 Formulations, Ltd., and Muscletech Research and Development, Inc. (collectively "Iovate Defendants") have filed a Rule 12(b)(6) motion to dismiss Plaintiff's first cause of action (negligence), fourth cause of action (breach of express warranty), fifth cause of action (breach of implied warranty), seventh cause of action (fraud and misrepresentation), eighth cause of action (violation of the Kansas Consumer Practices Act), ninth cause of action (unjust enrichment), and tenth cause of action (punitive damages). Defendant GNC Corporation ("GNC") joins in the Iovate Defendants' motion to dismiss and has filed its own Rule 12(b)(6) motion to dismiss, which also seeks dismissal of Plaintiff's second cause of action (product liability - manufacturing and/or design defect) and third cause of action

(product liability - warning).  For the reasons discussed below, the Iovate Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, and GNC's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

On January 29, 2010, Plaintiff filed her complaint in the District of Kansas (Kan. Civ. Case No. 10cv2065 JTM/DWB).  On March 29, 2010, the case was transferred to the Southern District of California as a tag-along action to the In re Hydroxycut Marketing and Sales Practices multi-district litigation currently pending before the Court.  Upon transfer, the case was assigned a separate civil case number in the Southern District of California (Case No. 10cv670 BTM(AJB)).

According to the Complaint, Defendants negligently formulated, designed, manufactured, marketed, advertised, promoted, distributed, and/or sold Hydroxycut Products that potentially cause serious problems, including Rhabdomyolysis, cardiovascular symptoms, hypertension, elevated liver enzymes, kidney or liver failure, and death. (Compl. ¶ 40.) Plaintiff alleges that although Defendants knew or should have known that Hydroxycut Products potentially cause health problems, Defendant failed to provide any warning to consumers and promoted and advertised Hydroxycut as safe and effective. (Compl. ¶¶ 22-30, 42, 46.)

Plaintiff alleges that between 2005 and 2007, she consumed Hydroxycut Products that she purchased from various GNC stores within Olathe, Kansas.  (Compl. ¶ 51.) According to Plaintiff, based on Defendants' misrepresentations and deceptive marketing scheme, she believed that the Hydroxycut Products were healthy and safe for use as a dietary supplement for weight loss purposes. (Compl. ¶¶ 52-53.) Plaintiff further alleges that as a result of consuming Hydroxycut Products, she experienced severe health issues, including elevated enzymes and severe liver damage. (Compl. ¶ 55.)

Plaintiff asserts the following claims against the Iovate Defendants and GNC: (1) negligence; (2) product liability-manufacturing and/or design defect; (3) product liability -

warning; (4) breach of express warranty; (5) breach of implied warranty;[1] (7) fraud and misrepresentation; (8) violation of the Kansas Consumer Protection Act; (9) unjust enrichment; and (10) punitive damages.

## II.  STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks omitted). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. Id.

## III.  DISCUSSION

A.  Product Liability Claims

Defendants contend that Plaintiff's claims for negligence, breach of express warranty, breach of implied warranty and fraud should be dismissed because they are subsumed under Plaintiff's product liability claims for manufacturing/design defect and failure to warn.

The Kansas Product Liability Act, K.S.A. § 60-3301, et. seq., governs product liability

---

[1] There is no sixth cause of action.

claims, which are defined as follows:

> "Product liability claim" includes any claim or action brought for *harm* caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product. *It includes, but is not limited to, any action based on, strict liability in tort, negligence, breach of express or implied warranty, breach of, or failure to, discharge a duty to warn or instruct, whether negligent or innocent, misrepresentation, concealment or nondisclosure, whether negligent or innocent*, or under any other substantive legal theory.

K.S.A. § 60-3302(c) (emphasis added). "Harm," is defined as "(1) Damage to property; (2) personal physical injuries, illness and death; (3) mental anguish or emotional harm attendant to such personal physical injuries, illness or death. *The term 'harm' does not include direct or consequential economic loss*." K.S.A. § 60-3302(d) (emphasis added).

