# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HYDROXYCUT MARKETING AND SALES PRACTICES LITIGATION | Case No. 09md2087 BTM(CAB) |
| MONICA FAYE STEPTER,<br><br>            Plaintiff,<br>v.<br><br>IOVATE HEALTH SCIENCES USA, INC. and GENERAL NUTRITION CORPORATION,<br><br>            Defendants. | Case No. 10cv537 BTM(CAB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART IOVATE HEALTH SCIENCES USA, INC.'S MOTION TO DISMISS AND DENYING GNC'S MOTION TO DISMISS** |

Defendant Iovate Health Sciences USA, Inc. ("IHSUSA"), has filed a motion to dismiss Plaintiff's Complaint in its entirety for failure to state a claim. Defendant General Nutrition Corporation ("GNC") has filed a motion to dismiss Counts I, II, III. V, VI, VII, and VIII. For the reasons discussed below, IHSUSA's motion is **GRANTED IN PART AND DENIED IN PART** and GNC's motion is **DENIED**.

## I. BACKGROUND

On November 25, 2009, Plaintiff filed her complaint in Louisiana state court. The action was removed to the Eastern District of Louisiana (La. Civ. Case No. 09cv8070 LMA-

DEK).  Subsequently, the case was transferred to the Southern District of California as a tag-along action to the In re Hydroxycut Marketing and Sales Practices multi-district litigation currently pending before the Court.  Upon transfer, the case was assigned a separate civil case number in the Southern District of California (Case No. 10cv537 BTM(CAB)).  On October 4, 2010, Plaintiff filed her Second Amended Complaint ("SAC")

Plaintiff alleges that in 2008, she purchased two containers of Hydroxycut Max! 120 Rapid Release Liquid Caps from GNC in Thibodaux, Louisiana.  (SAC ¶ 20.)  According to Plaintiff, after she started taking the product, she began to experience extreme arrhtymia and was hospitalized.  (SAC ¶ 25.)  Plaintiff was diagnosed with cardiac dysrhythmias NED, rhabdomylosis, bladder problems, discolored urine, and pulmonary heart disease.  (Id.) Plaintiff alleges that Defendants knew or should have known that Hydroxycut was defective, but misrepresented the safety of the product and failed to warn consumers of the health risks associated with the product.  (SAC ¶ 27.)

Plaintiff asserts the following claims against the IHSUSA and GNC: (1) product liability; (2) product liability-warning; (3) breach of express warranty; (4) negligence; (5) gross negligence; (6) recklessness; (7) breach of implied warranty; and (8) fraud and misrepresentation.

## II. STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).  When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff.  See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level."  Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007).  "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks omitted).  Only a complaint that states a plausible claim for relief will survive a motion to dismiss. Id.

### III. DISCUSSION

A. IHSUSA's Motion

IHSUSA contends that all of Plaintiff's claims against it are barred because the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. 9:2800.51-60, provides the exclusive remedy.[1]  With the exception of Plaintiff's redhibition claim, the Court agrees that Plaintiff's claims must be dismissed due to the exclusivity of the LPLA.

The LPLA provides the exclusive remedy against manufacturers for damages resulting from a defective product. La. Rev. Stat. 9:2800.52. To prevail on an LPLA claim, the Plaintiff must establish the following four elements: (1) that the defendant is a manufacturer; (2) that the plaintiff' damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product "unreasonably dangerous"; and (4) that the plaintiff's damage arose from a reasonably anticipated use of the product by the plaintiff or someone else. La. Rev. Stat 9:2800.54.  A plaintiff may prove that a product was "unreasonably dangerous" as a result of (1) a defect in construction or composition; (2) defect in design; (3) inadequacy of warning; or (4) failure to conform to an express warranty.   La. Rev. Stat. 9:2800.54(B)(1)-(4).

Because the LPLA provides the exclusive remedy for products liability actions against manufacturers under Louisiana law, plaintiffs may not seek recovery against manufacturers

---

[1] This Court applies the choice-of-law rules of Louisiana because the claims were originally filed in Louisiana state court.  See In re Nucorp Energy Sec. Lit., 772 F.2d 1486, 1492 (9th Cir. 1985). Under Louisiana choice-of-law rules, Louisiana substantive law applies because Plaintiff is domiciled in Louisiana and her alleged injuries were sustained in Louisiana.  La. Civ. Code art. 3545.

