CORY, WATSON, CROWDER & DEGARIS, PC
ANNESLEY H. DEGARIS –ASB-9182-A63A
2131 Magnolia Ave. Ste 200
Birmingham, AL 35205
Telephone: (205) 328-2200
Facsimile: (205) 324-7896

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HYDROXYCUT MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) |
| BARBARA C. DUNN | ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| IOVATE HEALTH SCIENCES U.S.A., INC., et al., | ) ) ) ) |
| Defendants. | ) ) ) |

Case No. 3:09-md-02087-BTM-CAB
_____
Case No. 3:11-cv-00791-BTM-CAB

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**Judge: Hon. Barry Ted Moskowitz**

# SECOND AMENDED COMPLAINT

## <u>NATURE OF THE CASE</u>

This action seeks damages suffered by Plaintiff BARBARA DUNN as a direct and proximate result of the wrongful conduct of the Defendants in connection with the design, testing, quality assurance, manufacturing, labeling, warning, packaging, marketing, advertising, promotion, supply, distribution, post-market monitoring and/or surveillance, sale, and recall of its Hydroxycut weight loss products ("Hydroxycut Products").

## **PARTIES**

1.     Plaintiff, BARBARA DUNN is a citizen and resident of Yell County, Arkansas.

2.     Defendant, Iovate Health Sciences U.S.A., Inc., is a Delaware corporation with headquarters at 3880 Jeffrey Boulevard, Blasdell NY 14219.

3.     Defendant, Iovate Health Sciences, Inc., is a Canadian corporation with headquarters at 381 North Service Road West, Oakville, Ontario L6M 0H4.

4.     Defendant, Iovate Health Sciences Research, Inc., is a Canadian corporation with headquarters at 5100 Spectrum Way, Mississauga, Ontario L4W 5S2.

5.     Defendant, Iovate Health Sciences Group, Inc., is a Canadian corporation with headquarters at 5100 Spectrum Way, Mississauga, Ontario, L4W 5S2.

6.     Defendant, Iovate Health Sciences International, Inc., is a Canadian corporation with headquarters at 5100 Spectrum Way, Mississauga, Ontario, L4W 5S2.

7.     Defendant, Iovate HC 2005 Formulations, Ltd, is a Canadian corporation with headquarters at 5100 Spectrum Way, Mississauga, Ontario, L4W 5S2.

8.     Defendant, MuscleTech Research and Development, Inc., is a Canadian corporation with headquarters at 5100 Spectrum Way, Mississauga, Ontario, L4W 5S2.

9.     Defendant, HDM Formulations, Ltd. is a Canadian corporation with headquarters at 5100 Spectrum Way, Mississauga, Ontario, L4W 5S2.

10.     Kerr Investment Holding Corporation is a Canadian corporation and the parent company of MuscleTech Research and Development, Inc., Iovate Health Sciences, Inc., Iovate Health Sciences U.S.A., Inc. and HDM Formulations Ltd. with headquarters at 5100 Spectrum Way, Mississauga, Ontario, L4W 5S2.

11.     The Defendants in the above numbered paragraphs 1 through 12 are collectively identified hereinafter as "Product Defendants."

12.     On information and belief the following entities were regularly engaged in the business of manufacturing/formulation/packaging of Hydroxycut products and were in some way involved in the production of the Hydroxycut products and/or ingredients and components of the Hydroxycut Products that cause injury to Plaintiff, BARBARA DUNN, as alleged herein:

a. Defendants, Garden State Nutritionals, Inc.; Vitaquest International Inc. d/b/a Garden State Nutritionals, Inc; Vitaquest International LLC; Vitaquest International Inc ("Vitaquest") are Delaware corporations with their principal place of business located at 8 Henderson Drive, West Caldwell, New Jersey 07006.  Additionally at all times herein alleged, State of Arkansas and State of California.

b. Defendant, HVL LLC is a Pennsylvania corporations with their principal place of business 600 Boyce Road, Pittsburgh, Pennsylvania 15205. Additionally at all times here in alleged, Defendant did/does business in the State of Arkansas and State of California.

c. Defendant Bactolac Pharmaceutical Inc., ("Bactolac") which is a New York corporation with its principal place of business located at 7 Oser Avenue Unit 14, Hauppauge, NY 11788. Additionally at all times here in alleged, Defendant did/does business in the State of Arkansas and State of California.

d. Defendant Interhealth Neutraceuticals Inc., ("Interhealth) which is a California corporation with its principal place of business located at 5451 Industrial Way, Benicia, CA 94510. Additionally at all times here in alleged, Defendant did/does business in the State of Arkansas and State of California.

e. Defendant Marco Hi-Tech ("Marco") is a New York corporation with its principal place of business located at 450 Seventh Avenue, Suite 1106, New York, NY 10023. Additionally at all times here in alleged, Defendant did/does business in the State of Arkansas and State of California.

13. The Defendants set out in paragraph 12 are collectively identified hereinafter as the "Manufacturing Defendants"

14. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, that the employees of Product Defendants Manufacturing Defendants, their subsidiaries, affiliates and other related entities, were the agents, servants, and employees of

the Product Defendants and Manufacturing and at all times herein mentioned, each was acting within the purpose of scope of said agency and employment. Whenever reference in this complaint is made to any act or transaction of any defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or other representatives of said Product Defendants and Manufacturing Defendants committed, knew of, performed, authorized, ratified, and/or directed such act or transaction on behalf of said Product Defendants, while actively engaged in the scope of their duties.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because of the amount in controversy exceeds $75,000 exclusive of interest and costs. Jurisdiction is based on diversity of citizenship.

16.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. §1391(a)(2) because the defendants regularly solicit and engage in business and other persistent courses of conduct and derive substantial revenues from goods used in the State of Arkansas. Defendants are corporations maintaining sufficient minimum contacts with this judicial district to subject the corporations to personal jurisdiction here.

17.     Defendants derive substantial revenue from Arkansas from interstate commerce.

18.     Defendants have each done substantial business in each state in the United States, including Arkansas.

19.     The acts of the Defendants as set forth below caused the Plaintiff's injuries.

## FACTUAL ALLEGATIONS

20.    The Product Defendants are in the business of formulating, designing, manufacturing, marketing, and advertising, distributing and selling various dietary supplements including muscle builders and fat burners/thermogenics.

21.    Said products are sold at retail stores, including CVS and Walgreens, throughout the United States.

22.    In 2008, at least 9 million packages of Hydroxycut Products were sold in this country.

### I.    Obesity and Diet Supplements

23.    Obesity has become an increasingly important public health problem in the United States. Recent data show that more than 30% of adults are obese and 65% overweight.

