# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

IN RE HYDROXYCUT MARKETING
AND SALES PRACTICES LITIGATION

Case No. 09md2087 BTM(KSC)

**ORDER OVERRULING RULE 72(a)
OBJECTION**

Plaintiffs have filed a Rule 72(a) objection to Magistrate Judge Crawford's Order re: Plaintiff's Bellwether Selections ("Bellwether Order") filed on June 29, 2012.  For the reasons discussed below, Plaintiffs' objection is overruled.

## I. BACKGROUND

On February 24, 2012, the parties submitted a Proposed Joint Bellwether Plan [Doc. No. 1080].  The Notice of Submission of the Proposed Joint Bellwether Plan stated that the parties intended to file letter briefs in support of their positions by February 28, 2012.

The Proposed Joint Bellwether Plan provided that each side shall pick four bellwether cases, with at least one case from each of Category 1, involving consumption of a Hydroxycut "Hardcore" Product, and Category 2, involving consumption of a Hydroxycut "White Box" Product.  With respect to a product consumption limitation, the proposed plan provided:

> a.   Defense Position is: If a Plaintiff took more than one type of Hydroxycut product they are not eligible for participation in the bellwether program.

> b.   Plaintiff Position is: Plaintiffs do not agree with this provision. Plaintiffs will select their cases without limitation.

On February 29, 2012, Defendants filed a letter brief addressing, among other things, the necessity of the "product consumption limitation."  Defendants explained that by limiting the bellwether cases to cases where a Plaintiff only consumed one product type, bellwether proceedings would be simplified by avoiding discovery related to the inter-relationship of reactions to different products and eliminating potential causation and scientific issues that would need to be explored.  Plaintiffs did not file a letter brief.

On March 19, 2012, Magistrate Judge Books approved the Joint Bellwether Plan. [Doc. No. 1110].  The approved plan included the "product consumption limitation" at Sections IV(A)(4) and IV(A)(9).  The plan provided that each side would select four bellwether cases and one back-up, with at least one case being selected from each of Category 1 and Category 2.

On April 27, 2012, Plaintiffs and Defendants filed their respective bellwether selections.  On May 9, 2012, Defendants filed an Objection to Plaintiffs' Bellwether Selections.  Defendants objected to Plaintiffs' selection of Mario Moraga ("Moraga") on the ground that he had used Hydroxycut Hardcore Liquid Caplets (a Category 1 product) in June 2005 and Hydroxycut Regular Rapid Release Caplets (a Category 2 product) from October 2007 until December 2007.  On May 25, 2012, the parties filed a Joint Motion for Ruling on Plaintiffs' Bellwether Selections.  In the Joint Motion, Plaintiffs set forth their position that Moraga's case was actually a single product case.  Plaintiffs explained that Moraga had never had liver problems prior to his use of the Hydroxycut Rapid Release Product. According to Plaintiffs, the remoteness in time of Moraga's use of the Hydroxycut Hardcore Liquid Caplets in addition to blood test results that showed normal liver function in 2007, establish that the only product use that is relevant is Moraga's use of the Hydroxycut Rapid Release Caplets.

Judge Crawford filed her Bellwether Order on June 29, 2012.  Judge Crawford ruled that Moraga should be precluded from participating in the bellwether program.  Judge Crawford reasoned that the record did not conclusively establish the irrelevance of Moraga's use of the Hydroxycut Hardcore Product in 2005.  Judge Crawford explained that because

1   it was not possible to eliminate the potential that Moraga's use of the Hydroxycut Hardcore

2   Product played a causal role in his subsequent personal injuries, Moraga's case could entail

3   a complicated causation analysis, which would defeat the purpose of the bellwether plan.

4        On July 19, 2012, Plaintiffs filed a motion for reconsideration of the Bellwether Order.

5   Plaintiffs later clarified that they intended their motion to be an objection under Fed. R. Civ.

6   P. 72(a) to be heard by the district court judge.

7

8                        **II. <u>DISCUSSION</u>**

9        Plaintiffs object to Magistrate Judge Crawford's ruling that Moraga should be excluded

10  from the bellweather program.  For the reasons discussed below, Plaintiffs' objection is

11  overruled.

12       When considering objections to a magistrate judge's non-dispositive discovery order

13  under Fed. R. Civ. P. 72(a), the district judge must modify or set aside any part of the order

14  "that is clearly erroneous or is contrary to law."  The "clearly erroneous" standard applies to

15  the magistrate judge's factual determinations and discretionary decisions.  <u>Computer</u>

16  <u>Economics, Inc. v. Gartner Group, Inc.</u>, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999).   The

17  "contrary to law" standard applies to a magistrate judge's purely legal determinations.  <u>Id.</u>

18       The "clearly erroneous" standard applies here because Judge Crawford's decision

19  regarding the suitability of Moraga's case as a bellwether case was a discretionary decision

20  based on the circumstances of Moraga's case and the objectives of the bellwether process.

