1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12

IN RE HYDROXYCUT
MARKETING AND SALES
PRACTICES LITIGATION

CASE NO. 09md2087 BTM (KSC)

13
14
15

_____

CASE NO.  09cv1088 BTM(KSC)

16

ANDREW DREMAK, on Behalf of
Himself, All Others Similarly
Situated and the General Public,

**ORDER DENYING FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT**

17
18

Plaintiff,

19

v.

20

IOVATE HEALTH SCIENCES
GROUP, INC., et al.,

21

Defendants.

22
23
24

Co-Lead Class Counsel (and Proposed Class Counsel for the Settlement

25

Class) have filed a Motion for Final Approval of Class Action Settlement.  The

26

Court held a hearing on the motion on October 22, 2013.  For the reasons set

27

forth below, the Court **DENIES** the motion for final approval of the settlement.

28

09md2087

# I. <u>SETTLEMENT TERMS</u>

The terms of the Settlement Agreement are set forth in the Amended Stipulation of Settlement ("Am. Stip."). (09cv1088 - Doc. 238.)

The "Settlement Class" is defined as including those persons who purchased in the United States any of the Hydroxycut Products (specific products set forth in § II.A.23 of the Am. Stip.) between May 9, 2006 and May 1, 2009, inclusive. (Am. Stip. § II.A.46.) Excluded from the Settlement Class are (1) persons who purchased Hydroxycut Products for the purpose of resale; (2) Iovate and its officers, directors, and employees; (3) any person who filed a valid and timely Request for Exclusion; and (4) the Judges to whom this action is assigned and any members of their immediate families.[1]

The settlement relief consists of a $10 million Cash Component and a $10 million Product Component. Settlement Class Members who opt to receive cash will receive $25 for each Hydroxycut Product they purchased. (Am. Stip. § IV.A.2.) No proof of purchase is required to receive $25. Requests for payment for more than one unit of Hydroxycut Product require proof of purchase. In lieu of cash, Settlement Class Members can elect to receive a Product Bundle for each purchase of a Hydroxycut Product. (Am. Stip. § IV.A.3.) Each Product Bundle shall have an aggregate retail price of not less than $50. Authorized claimants requesting one Product Bundle will be provided with the Product Bundle without proof of purchase. A request for more than one Product Bundle requires proof of purchase.

---

[1] In the original Stipulation of Settlement, the Settlement Class excluded persons with claims for personal injuries arising from the ingestion of one or more Hydroxycut Products. However, the definition of the Settlement Class was amended after the Court raised concerns that the *cy pres* distribution of residual settlement fund amounts would be used to compensate consumers who suffered personal injuries from taking Hydroxycut Products, even though these personal injury plaintiffs were specifically excluded from the class definition.

09md2087

Any amount remaining in the Cash Component after payment of Notice and Claim Administration Expenses, necessary taxes and tax expenses, and Eligible Cash Claims constitutes the "Residual Settlement Amount."  (Am. Stip. § IV.C.1.a.)  Any amount remaining in the Product Component after payment of Eligible Product Claims, Product Bundle Shipping Expenses, and any amounts needed to pay Eligible Cash Claims,[2] shall, at Iovate's option, either (1) be provided by Iovate to the general public pursuant to the *cy pres* doctrine in the form of Additional Product; or (2) be added to the Residual Settlement Amount. (Am. Stip. § IV.C.2.a.)

The Residual Settlement Amount shall be held in trust by an Escrow Agent. (Am. Stip. § IV.C.1.b.)  A Personal Injury Claimant – defined as persons who have lawsuits pending in federal or state courts, or who have executed tolling agreements as of September 1, 2012, and allege personal injury resulting from the ingestion of one or more Hydroxycut Products (Am. Stip. § II.A.33) – may submit a Residual Settlement Claim Form to the Escrow Agent if the claimant is a party to a settlement or final judgment.  Upon receipt of the Residual Settlement Amount Claim Form, the Escrow Agent shall be authorized to pay the amount of such judgments or settlements, on a first-come, first-served basis, without any pro rata or per capita adjustment, until the Residual Settlement Amount is exhausted.  (Am. Stip. § IV.C.1.b.)

If any funds remain after six years from the Effective Date (date of entry of final judgment or the date after an appeal has been concluded and is no longer subject to review), the remaining funds shall be paid to ChangeLab Solutions or some other similar organization pursuant to the *cy pres* doctrine.  (Am. Stip. § IV.C.1.d.)

---

[2] Section IV. B. provides that up to $ 4 million from the Product Component can be used to pay Eligible Cash Claims if the aggregate Eligible Cash Claims, Notice and Claim Administration Expenses, and necessary taxes and tax expenses exceed the $10 million Cash Component.

