UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HYDROXYCUT MARKETING AND SALES PRACTICES LITIGATION | CASE NO. 09md2087 BTM (KSC) |
| ANDREW DREMAK, on Behalf of Himself, All Others Similarly Situated and the General Public,<br><br>Plaintiff,<br><br>v.<br><br>IOVATE HEALTH SCIENCES GROUP, INC., et al.,<br><br>Defendants. | CASE NO.  09cv1088 BTM(KSC)<br><br>**ORDER DENYING IOVATE DEFENDANTS' MOTION TO DISMISS, ORDERING MORE DEFINITE STATEMENT AS TO CLAIMS AGAINST RETAILER DEFENDANTS, AND DENYING RETAILER DEFENDANTS' MOTION TO DISMISS** |

The Iovate Defendants (Iovate Health Sciences, Inc., Iovate Health Sciences U.S.A., Inc., and Kerr Investment Holding Corp.) have filed a motion to dismiss Count I, in part, and Counts VII and IX, in their entirety from Plaintiffs' Second Consolidated Amended Class Action Complaint ("SAC").  The Retailer Defendants (GNC Corporation, Wal-Mart Stores, Inc., Walgreens Company, CVS Caremark Corp., Vitamin Shoppe Industries, Inc., NBTY, Inc., BJ's Wholesale

Club, Inc., Kmart Corporation, and Rite Aid Corporation) have filed a separate motion to dismiss Counts I-XV and Count XVII of the SAC. For the reasons discussed above, the Court **DENIES** the Iovate Defendants' motion to dismiss and the Retailer Defendants' motion to dismiss and orders Plaintiffs to file a more definite statement as to the Retailer Defendants.

## I. PROCEDURAL BACKGROUND

On December 22, 2009, the First Consolidated Amended Class action Complaint ("FAC") was filed in this multi-district litigation. Twenty named plaintiffs asserted claims on behalf of themselves and a putative nationwide class of persons who purchased Hydroxycut Products (14 specific Hydroxycut-branded products).

In an order filed on May 31, 2011, the Court dismissed Plaintiffs' consumer protection, express warranty, and unjust enrichment claims against the Iovate Defendants and Retailer Defendants. The Court held that Plaintiffs had failed to satisfy Rule 9(b)'s heightened pleading standard because the FAC was vague as to what representations each plaintiff relied on and whether each plaintiff actually saw advertising claims before purchasing the Hydroxycut Product.

On August 8, 2011, Plaintiffs filed the SAC. In the SAC, twenty plaintiffs bring the following claims against "Defendants," which include the "Manufacturer Defendants" as well as the "Retailer Defendants": (I) violations of 41 states' consumer protection statutes; (II) violations of Arizona's Consumer Fraud Act; (III) violations of California's Consumer Legal Remedies Act; (IV) violations of California's Business and Professions Code § 17200, et seq.; (V) violations of Florida's Deceptive and Unfair Trade Practices Act; (VI) violations of Florida's Statutory False Advertising Law; (VII) violations of Georgia's Fair Business Practices Act; (VIII) violations of Illinois' Consumer Fraud Act; (IX) violations of Louisiana's Unfair Trade Practices and Consumer Protection Law; (X) violations

of New Jersey's Consumer Fraud Act; (XI) violations of New York's General Business Law, § 349; (XII) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law; (XIII) violations of Texas's Deceptive Trade Practices-Consumer Protection Act; (XIV) violations of West Virginia's Consumer Credit and Protection Act; (XV) Breach of Express Warranty under 49 state statutes; (XVI) Breach of Implied Warranty under 49 state statutes; and (XVII) Unjust Enrichment.

In March, 2012, the Iovate Defendants and Retailer Defendants filed their respective motions to dismiss. On July 13, 2012, the motions were denied without prejudice due to a tentative settlement that had been reached among the parties.

On November 19, 2013, the Court entered an order denying final approval of the Class Action Settlement. In light of the Court's ruling, the parties wished to proceed with the motions to dismiss the SAC. Therefore, the Court deemed the motions re-filed and reset the motions for hearing.

On January 2, 2014, the Court heard oral argument on the motions.