All legal theories of product liability, such as negligence and breach of warranty theories are "merged" into one single product liability claim. Grider v. Positive Safety Mf'g Co., 887 F. Supp. 251, 252 (D. Kan. 1995). *To the extent Plaintiff's negligence and breach of warranty claims seek recovery for personal injury and emotional harm*, the Court agrees that the claims are merged into Plaintiff's product liability claims. However, based on the Court's review of cases applying K.S.A. § 60-3302, it does not appear that *dismissal* of the merged claims is necessary. Nor is there authority for the Iovate Defendants' suggestion that Plaintiff must plead that the claims are merged. Therefore the Court denies Defendants' motion to dismiss the negligence and breach of warranty claims on the basis of K.S.A. § 60-3302.

The Court also notes that Plaintiff's negligence and breach of warranty claims are not subsumed by Plaintiff's product liability claims to the extent that they seek economic damages. Plaintiff alleges that she has suffered monetary loss as a result of spending money on Hydroxcut Products and has also suffered and will continue to suffer economic injury as a result of having to pay for medical care and treatment. (Compl. ¶¶ 54, 56, 76.) Claims for economic damage caused by defective products are not "product liability claims" and are not precluded by the KPLA. See Gonzalez v. Pepsico, Inc., 489 F. Supp. 2d 1233, 1241-42 (D. Kan. 2007) (rejecting defendants' argument that plaintiff's claim for breach of

the implied warranty of merchantability, which sought economic damages only, was subsumed by the KPLA).

The Court also rejects Defendants' suggestion that Plaintiff's fraud claim can be merged into Plaintiff's product liability claims. Although K.S.A. § 60-3302(c) refers to theories of "misrepresentation, concealment or nondisclosure, *whether negligent or innocent*," the statute does not mention "fraud." Defendants have not cited any legal authority for the proposition that fraud claims fall within K.S.A. § 60-3302(c). Indeed, it appears that in practice, plaintiffs pursue fraud claims separately from KPLA claims. See, e.g., Kestrel Holdings I, LLC v. Learjet, Inc., 316 F. Supp. 2d 1071, 1077 (D. Kan. 2004) (in addition to KPLA claim, plaintiff brought fraud claim alleging that defendants were aware of a manufacturing process defect affecting Learjet 60 aircrafts months before defendants informed plaintiff of the defect.).

GNC contends that Plaintiff's product liability claim (in addition to the merged claims) should be dismissed as against GNC because GNC falls within an exception to liability. K.S.A. § 60-3306 provides:

> A product seller shall not be subject to liability in a product liability claim arising from an alleged defect in a product, if the product seller establishes that:
>
> (a) Such seller had no knowledge of the defect;
>
> (b) such seller in the performance of any duties the seller performed, or was required to perform, could not have discovered the defect while exercising reasonable care;
>
> (c) the seller was not a manufacturer of the defective product or product component;
>
> (d) the manufacturer of the defective product or product component is subject to service of process either under the laws of the state of Kansas or the domicile of the person making the product liability claim; and
>
> (e) any judgment against the manufacturer obtained by the person making the product liability claim would be reasonably certain of being satisfied.

GNC has submitted the affidavit of Jennifer Carroll, an employee of GNC, in support of its contention that GNC satisfies the requirements of § 60-3306. However, the motion before the Court is a Rule 12(b)(6) motion, and the Court cannot properly consider matters outside

the pleadings. Whether GNC can satisfy the requirements of the product-seller exception should be dealt with in a summary judgment motion. See Bond v. General Motors Corp., 2006 WL 279018 (D. Kan. Feb. 2, 2006) (declining to dismiss product liability claim based on K.S.A. § 60-3306 on a motion to dismiss).

B. Breach of Warranty Claims

Defendants argue that Plaintiff's warranty claims must be dismissed because Plaintiff has not alleged that she gave notice of the purported warranty defects. The Court is not convinced by this argument.