based on theories such as negligence, breach of warranty, or fraud. See, e.g., O'Neil v. Abbott Laboratories, Inc., 2011 WL 902427, at *3 (E.D. La. March 11, 2011) ("[P]laintiffs alleging products-liability causes of action post-LPLA do not have access to the following theories of liability: negligence, strict liability and breach of express warranty."); Winslow v. W.L. Gore & Assoc., Inc., 2011 WL 866184, at *2 (W.D. La. Jan. 21, 2011) (dismissing claims of fraud, misrepresentation, and implied warranty because claims were not recognized under the LPLA); Barrette v. Dow Agrosciences, LLC, 2002 WL 31365598, * 3 (E.D. La. Oct. 18, 2002) (dismissing claims of negligence, breach of implied warranty, and fraud and misrepresentation claims as a result of the exclusivity of the LPLA). Plaintiff's claims against IHSUSA are governed by the LPLA. Therefore, Plaintiff's claims for negligence, recklessness, breach of express and implied warranty, and fraud must be dismissed. However, Plaintiff may re-plead her "product liability" claims as claims under the LPLA.

IHSUSA also argues that Plaintiff cannot recover damages under Louisiana's law of redhibition or punitive damages. In the SAC, Plaintiff indicates that she seeks reasonable attorney's fees, damages, and costs as allowed under Louisiana law of redhibition. (SAC ¶ 31, Prayer for Relief.) "A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale." La. C.C. art. 2520. The LPLA defines "damage" as *excluding* damages recoverable under redhibition. La. R.S. 9:2800.53(5). Thus, the LPLA's exclusivity provision does not prevent recovery for *economic loss* in redhibition. Grenier v. Medical Eng. Corp., 243 F.3d 200, 206 n. 5 (5th Cir. 2001).

Although the SAC does not explicitly allege economic loss in redhibition – e.g., the purchase price of the Hydroxycut products – such damages are implied. Therefore, the Court denies IHSUSA's motion as to Plaintiff's claim for damages under the law of redhibition. However, the Court suggests that Plaintiff amend her Complaint to assert a separate claim for redhibition instead of making passing reference to redhibition in the general allegations and prayer for relief.

With respect to Plaintiff's claim for punitive damages, such damages are not available under the LPLA or the law of redhibition.  See Bladen v. C.B. Fleet Holding Co., 487 F. Supp. 2d 759, 770 (W.D. La. 2007) (holding that the LPLA does not authorize the recovery of punitive damages); Ortego v. Merial, LLC, 2011 WL 400383, * 8 (W.D. La. Feb. 2, 2011) (dismissing punitive damages claim because such damages are not available under the LPLA or law of redhibition).   Therefore, Plaintiff's punitive damages claim against IHSUSA is dismissed.

B.  GNC's Motion

GNC moves to dismiss all of Plaintiff's claims except for Plaintiff's negligence claim. Under Louisiana law, the non-manufacturing seller of a defective product is not responsible for damages in tort absent a showing that he knew or should have known the product was defective and failed to declare it.  Jones v. Employer's Mutual Liability Ins. Co., 430 So.2d 357, 359 (La. Ct. App. 1983).  From this proposition of law, GNC concludes that the only legal claim Plaintiff can bring is negligent failure to warn.

The Court does not agree with GNC's interpretation of the law.  The requirement that a plaintiff establish that the seller knew or should have known that the product was defective, is a threshold to the recovery of tort damages against the seller but is not a limitation *on the type* of tort claims that can be brought.  See, e.g., Badon v. RJR Nabisco, Inc., 236 F.3d 282 (5th Cir. 2000) (holding that there is an arguably reasonable basis for predicting that Louisiana would allow a breach of warranty and redhibition claim against Louisiana wholesalers who provided retailers with cigarettes); Ratliff v. Porter Cable Company of New York, 210 F. Supp. 957, 958 (E.D. La. 1962) ("A retailer is not liable to his vendee for breach of implied warranty *in the absence of knowledge of the deleterious condition of the product*.") (Emphasis added.)

Accordingly, the Court denies GNC's motion to dismiss.

## IV. CONCLUSION

For the reasons discussed above, IHSUSA's motion to dismiss [09md2087 - Doc. No. 381; 10cv537 - Doc. No. 38] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's substantive claims against IHSUSA (Counts I-VIII) are **DISMISSED** as is Plaintiff's punitive damages claim.

GNC's motion to dismiss [09md2087 - Doc. No. 382 ; 10cv537 - Doc. No. 39] is **DENIED**.

The Court grants Plaintiff leave to amend her claims against IHSUSA to remedy the deficiencies noted above. If Plaintiff chooses to do so, Plaintiff must file her Third Amended Complaint within 30 days of the filing of this Order. If no amended complaint is filed, Defendants shall file an answer to the SAC within 15 days of the expiration of the time for filing an amended complaint.

**IT IS SO ORDERED.**

DATED: May 24, 2011

*[signature]*

Honorable Barry Ted Moskowitz
United States District Judge