24.    The use of dietary supplements for weight loss has become increasingly popular, as reflected by the $55.4 billion spent in United States in 2006 for weight loss and diet control. Based on a study by the National Center for Complimentary and Alternative Medicine (NCCAM), 36% of adults are using some form of complimentary or alternative medicine, which rises to 62% when including megavitamins or prayer.

25.    Although dietary and herbal supplements are governed under the DSHEA (Dietary Supplements Health and Education Act) of 1994, they are not presently regulated by the US Food and Drug Administration, and the safety profiles of many are unknown.

### II.    Hydroxycut

26.    Hydroxycut is the brand name of some of America's top-selling weight loss products which are taken by millions of consumers each year.

27.    Hydroxycut is a Registered Trademark and is part of the name of many products, examples of which include Hydroxycut, Hydroxycut Hardcore, and Hydroxycut Caffeine Free, Iovate and MuscleTech, a company owned by Iovate, both of which market Hydroxycut Products.

28.    Hydroxycut has been marketed by Iovate Health Sciences, Inc. and manufactured by MuscleTech as a weight control, fat-burner, and energy enhancement dietary supplement. Hydroxycut Products bear the Iovate or MuscleTech brand names. In the United States, Hydroxycut Products are distributed by Iovate Health Sciences USA, Inc., of Blasdell, New York.

29.    The products contain a variety of individual ingredients as well as numerous proprietary blends such as "Hydroxagen Plus, Hydroxy Tea, HydroxyTea CF, Hydroxycut Proprietary Blend, Max! Liqui-Burn, Max! Weight-Loss Matrix, Hydroxycut Hardcore Proprietary Blend Proxyclene, Noreidrol Intensity Focus Blend, Lasidrate Delivery Blend, or Yohimbacore."

III.    **Reports of Hydroxycut-Related Injuries**

30.    In 2002, the Center for Food Safety and Applied Nutrition's (CFSAN) adverse event reporting system, CAERS, began receiving reports of liver-related illnesses in persons who reported consuming the dietary supplement Hydroxycut capsules/caplets for periods ranging from as short as a week to two (2) months. Since the earlier formulation of

Hydroxycut contained ephedra, it was generally believed that the reports of liver injury associated with the use of the product were due either to ephedra or a combination of the ingredients found in the product. However, following the removal of ephedra from Hydroxycut capsules/caplets, CFSAN continued to receive reports of liver injury associated with the use of Hydroxycut capsules/caplets. In addition, CFSAN became aware of reports of Hydroxycut associated liver toxicity published in the peer-reviewed literature and received communications from independent hepatologists regarding cases of liver toxicity associated with the use of the Hydroxycut capsules/caplets.

### *Hydroxycut-associated liver toxicity reports in CAERS.*

31.    The FDA reports 23 case reports of Hydroxycut-associated liver toxicity have been identified in CAERS for the period 2002 through 2008.

32.    For cases in which gender was known, 15 (65%) were female. Ages ranged from 20 years to 51 years (median = 29 years). Sixteen cases (70%) were hospitalized. The majority of cases reported no underlying risk factors for liver disease (e.g., no history of viral hepatitis, no HIV infection, no autoimmune diseases). Although the reports vary in detail, several reports describe work-ups that ruled out infectious, autoimmune, and metabolic causes of liver disease. The severity of illness ranged from asymptomatic elevations in serum bilirubin to acute liver failure (one patient received a liver transplant in 2002, a second patient was reportedly waiting for a liver transplant in 2004) to one death.

### *Reports of Hydroxycut-associated liver toxicity in the peer-reviewed literature.*

33.   The FDA indicates that it was aware of four published reports in the peer reviewed literature that describe liver disease that occurred in six persons following the consumption of Hydroxycut capsules/caplets.

34.   The FDA reports that the aforementioned cases are consistent with the diagnosis of idiosyncratic hepatotoxicity for a number of reasons: the temporal relationship between the consumption of Hydroxycut capsules/caplets and the development of acute liver injury in persons who had no history of known liver disease; the exclusion of other causes of liver disease following extensive work-ups; the resolution of liver injury upon discontinuation of Hydroxycut capsules/caplets; and the development of liver injury is not dose dependent. Also apparent were two distinct patterns of liver injury: cholestatic and necrotic. It is not unusual for a single herbal preparation to produce more than one type of clinicopathologic liver injury.

### *Discussions with hepatologists.*

35.   The FDA reported findings from discussions in March and April 2009 with hepatologists Tse-Ling Fong, M.D. of the University of Southern California, and William Lee, M.D. of the University of Texas, Southwestern Medical Center, CFSAN has become aware of these physicians' case series of patients with severe liver disease associated with the use of Hydroxycut capsules/caplets. Two cases from this series, representing additional cases to the ones reported to CFSAN, underwent liver transplantation following acute liver failure.

### IV.   FDA Writes Iovate on April 30, 2009

36.     On April 30, 2009 Stephen F. Sundlot Director Center for Food Safety and Applied Nutrition wrote to Mr. Terry Begley of Iovate Health Sciences, Inc. The letter confirmed that on March 31, 2009, the U.S. Food and Drug Administration (FDA) informed Iovate during a meeting of concerns that the FDA had about liver toxicity associated with the use of multiple versions of the dietary supplement Hydroxycut marketed under the Iovate and MuscleTech brand names. The FDA's concerns were based on adverse events reported to FDA, case reports in the peer-reviewed literature, and in a case series described by hepatologists to FDA. The FDA advised Iovate that it had concluded that the ingestion of the dietary supplement Hydroxycut presents a "severe potentially life- threatening hazard to some users."

37.     The FDA reported that it held a telephone conversation on April 29, 2009, between outside counsel for Iovate Health Sciences, inc., and Mr. Eric Blumberg, Deputy Chief Counsel, Litigation, Office of Chief Counsel, FDA, wherein the FDA explained its conclusions about the safety of Hydroxycut Products and the additional actions that the FDA expected Iovate to take in response to the serious public health hazards presented by the Hydroxycut dietary supplements.