21  Judge Crawford's decision was not erroneous.

22       Under the Joint Bellwether Plan approved by Judge Brooks, it was clear that "[i]f a

23  Plaintiff took more than one type of Hydroxycut product they are not liable for participation

24  in the bellwether program." (Sections IV(A)(4) and IV(A)(9).)  Moraga admittedly consumed

25  both a Hydroxycut Hardcore Product and a Hydroxycut White Box Product, albeit at different

26  times.  Under the plain language of the Joint Bellwether Plan, Moraga did not qualify as a

27  bellwether plaintiff.

28       Plaintiffs argue that Moraga's case should still be deemed as a single product case

1   because his doctors opined "that the acute liver failure was due to the use of Hydroxycut in

2   the months leading up to the injury." (Mot. for Reconsideration at 2:18-19.)  Plaintiffs argue

3   that there is absolutely no evidence that use of a product that ended 31 months before the

4   acute liver failure could have played any role in the injury.

5        However, as pointed out by Judge Crawford, the medical report submitted by Plaintiffs

6   merely states that Moraga was treated for "acute liver failure secondary to Hydroxycut-

7   induced hepatotoxicity."  (Ex. C. to Joint Motion for Ruling on Bellwether Selections.)  The

8   report does not distinguish between Moraga's use of the Hydroxycut Hardcore Product in

9   2005 and Moraga's more recent use of the Hydroxycut White Box Product, and it is unclear

10  whether the doctor even knew about Moraga's prior use.  Accordingly, the report does not

11  establish that it was the use of the Hydroxycut White Box Product only that could have

12  caused Moraga's injuries.

13       With their Reply, Plaintiffs submitted another medical report dated February 14, 2008.

14  However, it does not appear that this medical report was before Judge Crawford.  Moreover,

15  the report does not "isolate the contemporaneous product as a cause," as claimed by

16  Plaintiffs.  The report states: "The history began with complaints of abdominal pain after

17  taking two months of Hydroxycut from September 2007 to November 2007."  This portion

18  of the report merely explains that Moraga reported experiencing symptoms after use of the

19  Hydroxycut White Box Product but does not discuss causation and says nothing about

20  whether prior use of the Hydroxycut Hardcore Product could have contributed to Moraga's

21  medical condition.

22       The Court agrees with Judge Crawford's conclusion that the fact that Moraga's liver

23  may have tested normally in 2007 is not enough by itself to show that his consumption of the

24  Hydroxycut Hardcore Product is completely irrelevant to a causation analysis.  At this point

25  in the proceedings, the Court has no way of knowing whether a scientifically supportable

26  argument can be made that the Hydroxycut Hardcore consumption could have had latent

27  effects that manifested after consumption of the Hydroxcut White Box Product.

28        Plaintiffs contend, "No doctor and no medical literature has suggested that hepatic

1   reactions to Hydroxycut can occur years after cessation of product use."   (Mot. for
2   Reconsideration at 2:25-26.)  This broad statement may or may not be accurate.  However,
3   by eliminating from the bellwether process any plaintiffs who have taken more than one type
4   of Hydroxycut Product, the Court can, at this point, avoid delving into medical opinions and
5   studies regarding the timing of reactions and possible interactions/cumulative effects of
6   ingredients.

7          Finally, Plaintiffs argue that Moraga is the only California citizen in the bellwether pool,
8   and is the only case that can be tried in the Southern District of California.  It is true that  the
9   bellwether cases transferred from other districts cannot be tried in this district *without the*
10  *consent of the plaintiffs*.  See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523
11  U.S. 26 (1998).  However, Plaintiffs agreed to the bellwether process, and at this time, the
12  Court has no reason to believe that consent will be withheld.  The Court will address the
13  issue of Lexecon waivers at the status conference.

14         The reasons for restricting the bellwether selections to individuals who took only one
15  type of Hydroxycut product still apply.  The bellwether cases should be representative cases
16  that will best produce information regarding value ascertainment for settlement purposes or
17  to answer causation or liability issues common to the universe of plaintiffs.  In re Chevron
18  U.S.A., Inc., 109 F.3d 1016, 1019 (5th Cir. 1997).  In cases where the plaintiff has taken
19  more than one type of Hydroxycut product, the "representativeness" of the case is
20  questionable and its value as a bellwether case is diminished.

21         Although the Court overrules Plaintiffs' objection to Magistrate Judge Crawford's
22  exclusion of the Moraga case from the bellwether program, the Court will order that the
23  Moraga case proceed on the same discovery schedule and trial schedule as the bellwether
24  cases.  Therefore, even though Moraga will not be a designated bellwether case, Plaintiffs
25  will still have the opportunity to perform discovery and try the case on the same track.
26  //
27  //
28  //

09md2087 BTM(KSC)

### III.  CONCLUSION

For the reasons discussed above, Plaintiffs' objection [Doc. No. 1454] is **OVERRULED**.  Plaintiff Mario Moraga is precluded from participating in the bellwether program.  However, Moraga's case, 09cv2982 BTM(KSC), shall be placed on the same discovery and trial schedule as the bellwether cases.  Judge Crawford shall issue the appropriate orders to coordinate the schedules.

**IT IS SO ORDERED.**

DATED:  August 21, 2012

BARRY TED MOSKOWITZ, Chief Judge
United States District Court