09md2087

Iovate agrees not to oppose an application for an award of attorney's fees not to exceed $5,000,000, and for an award of out-of-pocket expenses not to exceed $300,000. (Am. Stip. § X.A.) Class Counsel seeks fees in the amount of $5,000,000 and expenses in the amount of $ 193,656.64. According to Class Counsel, the combined fee and expense award amounts to 21% of the settlement value created by plaintiffs' counsel's efforts ($20 million Settlement Fund, plus $5 million in attorneys' fees, and up to $300,000 in expenses).

## II. __STANDARD__

A district court can approve a class action settlement if the court finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). When the settlement is reached before formal class certification, settlement requires a "higher standard of fairness" and "a more probing inquiry than may normally be required under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). The reason for the higher level of scrutiny is that there is "greater potential for a breach of fiduciary duty owed the class during settlement." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011). "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." Id. at 947.

## III. __DISCUSSION__

At the final approval hearing, the Court questioned Class Counsel and Iovate's attorney about the *cy pres* distribution provisions of the settlement. Based on the information obtained at the hearing, the Court finds that the *cy pres* remedy does not satisfy the standards for *cy pres* relief set forth by the Ninth

09md2087

1   Circuit.  Therefore, the Court cannot find that the settlement is fair, adequate, and

2   reasonable, and the motion for final approval of the settlement must be **DENIED**.

3        The *cy pres* doctrine allows a court to distribute unclaimed or non-

4   distributable portions of a class action settlement fund to indirectly benefit the

5   entire class.  Six Mexican Workers v. Ariz.Citrus Growers, 904 F.2d 1301, 1305

6   (9th Cir. 1990). When employing the *cy pres* doctrine, unclaimed funds should be

7   put to their next best use, e.g., for "the aggregate, indirect, prospective benefit of

8   the class."  Nachshin v. AOL, LLC, 663 F.3d 1034, 1038 (9th Cir. 2011) (quoting

9   Masters v. Wilhemina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007)).

10  The Ninth Circuit has held that *cy pres* distribution must be "guided by (1) the

11  objectives of the underlying statute(s); and (2) the interests of the silent class

12  members."  Six Mexican Workers, 904 F.2d at 1307.  A *cy pres* distribution is an

13  abuse of discretion if there is "no reasonable certainty" that any class member

14  would benefit from it.  Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012)

15  (quoting Six Mexican Workers, 904 F.2d at 1308)).  A court should not find that

16  a settlement is fair, adequate, and reasonable unless the *cy pres* remedy

17  "account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying

18  statutes, and the interests of the silent class members . . . ."  Lane v. Facebook,

19  696 F.3d 811, 819-20 (9th Cir. 2012) (quoting Nachshin, 663 F.3d at 1036).

20       The biggest problem with the proposed *cy pres* distribution in this

21  settlement is that it simply does not benefit the class.  At the hearing, counsel for

22  Iovate explained that under the master settlement agreement governing the

23  personal injury cases in this multi-district litigation, personal injury claimants are

24  to be paid out of a $14 million settlement fund.  Amounts paid to personal injury

25  claimants from the Residual Settlement Amount in this action will be credited

26  towards the $14 million personal injury fund.  A personal injury claimant who is

27  paid out of the Residual Settlement Amount cannot also recover against the

28  personal injury settlement fund  – i.e. the personal injury claimant's recovery is

1   limited to what he or she is entitled to under the applicable final judgment or

2   settlement.  Thus, *cy pres* distributions to personal injury claimants in this action

3   reduce the amount that Iovate must pay into the personal injury fund while

4   providing no additional benefit to the personal injury claimants and no benefit at

5   all to the class members who suffered no personal injury.

6       Class Counsel argues that the *cy pres* remedy provides a benefit to the

7   class members because the master settlement in the personal injury cases was

8   reached based on the assumptions underlying the settlement of this class action.

9   In other words, class members who suffered personal injury benefit from the *cy*

10  *pres* remedy, because without the *cy pres* provisions in this settlement, the

11  settlement of the personal injury cases might not have occurred.   Iovate's

12  attorney adds that without the *cy pres* remedy, the class action settlement may

13  fall apart and, therefore, the non-personal injury class members also receive a

14  benefit from the inclusion of the *cy pres* provisions.  The Court is not convinced

15  by these arguments.  The Court doubts that *causing* a benefit in the form of

16  facilitating settlement in this action or the separate personal injury actions is the

17  type of "indirect benefit" that *cy pres* remedies are meant to provide.  The focus

18  should be on whether the funds themselves are being used for the benefit of the

19  class.

20      Furthermore, whatever the circumstances surrounding the creation of the

21  master settlement in the personal injury cases, the settlement is now in place.