## II. DISCUSSION

### A. Iovate Defendants' Motion to Dismiss

The Iovate Defendants move to Dismiss Count I in part, and Counts VII and IX in their entirety on the ground that the consumer protection laws of Georgia (Ga. Code Ann. § 10-1-399(a)), Louisiana (LSA-RS 51:1409.A), Montana (Mont. Code Ann. § 30-14-133(a)), South Carolina (S.C. Code Ann. § 39-5-140(a)), and Tennessee (Tenn. Code Ann. § 47-18-109(g)), do not allow class actions.[1] As

---

[1] The Iovate Defendants' moving papers relied on the laws of Iowa, Mississippi, Alabama, and Virginia as well. However, the Iovate Defendants subsequently abandoned their argument regarding Plaintiffs Virginia claims. As for Iowa, Mississippi, and Alabama, Plaintiffs' counsel pointed out at oral argument that Count I actually does not include these states.

discussed below, the Court denies the Iovate Defendants' motion to dismiss because the Court concludes that the claims are governed by Federal Rule of Civil Procedure 23, which allows a class action to be maintained if certain preconditions are met.

Relying on Justice Stevens' concurring opinion in <u>Shady Grove Orthopedic Ass'n v. Allstate Ins. Co.</u>, 559 U.S. 393 (2010), the Iovate Defendants argue that Rule 23 would not apply to the state claims at issue, because application of the Rule would be outside the scope of the Rules Enabling Act, which provides that rules of procedure "shall not abridge, enlarge, or modify a substantive right." 28 U.S.C. § 2072(b). According to the Iovate Defendants, the state provisions prohibiting class actions are found *within* the state consumer protection acts and are therefore so intertwined with state rights or remedies that application of Rule 23 would violate the Rules Enabling Act.

The Iovate Defendants would have a strong argument if Justice Stevens' opinion were the controlling one. However, the Court does not believe this to be the case. Many of the courts that hold that Justice Stevens' concurring opinion is the controlling opinion of <u>Shady Grove</u> rely on <u>Marks v. United States</u>, 430 U.S. 188, 193 (1977), where the Supreme Court explained, "[T]he holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ."[2] But <u>Marks</u> has no application here. As explained by the Ninth Circuit in <u>Lair v. Bullock</u>, 697 F.3d 1200, 1205 (9th Cir. 2012), the <u>Marks</u> standard should only be applied "where an opinion can be

---

[2] <u>See, e.g.</u>, <u>Bearden v. Honeywell Int'l Inc.</u>, 2010 U.S. Dist. Lexis 83996, at * 28-30 (M.D. Tenn. Aug. 16, 2010) (applying Justice Stevens' approach and finding that the class-action limitation contained in the Tennessee Consumer Protection Act is part of Tennessee's framework of substantive rights and remedies); <u>Tait v. BSH Home Appliances Corp.</u>, 2011 U.S. Dist. Lexis 54456, at * 23-24 (C.D. Cal. May 12, 2011) (concluding that Justice Stevens' concurring opinion can properly be viewed as controlling and holding that plaintiffs may not bring class actions under the Tennessee Consumer Protection Act); <u>Stalvey v. American Bank Holdings, Inc.</u>, 2013 WL 6019320, at *4 (D.S.C. Nov. 13, 2013) (treating Justice Stevens' opinion as controlling and holding that prohibitions against class actions are substantive portions of the South Carolina law).

meaningfully regarded as narrower than another *and* can represent a common denominator of the Court's reasoning." This standard "requires that the narrowest opinion is actually the logical subset of other, broader opinions, such that it embodies a position implicitly approved by at least five Justices who support the judgment." Id. (internal quotation marks omitted).

In Shady Grove, the different opinions of the fractured Court took contrasting approaches to determining whether a New York statute prohibiting class actions in suits seeking penalties or statutory minimum damages precluded a federal district court sitting in diversity from entertaining a class action under Rule 23. Justice Scalia, writing for himself and Justices Roberts, Thomas and Sotomayor, explained that in determining whether a rule is within the Rules Enabling Act, the determinative inquiry is what the rule regulates: "If it governs only 'the manner and means' by which the litigation and rights are enforced, it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not." Id. at 407. According to this opinion, the effect the rule might have on state substantive or procedural law is irrelevant - the focus must be on the substantive or procedural nature of the federal rule.