Kansas law, premised on the U.C.C., provides that where a tender of goods has been accepted, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ." K.S.A. § 84-2-607(3)(a). Kansas courts have held that the statutory requirement of notice is "in the nature of a condition precedent which must be pled and proved by the party claiming the breach of warranty." Dold v. Sherow, 220 Kan. 350, 352-53 (1976).

However, the Kansas Supreme Court has also recognized that there is "[a] commonly utilized exception to the requirement of giving notice . . . in situations where the defective product has caused personal injury." Smith v. Stewart, 233 Kan. 904, 912 (1983). As explained by the Kansas Supreme Court, the policy behind the notice requirement is most applicable in commercial settings. Id. at 913. The Official UCC Comment following K.S.A. § 84-2-607(3)(a) explains, "[T]he rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy."

Because this is a consumer action alleging personal injury, strict compliance with K.S.A. § 84-2-607(3) is not required. See Graham v. Wyeth Lab., 666 F. Supp. 1483, 1500 (D. Kan. 1987) (holding that the defendant was given sufficient notice by the filing of the lawsuit). Defendants' motion to dismiss the warranty claims is denied.

C. <u>Fraud & Kansas Consumer Protection Act</u>

Defendants contend that Plaintiff's fraud claim and claim for violation of the Kansas Consumer Protection Act ("KCPA"), K.S.A. §§ 50-623, <u>et seq.</u>, should be dismissed for failure to state fraud with particularity as required by Fed. R. Civ. P. 9(b). The Court agrees.

The elements of common-law fraud in Kansas are: (1) a false statement was made as a statement of existing and material fact; (2) the representation was known to be false by the party making it or was recklessly made without knowledge concerning falsity; (3) the representation was intentionally made for the purpose of inducing another party to act upon it; (4) the other party reasonably relied and acted upon the representation made; and (5) the other party sustained damage by relying upon the representation. <u>Kelly v. Vinzant</u>, 287 Kan. 509, 515 (2008).

Federal Rule of Civil Procedure 9(b) requires that a party state with particularity the circumstances constituting fraud or mistake. Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997); <u>see also</u> <u>Plastic Packaging Corp. v. Sun Chem. Corp.</u>, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001) (explaining that plaintiff must set out the "who, what, where, and when" of the alleged fraud.). In other words, "the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." <u>Alan Neuman Prods., Inc. v. Albright</u>, 862 F.2d 1388, 1392-93 (9th Cir. 1988). The plaintiff must also "set forth what is false or misleading about a statement and why it is false." <u>Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)</u>, 42 F.3d 1541, 1548 (9th Cir. 1994). Rule 9(b) does not permit a complaint to "lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." <u>Destfino v. Reiswig</u>, 630 F.3d 952, 958 (9th Cir. 2010) (internal quotation marks and citations omitted).

Plaintiff's fraud claim suffers from multiple defects. Plaintiff alleges that she used "Hydroxycut Products" but does not specify which ones. Plaintiff also lumps together the Iovate Defendants and GNC, referring to them collectively as "Defendants" and never

specifying which defendant did what. Although Plaintiff describes certain marketing and promotional materials that she claims were misleading, Plaintiff fails to specify which materials she actually saw and relied on in making her decision to purchase the products. Plaintiff's fraud claim also fails to state facts sufficient to support an inference of scienter with respect to GNC. Even if it might be assumed that the manufacturer of Hydroxycut would be made aware of any reports of health issues reported in connection with the use of Hydroxycut products, Plaintiff has not alleged facts tending to show that GNC should have known about such issues.[2]

Because Plaintiff has failed to plead her fraud claim with particularity, her fraud claim is dismissed. Rule 9(b) also applies to Plaintiff's KCPA claim, which sounds in fraud. See Thomspon v. Jiffy Lube Int'l, Inc., 505 F. Supp. 2d 907, 931-32 (D. Kan. 2007) (holding that Rule 9(b) applies to claims under the KCPA that sound in fraud). Therefore, Plaintiff's KCPA claim is dismissed as well.