38.     The FDA concluded that three lines of evidence derived from multiple disparate sources suggest it is very likely that exposure to Hydroxycut capsules/caplets can cause idiosyncratic hepatotoxicity. First, many of the subjects described in the adverse event reports to CAERS, in the peer- reviewed literature, and in the case series described by hepatologists reported no history of liver disease or risk factors for liver disease (e.g.,

alcohol consumption, previous viral infection, hereditary factors, etc.) prior to experiencing liver injury following the ingestion of Hydroxycut capsules/caplets. Second, in many subjects, thorough diagnostic evaluations performed in multiple settings ruled out a number of known causes of liver disease, including viral hepatitis, autoimmune diseases, and metabolic/inherited disorders. Third, prompt resolution of liver disease occurred in a number of patients following cessation of Hydroxycut capsules/caplets ingestion. While some adverse event reports involved users who had consumed more than the daily dosage recommended on the products' labeling, if these reports were excluded from consideration, the remaining evidence demonstrates liver related adverse effects following exposure to Hydroxycut capsules/caplets. In addition to Hydroxycut capsules/caplets associated liver-related adverse effects, CFSAN is aware of a number of CAERS reports that describe seizures, rhabdomyolysis, and cardiovascular signs and symptoms.

39.     The FDA, based on the totality of evidence, concluded that the ingestion of the dietary supplement, Hydroxycut, presents a severe and potentially life-threatening hazard to some users.

40.     The FDA also disagreed with claims of Iovate that some Hydroxycut Products were safe:

> While the firm believes that the lack of reported adverse events associated with the use of the Hydroxycut shot product and the drink mixes is evidence that they are safe, FDA disagrees. The reports of acute liver injury in individuals who have consumed Hydroxycut capsules/caplets represent idiosyncratic reactions, meaning that the injuries have occurred as a result of conditions peculiar to the affected individuals. As such, the incidence of injuries of this nature is unpredictable and may result from peculiar metabolic interactions

between one or more Hydroxycut ingredient and the host's physiologic system. There are no data to indicate that the dose or duration of use of any particular Hydroxycut ingredient, or the gender, or any other identifiable trait of a Hydroxycut user predicts the risk of an adverse event. In light of this, and because the fact that the drink mixes and 'shot' products share ingredients with products known to be associated with adverse events, and because it is unknown which ingredient(s) of Hydroxycut are responsible for producing the idiosyncratic reactions, we believe that the reasonable conclusion to be drawn is that these products present the same risks as the Hydroxycut capsules/caplets.

41.     Given the seriousness of the hazard presented by Hydroxycut, Iovate Health Sciences, Inc. voluntarily agreed to cease distribution of all existing formulations of Hydroxycut and recall from the marketplace, to the consumer/user level, all existing formulations of Hydroxycut.

## V.     FDA Hydroxycut Warnings

42.     On May 1, 2009, the FDA issued an advisory which stated, "Although the liver damage appears to be relatively rare, FDA believes consumers should not be exposed to unnecessary risk".

43.     The FDA warned consumers (5/1/09) to immediately stop using Hydroxycut Products by Iovate Health Services, Inc. of Oakville, Ontario. Some Hydroxycut Products are associated with a number of serious liver injuries. Iovate agreed to immediately recall Hydroxycut Products from the US market.

44.     The FDA issued this "dear doctor" letter that stated as follows:

Dear Health Care Professional Colleague:

We are alerting you about a dietary supplement product that we believe presents a serious public health risk. Hydroxycut Products are distributed by

Iovate Health Sciences Inc., Oakville, Ontario Canada and distributed by Iovate Health Sciences U.S.A., Inc. of Blasdell, NY, and have been implicated in several cases of serious liver injury. The Food and Drug Administration (FDA) has received 23 reports of adverse liver effects in users of Hydroxycut Products, ranging from asymptomatic hyperbilirubinemia, jaundice, liver damage, liver transplant, and death. The injuries reported to FDA occurred in persons between 21 and 51 years of age. No other cause for liver disease was identified. In the majority of cases, no preexisting medical condition that would predispose the consumer to liver injury was identified. In some cases, discontinuation of Hydroxycut usage resulted in recovery of liver function. Although the liver damage appears to be relatively rare, FDA believes consumers should not be exposed to unnecessary risk. FDA has also identified several other serious adverse events associated with Hydroxycut, including cases of seizures, rhabdomyolysis, and cardiovascular disorders ranging in severity from palpitations to a heart attack.

Hydroxycut Products bear the Iovate or Muscletech Brand name and are multi-ingredient dietary supplements marketed for weight loss, as fat burners, energy enhancers, as low carb diet aids, and to promote water loss. The following products have been recalled by the company:

- Hydroxycut Regular Rapid Release Caplets;
- Hydroxycut Caffeine-Free Rapid Release Caplets;
- Hydroxycut Hardcore Liquid Caplets;
- Hydroxycut Max Liquid Caplets;
- Hydroxycut Regular Drink Packets;
- Hydroxycut Caffeine-Free Drink Packets;
- Hydroxycut Hardcore Drink Packets (Ignition Stix);
- Hydroxycut Max Drink Packets;
- Hydroxycut Liquid Shots;
- Hydroxycut Hardcore RTDs (Ready-to-Drink);
- Hydroxycut Max Aqua Shed;
- Hydroxycut 24;
- Hydroxycut Carb Control; and
- Hydroxycut Natural.

Based on the information available to FDA, we cannot determine exactly which ingredient(s) or proprietary blends in Hydroxycut may be associated with liver injury, or what other factors, such as health condition, length of use,

dosage, or use along with other dietary supplements or drugs, may affect the risk of using Hydroxycut.

FDA is warning consumers to immediately stop use of these products. FDA has issued a consumer warning advising of the potential risks associated with the use of these products and advising consumers to consult theft health care provider if they are experiencing symptoms possibly associated with this product, particularly nausea, weakness or fatigue, fever, abdominal pain, or any change in skin color.

We urge you to review your cases of hepatitis in order to determine if any may be related to the use of dietary supplements in these patients. Adverse events associated with the use of dietary supplements should be reported as soon as possible to FDA's MedWatch program by telephone (1-800-332-1088) or Internet (http://www.fda.gov/medwatch).

Thank you for your efforts and cooperation in addressing this potentially serious public health issue. For additional information, see http://www.cfsan.fda.gov.

45.    On May 1, 2009, the FDA warned consumers to stop using Hydroxycut Products, as the dietary supplements were felt to be linked to one death, and 23 reports of serious health problems ranging from jaundice and elevated liver enzymes, an indicator of potential liver injury, to liver damage requiring liver transplant. Other health problems reported include seizures, cardiovascular disorders, and rhabdomyolysis.

46.    Liver injury was reported by patients at the doses of Hydroxycut recommended on the bottle. Symptoms of serious liver disease include jaundice (yellowing of the skin or whites of the eyes), and brown urine. Non-specific symptoms of liver disease can include nausea, vomiting, light colored stools, excessive fatigue, weakness, stomach or abdominal pain, itching and loss of appetite.