22  Iovate is obligated to fund the settlement, and participating claimants are entitled

23  to their awards, whether paid from the Residual Settlement Amount in this case

24  or not.  Accordingly, the Court disagrees that the *cy pres* distribution benefits the

25  personal injury claimants.

26      The *cy pres* remedy is also problematic because it allows for a grossly

27  disproportionate distribution of settlement funds to personal injury claimants.  In

28  doing so, the *cy pres* remedy fails to take into account the interests of the silent

09md2087

class members, most of whom did not suffer any personal injury, and the nature of this action, which concerns unfair competition, consumer protection, and product warranty claims, not personal injury liability.   The personal injury claimants make up only a tiny fraction of the overall class.   There are 550 personal injury plaintiffs, whereas approximately 48,000 settlement claims[3] have been made.  According to Iovate's counsel, the amount of cash claims that have been made totals approximately $1 million, while the  amount of product claims that have been made totals approximately $400,000.  Therefore, the remaining $18.6 million, minus Notice and Claim Administration Expenses and taxes and tax expenses, may be used for *cy pres* distribution to the personal injury claimants.

The Court is concerned that so little of the sizeable settlement fund directly benefits the class.   Under the terms of the settlement, most of the fund will be channeled into *cy pres* distribution, without any consideration of whether further distributions can be made directly to claimants on a pro rata basis.  The American Law Institute's Principles of the Law of Aggregate Litigation ("ALI Principles") provide that where a settlement involves individual distributions to class members and there are funds remaining after the distributions, "the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair." ALI Principles § 3.07(b) (2010).  Similarly, the Fifth Circuit has held:

> Where it is still logistically feasible and economically viable to make additional pro rata distributions to class members, the district court should do so, except where an additional distribution would provide

---

[3]  Iovate's counsel represented that there were about 40,000 cash claims, most of the claims being for a single unit of Hydroxycut Product. The Court approximates that there were 8,000 product claims based on the total of the product claims ($400,000) divided by the value of a single product bundle ($50).

a windfall to class members with liquidated-damages claims that were 100 percent satisfied by the initial distribution. A *cy pres* distribution puts settlement funds to their next-best use by providing an indirect benefit to the class. That option arises only if it is not possible to put those funds to their very best use: benefitting the class members directly.

Klier v. Elf Atochem North America, Inc., 658 F.3d 468, 475 (5th Cir. 2011).

The Third Circuit agrees that *cy pres* distributions are "most appropriate where further individual distributions are economically infeasible," but has declined to hold that *cy pres* distributions are only appropriate under those circumstances. In re Baby Products Antitrust Lit., 708 F.3d 163, 173 (3d Cir. 2013). Instead, the Third Circuit has held that in analyzing whether a class settlement is fair, reasonable, and adequate, the Court should consider, among other things, the degree of direct benefit provided to the class:

In making this determination, a district court may consider, among other things, the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards. *Barring sufficient justification, cy pres awards should generally represent a small percentage of total settlement funds*.

Id. at 174. (Emphasis added.)

Whether the Ninth Circuit agrees with the Fifth Circuit's or Third Circuit's approach, the *cy pres* distribution in this case falls short of the mark. The Court is not convinced that the claimants have been fully compensated for their damages because proof of purchase is needed to make more than one cash claim or product bundle claim. The vast majority of the claims have been for one unit of product even though it seems likely that many claimants purchased more than one Hydroxycut Product. Accordingly, the claimants would not necessarily receive a windfall if additional funds were distributed. Iovate has not claimed that it would be infeasible to make additional distributions. Therefore, the degree of direct benefit provided to the class by the settlement ($1.4 million out of $20 million) is insufficient. This is especially so in light of the fact that class counsel

09md2087

seeks $5 million in attorney's fees based in part on a percentage of the total $20 million settlement fund.

In sum, the Court finds that the *cy pres* distribution is not "guided by (1) the objectives of the underlying statute(s); and (2) the interests of the silent class members." Six Mexican Workers, 904 F.2d at 1307.  It appears that the *cy pres* relief is being used as a vehicle to settle the personal injury cases, not to provide an indirect prospective benefit to the entire class.  Because the *cy pres* distribution violates the Ninth Circuit's standards governing *cy pres* awards, the Court cannot find that the settlement is fair, reasonable, and adequate.  Dennis, 697 F.3d at 868; Lane, 696 F.3d at 819-20.

## IV.  **CONCLUSION**

For the reasons discussed above, the motion for final approval of class action settlement [09md2087- Doc. 1637; 09cv1088 - Doc. 201] is **DENIED**.

**IT IS SO ORDERED.**

DATED:  November 19, 2013

BARRY TED MOSKOWITZ, Chief Judge
United States District Court

9                                                                                              09md2087