In contrast, Justice Stevens took the position that courts must look to the nature of the state law being displaced to determine whether the federal rule violates the Rules Enabling Act. Justice Stevens reasoned that a federal rule "cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary sense of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." Id. at 423.

The dissent (Justices Ginsburg, Kennedy, Breyer, and Alito) found that there was no unavoidable conflict between Rule 23 and the New York statute and proceeded with an Erie analysis. The dissent emphasized that federal courts should be sensitive to state interests and should not find a conflict if the federal

rule can be rationally read to avoid any collision. The dissent took the view that Rule 23 described a method of enforcing a claim for relief, whereas the New York statute defined the dimensions of the claim itself.

The Court is not convinced that Justice Stevens' opinion is the "logical subset" of the plurality's or that Stevens' opinion represents a common denominator. Where there is no such narrow opinion, the only binding aspect of the splintered decision is its specific result. Lair, 697 F.3d at 1205. Thus, Shady Grove does not provide the Court with much guidance.

Because the Ninth Circuit has not yet voiced an opinion on how to apply Shady Grove, the Court looks to pre-Shady Grove Ninth Circuit cases analyzing whether the application of federal rules in certain situations would violate the Rules Enabling Act. As explained below, prior to Shady Grove, when determining whether a federal rule ran afoul of the Rules Enabling Act, the Ninth Circuit examined whether the rule that conflicted with the federal rule at issue was substantive or procedural.

In In re Greene, 223 F.3d 1064 (9th Cir. 2000), the Ninth Circuit determined that Bankruptcy Rule 9006(a), which governs the computation of periods of time and provides for an enlargement of time when the last day of a time period falls on a weekend, did not extend the 90-day period under 11 U.S.C. § 547(b), during which time certain transfers are voidable by the trustee. In reaching its decision, the Ninth Circuit followed Hanna v. Plumer, 380 U.S. 460 (1965), and focused its inquiry on whether § 547(b) regulated procedure - the "judicial process for enforcing rights and duties recognized by the substantive law and for justly administering remedy and redress for disregard or infraction of them" - or substantive rights. Greene, 223 F.3d at 1071-72 (quoting Hanna, 380 U.S. at 464). The Ninth Circuit concluded that the power of the trustee to avoid any preferential transfer within 90 days before the filing date of the petition is a substantive right independent of the process of enforcing litigants' rights. Id. at

1071. "[T]he statutory mandate that a transfer, in order to be avoidable, be made 'on or within 90 days before the filing date of the petition,' is a 'rule[ ] of decision' by which a court will adjudicate a bankruptcy trustee's substantive right to avoid a transfer." Id. Accordingly, the Ninth Circuit held that the application of Rule 9006(a) to the 90-day preference period would violate the Rules Enabling Act.

In Freund v. Nycomed Amersham, 347 F.3d 752 (9th Cir. 2003), the question before the court was whether Fed. R. Civ. P. 50, which governs when a party can raise arguments in support of a motion for judgment as a matter of law, trumps California law that the appealability of punitive damage awards is not waivable. The Ninth Circuit concluded that the California no-waiver rule did not create any substantive right:

> It does not add, subtract, or define any of the elements necessary to justify punitive damages; it merely establishes when and how those pre-existing substantive rules can be reviewed. Thus, in overriding the California no-waiver rule, Federal Rule 50 does not run afoul of the Rules Enabling Act, because its application 'affects only the process of enforcing litigants' rights and not the rights themselves.' Burlington N.R. Co. v. Woods, 480 U.S. 1, 8, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) . . . .

Id. at 762. See also McCalla v. Royal MacCabees Life Ins. Co., 369 F.3d 1128 (9th Cir. 2004) (holding that Fed. R. Civ. P. 59(e), not Nevada law, governs when a litigant may make a postjudgment motion for prejudgment interest, because any Nevada rule that a party may make a postjudgment motion for prejudgment interest at any time, does not define the substantive entitlement to prejudgment interest, just "when and how" the entitlement to prejudgment interest can be reviewed).