D.  Unjust Enrichment

Defendants argue that Plaintiff's unjust enrichment claim should be dismissed because unjust enrichment is a restitutionary remedy, not an independent claim. However, it appears that courts in Kansas allow plaintiffs to pursue separately stated claims for unjust enrichment. See, e.g., Thompson v. Jiffy Lube, 505 F. Supp. 2d 907, 930 (D. Kan. 2007) ("[U]njust enrichment is not dependent on a finding of liability based on another claim."); Sheldon v. Vermonty, 31 F. Supp. 2d 1287, 1294 (D. Kan. 1998) (denying motion to dismiss unjust enrichment claim stated as a separate count). Therefore, Defendants' motion to dismiss this claim is denied.

---

[2] Defendants also take issue with the language, "knew, *or should have known*, that Hydroxycut products were not safe for consumption." (Compl. ¶ 99) (emphasis added). Since fraud can be based on an untrue statement made with *reckless disregard* for the truth, the use of the phrase "or should have known" does not undermine a fraud claim. Alires v. McGehee, 277 Kan. 398, 403 (2004).

E. <u>Punitive Damages</u>

Defendants argue that Plaintiff's punitive damages claim should be dismissed because punitive damages are a type of damages not an independent claim under Kansas law. "If a party has no cause of action independent of his claim for punitive damages, he has no cause of action at all." <u>Moore v. State Bank of Burden</u>, 240 Kan. 382, 1212 (1987). If, however, a plaintiff has an independent claim that supports a reward of punitive damages, a separate claim for punitive damages can be asserted. See <u>Pfeiffer v. Eagle Mf'g Co.</u>, 1992 WL 26035, at * 3 (D. Kan. Jan. 16 1992) (denying motion to dismiss punitive damages claim based on manufacturer's failure to provide an adequate warning to consumers despite knowing of a design defect). Plaintiff seeks punitive damages in connection with her claim of breach of express warranty (which is merged into the product liability claims). Therefore, the Court denies Defendants' motion to dismiss Plaintiff's punitive damages claim on this ground.

Defendants also argue that Plaintiff needs permission from the Court to allege punitive damages under K.S.A. § 60-3703. However, district courts in Kansas have consistently held that K.S.A. § 60-3703 is a procedural rule that conflicts with Fed. R. Civ. P. 9(g) and, therefore, does not apply to federal actions. <u>Schnuelle v. C&C Auto Sales, Inc.</u>, 99 F. Supp. 2d 1294, 1299 (D. Kan. 2000) ("[C]ourts in this district have repeatedly found that Fed. R. Civ. P. 9(g) governs the pleading of punitive damages in federal courts."); <u>Whittenburg v. L.J. Holding Co.</u>, 830 F. Supp. 557, 565 n. 8 (D. Kan. 1993) ("However, this state statute has been held by this court and others in this district to be purely procedural in nature, and in conflict with Fed. R. Civ. P. 9(g) . . . .").

///
///
///
///
///
///

## IV. CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss [ 09md2087 (Doc. Nos. 169, 170); 10cv670 (Doc. Nos. 11, 12)] are **GRANTED IN PART** and **DENIED IN PART**. The motions are **GRANTED** as to Plaintiff's fraud claim (seventh cause of action) and KCPA claim (eighth cause of action). These claims are **DISMISSED** for failure to state a claim. The motions are **DENIED** as to the remaining causes of action.

In addition, Defendants' request for dismissal filed on October 21, 2010 is deemed withdrawn pursuant to Defendants' Response to the Court's Order to Show Cause.

The Court grants Plaintiff leave to file an amended complaint. If Plaintiff chooses to do so, Plaintiff must file her amended complaint within 30 days of the entry of this Order. If Plaintiff does not file an amended complaint, Defendants shall file an answer to the original complaint on or before **May 9, 2011**.

**IT IS SO ORDERED.**

DATED: March 21, 2011

Honorable Barry Ted Moskowitz
United States District Judge