47.     The packaging of the Hydroxycut Products promotes their use to "increase energy," "burn calories" and "control appetite" and boasts that they are made with "clinically proven ingredients." In addition, the packaging claims that "Hydroxycut® Works Fast!" The packaging further states as follows:

> "Hydroxycut® is America's #1 selling weight-loss supplement. Hydroxycut really does work — fast! Utilizing sophisticated Rapid-Release Caplets, Hydroxycut is doctor formulated+ with clinically proven ingredients top help you lose up to 4.5 times the weight than diet and exercise alone. Now with an improved HydroxyTea® blend, there's even more reason to love Hydroxycut®."

The packaging also states: "[d]on't take chances — you deserve the best! Put your trust in the power of Hydroxycut® and discover for yourself why millions of men and women all across America have used Hydroxycut. For fast weights loss, make Hydroxycut® your #1 choice today!"

48.     The Hydroxycut Products packaging makes much of Hydroxycut being "doctor formulated" and approved. In this regard, the side of the Hydroxycut Products packaging boasts that the Hydroxycut Products are "Backed by Science" and includes a picture of Dr. John Marshall, D.O., "Resident Physician" and his statement that "Hydroxycut® is a product that has ingredients proven to work. I've recommended it to a number of men and women and have used it myself with fantastic results." The packaging also credits Dr. Marvin Heuer, FAAFP, Iovate's Chief Scientific Officer, with formulating the Hydroxycut Products.

49.     The FDA's reasoning for the May 2009 activity and warnings over Hydroxycut Products can be found in a Health Hazard Evaluation Board document entitled "The Problem: Liver toxicity following consumption of dietary supplements, Hydroxycut". Their conclusion was, "Three lines of evidence derived from multiple disparate sources suggest it is very likely that exposure to Hydroxycut can cause idiosyncratic hepatoxicity" The report was authored by Linda Katz, M.D., interim chief medical officer of FDA's Center for Food Safety and Applied Nutrition.

## VI.     Hydroxycut Products are Recalled

50.     Iovate initiated a voluntary recall when it became aware that the FDA's assessment of 23 reports about consumers having experienced liver-related problems, as well as a small number of published ease reports, was different from Iovate's analysis. As of May 1, 2009 the list of products that were voluntarily recalled by Iovate included:

```
HYDROXYCUT RAPID RELEASE REGULAR CAPLETS
631656893649 Hydroxycut 140ct Cap US
531656833621 Hydroxycut 60 ONC US
631656600988 Hydroxycut.300ct Caplets US
631656890129 Hydroxycut 36ct Cap US "with CARDS"
631656282245 Hydroxycut 160ct Cap US *Discontinued"
631656873214 Hydroxycut 58ct Cap US
631656813418 Hydroxycut 70ct Cap US
631656808612 Hydroxycut 70ct Caps US *Discontinued"
631656806117 Hydroxycut 100 cap US *Discontinued"
631656818642 Hydroxycut 140ct Cap US *Discontinued"
631656882414 Hydroxycut 80ct Caps US *Discontinued*
631656843262 Hydroxycut 210ct Cap US
631656828665 Hydroxycut 210 cap US *Discontinued"
631656600582 Hydroxycut 60ct + 1 Hydroxycut Sachet WB US
631656600476 Hydroxycut 72ct + Hydroxycut Sachet WB US
631656600483 Hydroxycut 100ct Caplets US
```

Case No. 09-MD-2087 BTM (CAB)

631655600506 Hydroxycut l50ct Caplets US
631656601251 Hydroxycut 170 Caplets US
631656600452 Hydroxycut 30ct Caplets US

HYDROXYCUT HARDCORE LIQUID CAPSULES
531656600650 Hydroxycut Hardcore 120ct US
531656600834 Hydroxycut Hardcore 210ct US
631656001778 Hydroxycut Hardcore 30ct US
631656601435 Hydroxycut Hardcore 252ct US
631656601848 Hydroxycut Hardcore 30ct US Trial - Bodybuilding.com
631656601 749 Hydroxycut Hardcore l20ct US NEW
631656601 763 Hydroxycut Hardcore 252ct US
631656601756 Hydroxycut Hardcore 2l0ct US NEW

HYDROXYCUT CAFFEINE-FREE CAPLETS
631658801224 Hydroxycut Caffeine Free 140ct Cap US
631656821246 Hydroxycut Caffeine Free 330ct Cap US
631656801 217 Hydroxycut Caffeine Free l00ct Cap US
631656801231 Hydroxycut Caffeine Free 58ct Cap US
631656699122 Hydroxycut Caffeine Free 36ct Cap US
631656600544 Hydroxycut Caffeine Free 60ct US
631856600551 Hydroxycut Caffeine Free 72ct US
831656600568 Hydroxycut Caffeine Free l00ct US

HYDROXYCUT MAX CAPLETS
631656601466 Hydroxycut Max 120ct Bonus + 1 Hyd Max Sachet WB US
631656601633 Hydroxycut Max 210ct Bonus + 1 Hyd Max Sachet WB US

HYDROXYCLIT REGULAR DRINK PACKET
631656860191 Hydroxycut Weight Loss Drink Mix 21pk Sachet-Wild Berry US
631656660313 Hydroxycut Weight Loss Drink Mix 21pk Sachet - Country Lemonade US

HYDROXYCIJT HARDCORE DRINK PACKET (IGNITION STIX)
631656701326 Hydroxycut Hardcore Drink Mix 2.7g Sachet - Blue Raspberry US
631656701319 Hydroxycut Hardcore Drink Mix 2.69 Sachet - Fruit Punch US
631656760115 Hydroxycut Hardcore DrinkMix4Opkx2g Sachet- FruitPunch US
631655760125 Hydroxycut Hardcore Drink Mix 4Opk x 2g Sachet - Blue Raspberry US

HYDROXYCUT CAFFEINE-FREE DRINK PACKET

631658760095 Hydroxycut Caffeine Free Drink Mix 21 pk x 3.6g Sachet - Raspberry lce US

HYDROXYCUT MAX DRINK PACKET
631556850375 Hydroxycut Max Drink Mix 40plc x 2.4g Sachet - Wild Berry US
631656860382 Hydroxycut Max Drink Mix 40pkx2.7g Sachet-Lemonade US