Whether the state statutory provisions that prohibit class actions for unfair or deceptive practices are "procedural" or "substantive," is a difficult question with no clear answer. However, the Court tends to view these limitations on class actions as procedural in nature. In Shady Grove, Justice Scalia explained:

> A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged.

Shady Grove, 559 U.S. at 408. Conversely, a rule barring class actions does not prevent individuals who would otherwise be members of the class from bringing their own separate suits or joining in a preexisting lawsuit. The substantive rights of these individuals are not affected. The prohibitions against class actions only affect "how the claims are processed." Id. The fact that the class action prohibitions are within the individual state consumer protection acts, as opposed to free-standing rules, does not alter the Court's conclusion.

Accordingly, application of Rule 23 to Plaintiffs' claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions. Therefore, the Court **DENIES** the Iovate Defendants' motion to dismiss. However, the denial is without prejudice, and the Iovate Defendants may file a new motion in the event that the Ninth Circuit addresses Shady Grove.

**B. Retailer Defendants' Motion to Dismiss**

  1. Rule 9(b) and Failure to Allege Facts Supporting Liability of Retailer Defendants for Representations Regarding Purchased Hydroxycut Products

The Retailer Defendants again move to dismiss Plaintiffs' consumer protection claims (Counts I-XIV) on the ground that Plaintiffs have failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). As discussed below, the Court finds that Plaintiffs have not satisfied the pleading requirements of Rule 9(b). Furthermore, whether Rule 9(b) applies or not, most of the Plaintiffs fail to state a claim under the various state consumer protection laws because Plaintiffs do not allege facts that establish that the Retailer Defendants participated in or

controlled representations that the Plaintiffs heard or saw before purchasing the Hydroxycut Products in question.

Due to the manner in which the SAC is pled, the Court finds that Rule 9(b) applies to all of Plaintiffs' consumer protection claims.  In Kearns, the Ninth Circuit held that Rule 9(b) governed Kearns's claims under the CLRA (Cal. Bus. & Prof. Code §§ 1750-1784) and UCL (Cal. Bus. & Prof. Code §§ 17200-17210) that Ford and its dealerships made misrepresentations regarding the safety and reliability of its Certified Pre-Owned ("CPO") vehicles to increase sales of the vehicles.  Although the Ninth Circuit recognized that fraud is not a necessary element of a claim under the CLRA and UCL, the Ninth Circuit explained: "A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)."  Id. at 1125.  The Ninth Circuit explained that Kearns was alleging that Ford engaged in a fraudulent course of conduct and concluded that Kearns had failed to allege with specificity the circumstances surrounding the alleged misrepresentations resulting in his purchase of a CPO vehicle.

Here, Plaintiffs are alleging a unified course of fraudulent conduct. Plaintiffs paint the Retailer Defendants as "co-conspirators" with the Manufacturer Defendants.  (SCAC ¶ 86.)  According to Plaintiffs, the Retailer Defendants participated in the advertising and marketing process with Iovate, adopted Iovate's product representations as their own, and also made their own false and deceptive statements about the products' safety and efficacy. (Id.)  Throughout the complaint, Plaintiffs generally allege that the Retailer Defendants knew or should have known about the falsity of their representations/advertisements and intentionally engaged in deceiving consumers.  (See, e.g., SAC ¶¶ 186,194, 207,243, 275).

Applying Rule 9(b), the SAC falls short with respect to the Retailer Defendants. For all but three of the plaintiffs,[3] the SAC alleges that prior to purchasing the products, the plaintiffs were exposed to Defendants' television or print advertisements (without specifying which defendant) or were exposed to advertising in general, in addition to reading the product label in the store. (SAC ¶¶ 9–28.) It is unclear whether these plaintiffs saw/heard any representations made or adopted by the Retailer Defendants, as opposed to the Iovate Defendants, and if so, which Retailer Defendant. As previously instructed by the Court, Plaintiffs cannot lump all of the Retailer Defendants together.