HYDROXYCUT LIQUID SHOT
631556800159 Hydroxycut Weight Loss Single Shot 2oz -Wild Berry US
631656860207 Hydroxycut Weight Loss Shot2 x2oz Pk-Wild Berry US
631656860498 Hydroxycut Instant Weight Loss Shot 12 x 2oz - Wild Berry US

HYDROXYCUT MAX AQUA SHED
631656601855 Hydroxycut MaxAqua Shed 60ct Capsules US

HYDROXYCUT HARDCORE RTD
631656850436 Hydroxycut Hardcore 4 x8oi RTD - Grape Infusion US
531655860399 Hydroxycut Hardcore 4 x 8oz RTD -Triple Wild Berry US
631656860665 Hydroxycut Hardcore 12-pack RTD - Grape Infusion US
631655850467 Hydroxycut Hardcore 3 x 4-pack RTD - Grape Infusion US
631656860443 Hydroxycut Hardcore 3 x 4-pack RTD - Triple Wild Berry US
631656860443 Hydroxycut Hardcore 3x4-pack RTD-Triple Wild Berry US
631656560568 Hydroxycut Hardcore 12-pack RTD -Triple Wild Berry US

HYDROXYCUT 24
631656600933 Hydrozycut24 (96 caps/ blister pack) US

HYPROXYCUT CARE CONTROL
631656800038 Hydroxycut Carb Control 58ct Cap US
631656800029 Hydroxycut Carb Control 100ct Cap US
631666800012 Hydroxycut Carb Control 140ct Cap US

HYDROXYCUT NATURAL
631656600889 Hydroxycut Natural 100ct US

51.     On May 7, 2009 the scope of the Hydroxycut recall was widened. Additional products all involve additional packages and sizes of products previously referenced. The TJPC numbers added to the May 1, 2009 list are as follows:

631656800265 Hydroxycut Hardcore 8 fl. oz. Grape Explosion

631656800210 Hydroxycut Hardcore 8 fl. oz. Triple Wildberry
631656001501 Hydroxycut 280ct-3 Pak Kit *Discontinued*
631656001563 Hydroxycut 280ct-6 Pak Kit *Discontinued*
631656000658 Hydroxycut l00ct-6 month supply (7 bottles+ 4 free) Kit
631656600896 Hydroxycut 2x60ct Club Pack US Kit
631656000672 Hydroxycut l00ct-1 month supply (1 bottle+1 free) Kit *Discontinued*
631656874693 Hydroxycut 58 cap 12-pack Target US Kit *Discontinued*
631656000665 Hydroxycut l00ct-3 month supply (4 bottles+2 free) Kit *Discontinued*
631656002362 Hydroxycut Sachet Twin Pack US Kit
631656860498 Hydroxycut Instant Weight Loss Shot 12 x 2oz - Wild berry US Kit
631656660623 Hydroxycut Hardcore Shredded Stack Kit 20ct
631656500585 Hydroxycut 60 Rapid Release Caplets

52.    Product Defendants negligently formulated, designed, manufactured, marketed, advertised, promoted, distributed and/or sold Hydroxycut Products that can potentially cause serious health problems including, but not limited to, jaundice and liver failure.

53.    Product Defendants failed to properly research the ingredients used in the Hydroxycut Products to ensure that they were safe for consumption and did not cause adverse health effects.

54.    As a result of the acts and practices detailed herein and Plaintiff's reasonable belief in the quality and safety of Hydroxycut Products, and the consequent reasonable belief that Hydroxycut Products would not have adverse health effects, Plaintiff was misled into purchasing the unsafe Hydroxycut Products. Hydroxycut Products did not provide the attributes and benefits Plaintiff reasonably expected to receive, sought and thought she was receiving. As a result, Plaintiff bought Hydroxycut Products which were not safe for consumption, that she would not have purchased had Product Defendants disclosed the

material facts detailed herein, which were in their exclusive possession and that they were obligated to disclose or should reasonably have disclosed.

55.     Product Defendants failed to warn purchasers of the unreasonably dangerous characteristics associated with Hydroxycut Products, including the fact that it may cause serious liver problems and other health problems. Product Defendants failed to institute an earlier recall of Hydroxycut.

56.     Based on the above material facts and statements, Product Defendants owed a legal duty to Plaintiff to formulate, design, manufacture, market, advertise, distribute and sell Hydroxycut Products that were safe for human consumption or not sell such products.

57.     Product Defendants breached their duty, which directly and proximately caused or resulted in Plaintiff suffering injury in fact, a loss of money or property, the personal expenditure of time and resources and/or other forms of injury and/or damage.

58.     In addition, based on the duties owed to Plaintiff by Product Defendants not to expose consumers to potentially harmful products, Plaintiff is entitled to the reasonable value of the cost of medically monitoring her condition, as the need for medical monitoring is a reasonable consequence of suffering liver-related injuries due to the consumption of Hydroxycut Products and is thus necessitated as a direct result of use, and is reasonable considering 1) the significance and extent of the consumption of Hydroxycut Products; 2) the relative increase in the chance of onset of liver problems as a result of using Hydroxycut Products, when compared to the chances of liver problems absent such use; 3) the

seriousness of the conditions for which the Plaintiff is at risk; and 4) the clinical value of early detection.

59.    Product Defendants knew that Hydroxycut Products potentially cause liver problems and other health problems including, but not limited to, jaundice and liver failure. Plaintiff might have reasonably been expected by Product Defendants to purchase and ingest Hydroxycut Products and be adversely affected by their defective condition.

60.    As Hydroxycut reports of side effects, including, but not limited to, liver damage, came to light, Product Defendants knew that Hydroxycut Products were not safe to sell to the public and Plaintiff.

**VII.  Role of Manufacturing Defendants**

61. Defendants, Vitaquest, Bactolac, and Douglas were engaged in the business of, and did design, contract to manufacture, manufacture, advertise, promote market, sell and distribute nutritional/dietary supplements under the proprietary name Hydroxycut throughout the United States.   As part of their business, said defendants, manufactured/formulated/packaged Hydroxycut products as a contractor to Product Defendants, such as but not limited to Hydroxycut Regular Rapid Release Caplets.

62.  Defendant Interhealth was regularly engaged in the business of, and did design, contract to manufacture, manufacture, advertise, promote market, sell and distribute nutritional/dietary supplements under the proprietary name Hydroxycut throughout the United States.   As part of its business, said defendant,

designed/manufactured/formulated/packaged Hydroxycut products as a contractor to Product Defendants.

63.    Defendant, Marco Hi-Tech was regularly engaged in the business of manufacturing/formulation/packaging of tea extract ingredients used in the Hydroxycut products that cause injury to Plaintiff, BARBARA DUNN, as alleged herein.