Setting aside the heightened pleading requirements of Rule 9(b), Plaintiffs' failure to specify which advertisements Plaintiffs were exposed to prior to purchase is fatal to their consumer protection claims because Plaintiffs must allege that each Retailer Defendant made, adopted, or controlled representations that Plaintiffs heard or saw prior to purchasing the products. Under California law, a defendant's liability for unfair business practices must be based on his personal "participation in the unlawful practices" and "unbridled control" over the

---

[3] Plaintiff Oritz claims that he "was exposed to and saw magazine and in-store advertisement at GNC and Vitamin World, all of which claimed the Product would increase energy and help with weight-loss." (SAC ¶ 18.) Plaintiff Torres claims that at GNC, he was exposed to in-store advertising reaffirming advertising he had seen before that the product was a safe and effective fat burner and weight-loss supplement. (SAC ¶ 25.) Plaintiff Walquer alleges that he was exposed to in-store advertising at Wal-Mart and Sam's Club, which claimed that the product was "one of the #1 products for weight loss" and was "approved by the FDA." (SAC ¶ 27.) Although these plaintiffs could have been more specific about the advertisements they saw, at least they connect the advertisement they saw/heard with a particular Retailer Defendant(s). The Court deems their allegations sufficient to state a consumer protection claim against the identified Retailer Defendants.
  In a footnote, Defendants argue that the alleged representations amount to no more than puffery. This argument is not persuasive because all of the advertisements allegedly indicated that the product was effective for burning fat or losing weight. Although the statement that Hydroxycut Regular Drink Packets are "one of the #1 products for weight loss," is puffery with respect to the "#1" portion, the underlying claim of the statement is that the product actually helps weight loss. Representations that Hydroxycut helps weight loss are statements regarding a specific characteristic of a product and would be actionable. See Cook, Perkiss and Liehe, Inc v. Northern California Collection Serv. Inc., 911 F.2d 242, 246 (9th Cir. 1990). However, as discussed below, the claims of these three plaintiffs (and all the other plaintiffs) are subject to dismissal due to failure to adequately allege circumstances supporting an inference of knowledge.

practices. Emery v. Visa Int'l Serv. Ass'n, 95 Cal. App.4th 952, 960 (2002) (quoting People v. Toomey, 157 Cal. App. 3d 1, 15 (1984)). "The concept of vicarious liability has no application to actions brought under the unfair business practices act." Toomey, 157 Cal. App. 3d at 14. Similarly, under the CLRA, absent allegations of participation or control, defendants cannot be held secondarily liable for the acts of third parties. In re Jamster Marketing Lit., 2009 WL 1456632, at * 9 (S.D. Cal. May 22, 2009).

Based on the Court's research, other states similarly require some sort of direct participation or control by a defendant to be held liable for deceptive business practices. For example, in Zekman v. Direct American Marketers, Inc., 695 N.E.2d 853 (Ill. 1998), the Illinois Supreme Court explained that to be held liable under the Illinois Consumer Fraud and Deceptive Business Practice Act (815 ILCS 505/2, 2P), the defendant must have directly participated in the deceptive acts. It is not enough that the defendant knowingly received the benefits of a fraud. Id. at 859 ("Knowingly receiving the benefits of another's fraud, however, more closely resembles a form of secondary liability."). Similarly, in Qantel Bus. Systems, Inc. v. Custom Controls Co., 761 S.W.2d 302 (Tex.1988), the Supreme Court of Texas held that a defendant cannot be held vicariously liable under the Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Comm. Code §§ 17.41-63, just because the defendant is "inextricably intertwined" with another who engaged in the wrongful conduct. The court explained:

> The DTPA does not attach derivative liability to its defendants based on innocent involvement in a business transaction. . . . The traditional common law theories of vicarious liability, such as agency or respondeat superior, provide an adequate basis for creating vicarious liability under the DTPA. The DTPA does not recognize or envision the expansion of common law theories of vicarious liability to include 'inextricably intertwined,' or the mere existence of a 'relationship' between parties.

Id. at 305.

Plaintiffs argue that the Retailer Defendants adopted Iovate's representations as their own and made their own false and deceptive statements. Plaintiffs allege that the Retailer Defendants entered into agreements with Iovate whereby the Retailer Defendants would promote Hydroxycut through their own advertisements and/or would agree to give marketing support such as product displays, in-store flyers, and window signage. (SAC ¶¶ 35-47.)