64.    Green tea as traditionally used as a beverage flavoring is not dangerous, however Defendants, Marco Hi-Tech processed and extracted phenols and other ingredients from the natural product and thereby created a product which was not found in nature and which was toxic and unreasonably dangerous for susceptible users.

## VII.  Plaintiff's Experience

65.    From February 2007 to December 2007, Plaintiff, BARBARA DUNN, purchased Hydroxycut Products and did so because she had been exposed to the promotion, advertising and marketing of Hydroxycut Products as set forth in detail herein. Entrusting Product Defendants, she relied on the reputations of the Product Defendants in purchasing Hydroxycut Products, and was misled into thinking that Hydroxycut Products were healthy and safe for use, which was false and misleading since the Hydroxycut Products caused liver problems and other health problems, including but not limited to, jaundice and liver failure. As a result of the Product Defendants' deceptive marketing scheme and a reliance on the purported trustworthiness and safety of Hydroxycut Products, she was misled in the

purchasing and spending money on Hydroxycut Products. In exchange for her money, Plaintiff received something other than what was represented. As a result she was injured.

66.     Plaintiff, BARBARA DUNN, ingested Hydroxycut Rapid Release Caplets and Caffeine Free Regular Rapid Release Caplets from February 2007 to December 2007.

67.     On or about January 28, 2008 Plaintiff, BARBARA DUNN, began experiencing abdominal pain, and was diagnosed with jaundice.

68.     On or about January 29, 2008 Plaintiff was diagnosed with elevated liver enzymes, and was experiencing symptoms of; dark urine, nausea, vomiting and diarrhea, light colored stools, weight loss, headaches, and dizziness.

69.     On or about January 30, 2008, Plaintiff, BARBARA DUNN, presented to St. Mary's Regional Medical Center where she was admitted due to elevated liver enzymes, vomiting, jaundice, and right flank pain.  She was discharged on February 1, 2008.

70.     After Plaintiff's hospitalization, she was examined at Millard-Henry Clinic of Russellville where she received treatment for extremely elevated liver enzymes, and other abdominal symptoms, and eventually diagnosed with autoimmune hepatitis.

## COUNT I

## PRODUCT LIABILITY ACTION

71.     Plaintiff repeats and re-alleges all preceding paragraphs as if more fully set forth herein.

72.    The Product Defendants designed, formulated, manufactured, promoted, marketed, and advertised, packaged, labeled, and distributed Hydroxycut Products to consumers.

73.    The Manufacturing Defendants designed, formulated, manufactured, promoted and marketed various Hydroxycut Products and ingredients used in Hydroxycut Products

74.    The use of Hydroxycut Products at doses recommended can cause serious liver problems including, but not limited to, jaundice and liver failure.

75.    The subject matter Hydroxycut was not reasonably safe at the time it left the Product Defendants.

76.    That according to generally accepted production practices at the time said Hydroxycut left the control of the Product Defendants, a practical and technically feasible alternative production practice was available that would have prevented the harm including, but not limited to, not supplying it to the general public in a context that it was given and/or changing the formula so as not to create risk of injury.

77.    The subject matter Hydroxycut Products was not altered from the date of manufacture to the date of use.

78.    The subject matter Hydroxycut Products were not misused by the Plaintiff.

79.    As a direct and proximate result of the Product Defendants' defective condition of the Hydroxycut Products, Plaintiff BARBARA DUNN has sustained serious injuries as noted herein.

80.     As a direct and proximate result of the Product Defendants' defective condition of the Hydroxycut Products, Plaintiff BARBARA DUNN a has sustained loss of earning capacity, loss of services, incur medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress.

81.     As a direct and proximate result of the Product Defendants' defective condition of the Hydroxycut Products, Plaintiff BARBARA DUNN will sustain in the future loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress because the nature of his injuries are permanent.

WHEREFORE, Plaintiff prays for judgment against Product Defendants and Manufacturing Defendants Jointly and Severally as follows:

    a.  Adjudge and decree that Product Defendants and Manufacturing Defendants have engaged in the conduct alleged herein;

    b.  Award Plaintiff judgment and all damages as allowed under the law;

    c.  Award Plaintiff pre and post-judgment interest as allowed by law;

    d.  Award counsel for Plaintiff's reasonable attorneys' fees, experts' fees and costs as allowed by law;

    e.  Exemplary damages to punish Defendants and to deter others from such conduct; and

    f.  Granting such other and further relief that this Court may deem just and proper.

## COUNT II

## PRODUCT LIABILITY ACTION – WARNING

82.    Plaintiff repeats and re-alleges all preceding paragraphs as if more fully set forth herein.

83.    The Product Defendants designed, formulated manufactured, promoted, marketed, and advertised, packaged, labeled, and distributed Hydroxycut Products to consumers.

84.    The Manufacturing Defendants designed, formulated, manufactured, promoted and marketed various Hydroxycut Products and ingredients used in Hydroxycut Products

85.    The use of Hydroxycut Products at doses recommended potentially causes serious liver problems including, but not limited to, jaundice and liver failure.

86.    That Plaintiff, BARBARA DUNN, was not a sophisticated user of this Product and did not understand its chemistry, but rather relied upon false statements made by the Product Defendants as to the safety of the Product.

87.    Liver damage is not an inherent characteristic that is necessary in the formulation of diet drugs.

88.    Plaintiff, BARBARA DUNN, did not recognize the inherent danger in the use of the subject Hydroxycut Products for she was a person with ordinary knowledge in the community.

89.    The Product Defendants failed to warn of the dangers of liver damage when using the aforesaid Hydroxycut Products.

90.   As a direct and proximate result of the Product Defendants' failure to adequately warn, Plaintiff, LORRAINE KEARNEY, sustained serious injuries as noted herein.

91.   As a direct and proximate result of the Product Defendants' failure to adequately warn, Plaintiff BARBARA DUNN, has sustained loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress.

92.   As a direct and proximate result of the Product Defendants' failure to adequately warn, Plaintiff BARBARA DUNN will sustain in the future loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress because the nature of his injuries are permanent.

WHEREFORE, Plaintiff prays for judgment against Product Defendants and Manufacturing Defendants Jointly and Severally as follows:

    a.   Adjudge and decree that Product Defendants and Manufacturing Defendants have engaged in the conduct alleged herein;

    b.   Award Plaintiffs judgment and all damages as allowed under the law;

    c.   Award Plaintiffs pre and post-judgment interest as allowed by law;

    d.   Award counsel for Plaintiffs reasonable attorneys' fees, experts' fees and costs as allowed by law;

    e.   Exemplary damages to punish Defendants and to deter others from such conduct; and Granting such other and further relief that this Court may deem just and proper.