To the extent the Retailer Defendants issued their own advertisements, they could be held liable for misrepresentations therein. Also, to the extent Retailer Defendants displayed Hydroxycut signage or other promotional materials, other than the product and product packaging itself, the Retailer Defendants arguably controlled the advertising and adopted the statements made therein. However, as already discussed, for the majority of the plaintiffs, the SAC does not specify what advertisement they saw or where they saw it. Almost all of the plaintiffs state that they read the label on the product packaging before purchase. However, the Court is unaware of any authority for the proposition that under state consumer protection laws, a retailer adopts statements made on product packaging. Holding retailers liable for all statements made on products that they sell would impose the type of secondary liability that has been rejected by courts.

Plaintiffs rely on Dorfman v. Nutramax Lab., Inc., 2013 WL 5353040 (S.D. Cal. Sept. 2013), a case in which the plaintiff brought class action claims alleging that defendant retailers Nutramax, Wal-Mart, and Rite-Aid marketed and sold the "Cosamin" line of "Joint Health Supplements" through false and misleading advertising. The complaint alleged that the defendant retailers repeated and reinforced false and misleading joint health statements on their respective websites. However, the plaintiff himself only claimed to have read and relied on the product labels. The court ruled that contentions regarding differences in product representations were best addressed at the class certification stage. Id. at *7-8. With respect to whether plaintiff stated a UCL and CLRA claim against

the retailer defendants, the court found that allegations that Wal-Mart and Rite-Aid participated in the dissemination and repetition of representations concerning the efficacy of the Cosamin products, including making statements on their websites, sufficiently demonstrated that they "participated in the unlawful practices" with "unbridled control over the practices," such that they may be subjected to liability under the UCL and CLRA. Id. at *14. In this section of the order, the court did not focus on the plaintiff's lack of exposure to the representations that were disseminated and repeated by the retailer defendants.

To the extent that Dorfman can be read as holding that a retailer defendant who disseminates or repeats deceptive statements can be held liable under the UCL and CLRA for statements on product packaging that the retailer did not control, the Court disagrees with Dorfman. If a retailer goes above and beyond selling a product and displays additional promotional materials, the retailer arguably can be held liable for *those specific* advertisements, but should not be deemed to have adopted all representations made by the manufacturer about the product.

Plaintiffs advance the theory that the Retailer Defendants are liable for whatever representations were made by Iovate because they were aiders and abettors of the deceptive advertising scheme. However, liability for aiding and abetting a tort normally requires that the individual have *actual knowledge* of the specific primary wrong that he is substantially assisting. See In re First Alliance Mortgage Co., 471 F.3d 977, 993 (9th Cir. 2006). See also Restatement (Second) of Torts § 876 ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct,

separately considered, constitutes a breach of duty to the third person."). The Court rejects Plaintiffs' argument that the Retailer Defendants need not have known about the tortious nature of Iovate's representations to be held liable as aider and abettors.

No facts are alleged supporting an inference that the Retailer Defendants knew that representations made by Iovate regarding the safety and efficacy of the products were false or deceptive. Therefore, there are insufficient allegations to support aider and abettor liability on the part of the Retailer Defendants.

Because Plaintiffs (other than Ortiz, Torres, and Walquer) (1) do not allege that prior to purchasing a Hydroxycut product, they saw/heard a specific representation made, adopted, or controlled by a Retailer Defendant; and (2) do not allege sufficient facts establishing aider and abettor liability for representations made by Iovate, Plaintiffs do not state a claim under the various state consumer protection laws against the Retailer Defendants.

2. Knowledge

Defendants move to dismiss Plaintiffs' consumer protection claims under California law (Counts III and IV), Florida law (Counts V and VI), Louisiana law (Count IX), New Jersey law (Count X), and New York law (Count XI) on the ground that these laws require that the plaintiff plead and prove knowledge of the alleged defect.[4]

With the exception of Louisiana, it appears that knowledge is not a requirement to maintain an action based on an affirmative representation under the consumer protection laws at issue. In Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 (9th Cir. 2012), the Ninth Circuit stated, "Consequently,

---

[4] In a footnote, Defendants contend that thirteen other states' consumer protection statutes require knowledge and argue that these state claims should be dismissed from Count I for the same reasons. The Court does not consider this argument because it was not properly raised in the motion or sufficiently briefed.