## COUNT III

## BREACH OF EXPRESSED WARRANTY

93.     Plaintiff repeats and re-alleges all preceding paragraphs as if more fully set forth herein.

94.     The Product Defendants designed, formulated, manufactured, promoted, marketed, and advertised, packaged, labeled, and distributed Hydroxycut Products to consumers.

95.     The Product Defendants sold the subject matter Hydroxycut Products.

96.     The Manufacturing Defendants designed, formulated, manufactured, promoted and marketed various Hydroxycut products and ingredients used in Hydroxycut products.

97.     The use of Hydroxycut Products at doses recommended potentially causes serious liver problems including, but not limited to, jaundice and liver failure.

98.     The Product Defendants supplied Hydroxycut Products which failed to conform to its expressed warranty of being safe to use.

99.     The Manufacturing Defendants supplied ingredients of the Hydroxycut Products which failed to conform to its expressed warranty of being safe to use.

100.    As a direct and proximate result of the Product Defendants' and Manufacturing Defendants  breach of expressed warranty, Plaintiff BARBARA DUNN has sustained serious injuries as noted herein.

101.   As a direct and proximate result of the Product Defendants' and Manufacturing Defendants' breach of expressed warranty, Plaintiff BARBARA DUNN has sustained loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress.

102.   As a direct and proximate result of the Product Defendants' and Manufacturing Defendants' breach of expressed warranty, Plaintiff BARBARA DUNN will sustain in the future loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress because the nature of his injuries are permanent.

WHEREFORE, Plaintiff prays for judgment against Product Defendants and Manufacturing Defendants Jointly and Severally as follows:

   a.   Adjudge and decree that Product Defendants and Manufacturing Defendants have engaged in the conduct alleged herein;

   b.   Award Plaintiff judgment and all damages as allowed under the law;

   c.   Award Plaintiff pre and post-judgment interest as allowed by law;

   d.   Award counsel for Plaintiff's reasonable attorneys' fees, experts' fees and costs as allowed by law;

   e.   Exemplary damages to punish Defendants and to deter others from such conduct; and

   f.   Granting such other and further relief that this Court may deem just and proper.

## COUNT IV

Case No. 09-MD-2087 BTM (CAB)

## **NEGLIGENCE**

103.   Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

104.   The Product Defendants designed, formulated, manufactured, promoted, marketed, and advertised, packaged, labeled, and distributed Hydroxycut Products to consumers.

105.   The Manufacturing Defendants designed, formulated, manufactured, promoted and marketed various Hydroxycut Products and ingredients used in Hydroxycut Products

106.   The use of Hydroxycut Products at doses recommended potentially causes serious liver problems including, but not limited to, jaundice and liver failure.

107.   Product Defendants and Manufacturing Defendants have a duty to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Hydroxycut Products, including a duty to ensure that Hydroxycut Products and/or the ingredients contained therein are safe for use and a duty to warn that Hydroxycut Products and/or the ingredients contained therein  may cause serious liver problems and other health problems, including, but not limited to, jaundice and liver failure.

108.   As set forth in detail above, Product Defendants and Manufacturing Defendants failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Hydroxycut Products by failing to ensure that Hydroxycut Products were safe for use.

109.   Specifically, Product Defendants and Manufacturing Defendants were negligent in the formulation, design, manufacture, promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Hydroxycut Products and/or the ingredients contained therein in that they, among other things:

a.   Failed to use reasonable care in formulating, designing and manufacturing Hydroxycut Products and/or the ingredients contained therein so as to ensure that they were safe for use and did not cause adverse health effects including liver problems and other health problems;

b.   Failed to conduct adequate safety testing of Hydroxycut Products and the ingredients used to make Hydroxycut Products;

c.   Failed to accompany Hydroxycut Products and/or the ingredients contained therein with proper warnings regarding the possible adverse health effects associated with its use including, but not limited to, jaundice and liver failure;

d.   Failed to take proper action to ensure the safety of Plaintiffs when reports of injuries and death were received;

e.   Failed to use reasonable care that the Hydroxycut ingredients were pure and safe for normal use;

f.   Were careless and negligent in the manufacturing process of Hydroxycut Products and/or the ingredients contained therein; and

g.   Were careless and negligent in the sale and distribution of Hydroxycut Products and/or the ingredients contained therein.

110.   At the time of supply of Hydroxycut, the Product Defendants and Manufacturing Defendants had actual knowledge that the product was defective and that there was a substantial likelihood that the defect would cause injury that is the basis of this action, and they willfully disregarded that knowledge in the supply of Hydroxycut Products.

111.   Despite the fact that Product Defendants and Manufacturing Defendants knew or should have known that its Hydroxycut Products could cause serious adverse health effects, it continued to market and sell them to consumers, including Plaintiff, despite the reasonable possibility that Hydroxycut Products caused liver problems and other health problems including, but not limited to, jaundice and liver failure. They failed to institute an earlier recall.

112.   Product Defendants and Manufacturing Defendants knew or should have known that Plaintiff would foreseeably be put at risk of liver problems and other health problems as a result of Product Defendants' failure to give warning of the adverse health effects associated with use of Hydroxycut Products.

113.   As a direct and proximate result of the Product Defendants' and Manufacturing Defendants' negligence, Plaintiff BARBARA DUNN has sustained serious injuries as noted herein.

114.   As a direct and proximate result of the Product Defendants' negligence, Plaintiff BARBARA DUNN has sustained loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, mental anxiety, trauma and emotional distress.

115.   As a direct and proximate result of the Product Defendants' and Manufacturing Defendants negligence, Plaintiff BARBARA DUNN will sustain in the future loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of

enjoyment of life, and mental and emotional distress because the nature of his injuries are permanent.

WHEREFORE, Plaintiff prays for judgment against Product Defendants and Manufacturing Defendants Jointly and severally as follows:

    a. Adjudge and decree that Product Defendants and Manufacturing Defendants have engaged in the conduct alleged herein; Award Plaintiffs judgment and all damages as allowed under the law;

    b. Award Plaintiff pre and post-judgment interest as allowed by law;

    c. Award counsel for Plaintiff's reasonable attorneys' fees, experts' fees and costs as allowed by law;

    d. Exemplary damages to punish Defendants and to deter others from such conduct; and Granting such other and further relief that this Court may deem just and proper.