14

California federal courts have held that, under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." However, Wilson concerned a fraudulent omission – i.e., failure to disclose a defect – and its language about awareness of defect arguably only applies to cases involving omission as opposed to active misrepresentation.

A reason for not requiring knowledge in connection with active misrepresentations under California law is that the CLRA was enacted after the Legislature noted the difficulty consumers faced proving a fraud claim. See Nelson v. Pearson Ford, Co., 186 Cal. App. 4th 983, 1021 (2010). The Legislature intended that the CLRA "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Id.

Knowledge of falsity clearly is not required to state a claim based on an affirmative misrepresentation under the New Jersey Consumer Fraud Act. As explained by the New Jersey Supreme Court, "One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 365 (N.J. 1996).

Under New York and Florida law, knowledge is only necessary to obtain specific types of relief. The weight of New York law is that proof of scienter is only necessary for treble damages. Intent to defraud is not an element of a statutory claim under N.Y. Gen. Bus. Law § 349. Small v. Lorillard Tobacco Co., Inc., 720 N.E.2d 892, 897 (N.Y. 1999). "Although it is not necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead, proof of scienter permits the court to treble the damages up to $1,000." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, NA, 647 N.E.2d 741,

745 (N.Y. 1995). See N.Y. Gen. Bus. Law § 349(h) ("The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.").

Under the Florida Deceptive and Unfair Trade Practices Act, "damages, fees, or costs are not recoverable . . . against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part." Fla. Stat. Ann. § 501.211(2). However, under § 501.211(a), "anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Thus, a plaintiff can bring an action for injunctive relief against a retailer even if actual knowledge cannot be established.

In contrast, it appears that knowledge is required under Louisiana law. To recover under the Louisiana Unfair Trade Practices Act, a plaintiff "must prove some element of fraud, misrepresentation, deception or other unethical conduct on defendant's part." Marshall v. Citicorp Mortgage, Inc., 601 So.2d 669, 670 (La. Ct. App. 1992). "Mere negligence is not sufficient to constitute an unfair trade practice." Id. at 671. In Target Construction, Inc. v. Baker Pile Driving & Site Work, LLC, 2012 WL 5878855 (E.D. La. Nov. 20, 2012), the court held that the plaintiff's LUTPA claims failed because plaintiff had not adequately pled intent to deceive as distinguished from mere mistake or negligence. "LUTPA is concerned with the intentional deception underlying a defendant's acts, and Baker has failed to allege such intentional deception on behalf of Target." Id. at *4.

But whatever the knowledge requirements of individual states might be, because Plaintiffs have chosen to plead a unified course of fraudulent conduct involving the Iovate Defendants as well as the Retailer Defendants, Plaintiffs must

allege facts supporting an inference of knowledge as to all of the state consumer claims. In <u>Kearns</u>, the plaintiff argued that the district court should have separately analyzed his claims under the unfairness prong of the UCL (which does not require a showing of fraud). In rejecting this argument, the Ninth Circuit explained:

> Kearns's TAC alleges a unified course of fraudulent conduct, namely that Ford Motor Company and its "co-conspirator" dealerships knowingly misrepresent to the public that CPO vehicles are safer and more reliable, with an intent to induce reliance and defraud consumers. Because Kearns's TAC alleges a unified fraudulent course of conduct, his claims against Ford are grounded in fraud. His entire complaint must therefore be pleaded with particularity. Thus, the TAC was properly dismissed and no error was committed by not separately analyzing his claims under the unfairness prong of the UCL.

<u>Kearns</u>, 567 F.3d at 1127.

Under the reasoning of <u>Kearns</u>, all of Plaintiffs' consumer protection claims must satisfy the particularity requirements of Rule 9(b), regardless of whether certain state statutes may or may not require knowledge to be established. Plaintiffs argue that knowledge and intent may be averred generally. Although that is true, the circumstances of fraud must be stated with particularity. A plaintiff must allege sufficient facts to support an inference or render plausible that the defendant acted with the requisite intent. See, e.g., <u>United States v. Corinthian Colleges</u>, 655 F.3d 984, 997 (9th Cir. 2011) (explaining that although the complaint alleged that the defendant acted with scienter, it did not "clearly allege sufficient facts to support an inference or render plausible that Corinthian acted while knowing that its Compensation Program fell outside of the Safe Harbor Provision on which it was entitled to rely."); <u>City of Clinton v. Pilgrim's Pride Corp.</u>, 632 F.3d 148, 154 (5th Cir. 2010) ("While Rule 9(b) provides that intent and knowledge 'may be alleged generally,' this is not license to base claims of fraud upon conclusory allegations."); <u>In re DDAVP Direct Purchaser Antitrust Lit.</u>, 585 F.3d 677, 695 (2d Cir. 2009) ("In a case involving multiple defendants,

plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible.")