## COUNT V

## GROSS NEGLIGENCE

116. Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

117. That prior to the date of incident, Product Defendants and Manufacturing Defendants had knowledge that said Hydroxycut Products and/or the ingredients contained therein were defective and there was a substantial likelihood that the defects would cause of action injury to others such as, but not limited, Plaintiffs and failed to notify others.

118.   That prior to the date of incident Product Defendants and Manufacturing Defendants willfully disregarded knowledge of defective conditions within the aforesaid Hydroxycut Products and/or the ingredients contained therein.

119.   That Product Defendants' misconduct as alleged herein, was a proximate cause of the injuries and damages sustained by Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Product Defendants and Manufacturing Defendants Jointly and Severally as follows:

a.   Adjudge and decree that Product Defendants and Manufacturing Defendants have engaged in the conduct alleged herein;

b.   Award Plaintiff judgment and all damages as allowed under the law;

c.   Award Plaintiff pre and post-judgment interest as allowed by law;

d.   Award counsel for Plaintiff's reasonable attorneys' fees, experts' fees and costs as allowed by law;

e.   Exemplary damages to punish Defendants and to deter others from such conduct; and

f.   Granting such other and further relief that this Court may deem just and proper.

## COUNT VI

## RECKLESSNESS

120.   Plaintiff repeats and re-alleges all preceding paragraphs as if more fully set forth herein.

121.   That prior to the date of incident, Product Defendants and Manufacturing Defendants had knowledge that said Hydroxycut Products and/or the ingredients contained

therein were defective and there was a substantial likelihood that the defect would cause of action injury such as, but not limited that, which is the basis of this action herein involved.

122.   Product Defendants and Manufacturing Defendants willfully disregarded that knowledge.

123.   That Product Defendants' and Manufacturing Defendants' misconduct, as herein alleged, was a proximate cause of the injuries and damages sustained by Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Product Defendants and Manufacturing Defendants Jointly and Severally as follows:

a. Adjudge and decree that Product Defendants and Manufacturing Defendatns have engaged in the conduct alleged herein;

b. Award Plaintiffs judgment and all damages as allowed under the law; Award Plaintiffs pre and post-judgment interest as allowed by law;

c. Award counsel for Plaintiffs reasonable attorneys' fees, experts' fees and costs as allowed by law;

d. Exemplary damages to punish Defendants and to deter others from such conduct; and

e. Granting such other and further relief that this Court may deem just and proper.

## COUNT VII

## BREACH OF IMPLIED WARRANTY

124.   Plaintiff repeats and re-alleges all preceding paragraphs as if more fully set forth herein.

125.   That Product Defendants and Manufacturing Defendants impliedly warranted that said Hydroxycut Products and/or the ingredients contained therein were free of defect and reasonable safe for its reasonably foreseeable use.

126.   Product Defendants and Manufacturing Defendants breach its implied warranty in that said Hydroxycut Products and/or the ingredients contained therein were defective and not reasonably fit for its reasonably foreseeable use.

127.   That Product Defendants and Manufacturing Defendants breached it implied warranty in the following particulars, including but not limited to:

   a.   Aforesaid Hydroxycut and/or the ingredients contained therein was defectively, manufactured and assembled;

   b.   Aforesaid Hydroxycut was not properly labeled;

   c.   Aforesaid Hydroxycut and/or the ingredients contained therein were not properly tested for safety to reduce the risk of injury;

   d.   Aforesaid Hydroxycut and/or the ingredients contained therein were not supplied with adequate warnings and instructions, nor was such warnings and instructions supplemented up to the time of incident.

128.   That the defective conditions of said Hydroxycut Products and/or the ingredients contained therein were a proximate cause of Plaintiffs' injuries and damages as alleged.

WHEREFORE, Plaintiff prays for judgment against Product Defendants and Manufacturing Defendants Jointly and Severally as follows:

   a.   Adjudge and decree that Product Defendants and Manufacturing Defendants have engaged in the conduct alleged herein;

b.  Award Plaintiff judgment and all damages as allowed under the law;

c.  Award Plaintiff pre and post-judgment interest as allowed by law;

d.  Award counsel for Plaintiff's reasonable attorneys' fees, experts' fees and costs as allowed by law;

e.  Exemplary damages to punish Defendants and to deter others from such conduct; and

f.  Granting such other and further relief that this Court may deem just and proper.

## COUNT VIII

## FRAUD AND MISREPRESENTATION

129.  Plaintiff repeats and re-alleges all preceding paragraphs as if more fully set forth herein.

130.  That Product Defendants' representation that said Hydroxycut Products were safe for its reasonably foreseeable uses amounted to fraud and misrepresentation.

131.  As a proximate result of said fraud and misrepresentation, Plaintiff sustained injuries and damages as alleged.

WHEREFORE, Plaintiff prays for judgment against Product Defendants as follows:

a.  Adjudge and decree that Product Defendants have engaged in the conduct alleged herein;

b.  Award Plaintiff judgment and all damages as allowed under the law;

c.  Award Plaintiff pre and post-judgment interest as allowed by law;

d.  Award counsel for Plaintiff's reasonable attorneys' fees, experts' fees and costs as allowed by law;

e.  Exemplary damages to punish Defendants and to deter others from such conduct; and

f.  Granting such other and further relief that this Court may deem just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL COUNTS**.

Dated: July 25, 2011                    Plaintiff, BARBARA DUNN
                                        By her Attorney,


                                         /s/ Annesley H. DeGaris
                                        Annesley H. DeGaris




OF COUNSEL:
Annesley H. DeGaris
Jon C. Conlin
Stephen R. Hunt
CORY WATSON CROWDER & DeGARIS P.C.
2131 Magnolia Ave. Ste. 200
Birmingham, AL 35205
(205) 328-2200
(205) 324-7896 (Fax)
adegaris@cwcd.com
jconlin@cwcd.com
shunt@cwcd.com

## CERTIFICATION OF SERVICE

I hereby certify that on July 25, 2011 I electronically filed Plaintiff's First Amended Complaint with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the e-mail addresses denoted in the Electronic Mail Notice List appearing on Pacer.  I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 25, 2011.

__*s/Annesley DeGaris*_____
Annesley DeGaris (Pro Hac Vice)

OF COUNSEL:
CORY, WATSON, CROWDER & DEGARIS, PC
2131 Magnolia Ave. Ste 200
Birmingham, AL 35205
p: 205.328.2200
f: 205.324.7896
adegaris@cwcd.com