Plaintiffs have not alleged facts that would give rise to an inference of knowledge on the part of the Retailer Defendants that the advertisements regarding the Hydroxycut Products' safety and effectiveness were not true. The allegations that the Retailer Defendants "knew or should have known" are conclusory. Therefore, Plaintiffs consumer protection claims fail to state a claim on the additional ground that Plaintiffs have not alleged sufficient facts supporting an inference of knowledge.

### 3. Express Warranty and Unjust Enrichment

Plaintiffs' failure to identify representations by the Retailer Defendants that led to Plaintiffs' purchase of Hydroxycut Products is fatal to their express warranty and unjust enrichment claims.

Under U.C.C. § 2-313:

(1) Express warranties by the seller are created as follows:

 (a) Any affirmation of fact or promise made by the seller *to the buyer* which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

 (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

 (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

(Emphasis added.)

Although reliance may not need to be proven to establish the formation of an express warranty, at minimum, the buyer must have heard, seen, or received the representations in order for them to form the basis of the bargain. Because most of the Plaintiffs have not specified who made the representations that they were exposed to prior to purchasing the products, their express warranty claims fall short.

In the Court's prior order, the Court dismissed the unjust enrichment claim because it was premised on the consumer protection claims, which had not been pled with particularity. For the same reasons, the Court concludes that Plaintiffs' instant unjust enrichment claim fails to state a claim.

### 4. Inability to Maintain Class Actions Under Certain State Statutes

Retailer Defendants move to dismiss Count I, in part, as well as Count VII and Count IX on the same ground raised by the Iovate Defendants – i.e., that the state consumer protection statutes prohibit class actions. As discussed in Section II.A., supra, the Court concludes that Rule 23 governs Plaintiffs' claims, and that Plaintiffs' claims are not subject to dismissal based on the state prohibitions against class actions.

### 5. More Definite Statement

As discussed above, Plaintiffs' SAC falls short in several respects. However, in the interests of moving this case along, instead of dismissing Plaintiff's claims against the Retailer Defendants, the Court orders Plaintiffs to file a more definite statement. In the definite statement, Plaintiffs should be clear as to what theory of liability they are asserting against the Retailer Defendants and should include sufficient factual allegations in support of such theory. If Plaintiffs

allege a unified course of fraudulent conduct, Plaintiffs must keep in mind the heightened pleading requirements of Rule 9(b).

The more definite statement should be in the form of a supplemental pleading and must be filed within 30 days of the entry of this Order.

Within 20 days of the filing of the more definite statement, Retailer Defendants shall either file an answer or file a notice of intention to file a motion to dismiss that briefly specifies the grounds for dismissal.  Such grounds must pertain to the deficiencies that are identified in this Order and are the reason for the more definite statement- no new arguments will be entertained.

If Retailer Defendants file a notice of intention to file a motion to dismiss, within 10 days of the filing of the notice, counsel for Plaintiffs and the Retailer Defendants must meet and confer about the issues raised in the notice.  If the issues are not completely resolved, the parties shall, without delay, file a joint statement that identifies the outstanding disputes.  Upon receiving the joint statement, the Court will schedule a status conference.

### III.  CONCLUSION

For the reasons discussed above, the Iovate Defendants' motion is **DENIED** without prejudice.   The Retailer Defendants' motion is also **DENIED** because the Court orders Plaintiffs to file a more definite statement as detailed above.   The Iovate Defendants shall file an Answer to the SAC within 20 days of the entry of this Order.

**IT IS SO ORDERED.**

DATED:  January 27, 2014

BARRY TED MOSKOWITZ, Chief Judge
United States District Court