1  C. Benjamin Nutley (SBN 177431)
2  *nutley@zenlaw.com*
   Kendrick & Nutley
3  1055 E Colorado Blvd., 5th Floor
   Pasadena, CA 91106
4  Phone: (626) 204-4060
5  Fax: (626) 204-4061

6  **Counsel for Objector**
7  *Additional Counsel Listed Below*

8

9                    **UNITED STATES DISTRICT COURT**
10                   **SOUTHERN DISTRICT OF CALIFORNIA**

11 | MICHELLE RODRIGUEZ,                               |                                           |
12 |     Objector.                                     |                                           |
13 | -------------------------------------------       |                                           |
14 | IN RE HYDROXYCUT MARKETING AND SALES PRACTICES LITIGATION | Case No.: 09-md-02087-BTM-KSC   |
15 | -------------------------------------------       |                                           |
16 | ANDREW DREMAK, on Behalf of Himself, All Others Similarly Situated and the General Public, | Case No.: 09-cv-1088-BTM-KSC |
19 |     Plaintiff,                                    | **PRELIMINARY OBSERVATIONS AND OBJECTIONS CONCERNING AMENDED PROPOSED SETTLEMENT** |
20 |           vs.                                     |                                           |
22 | IOVATE HEALTH SCIENCES GROUP, INC., *et al.*,     | Judge:   Hon. Barry T. Moskowitz          |
24 |     Defendants.                                   |                                           |

25
26
27
28

---

# TABLE OF CONTENTS

NOTICE OF INTENT TO APPEAR AT PRELIMINARY APPROVAL HEARING .....1

PRELIMINARY OBSERVATIONS & OBJECTIONS .................................................2

    I.     OBJECTIONS ..................................................................................................2

         A.     The Proposed Notice Should be Revised to Reflect the True Procedural Posture of the Action & Proposed Settlement...................2

         B.     Any Purported Requirement to Objection Prior to Preliminary Approval is Objectionable, and Ms. Rodriguez Expressly Reserves the Right to Make a Full Objection Under Rule 23 if Necessary ..............................................................................................2

    II.    OBSERVATIONS............................................................................................3

         A.     The Amount Offered in Settlement May be Inadequate......................3

         B.     There May be Issues Relating to the In-Kind Product Component Relief .................................................................................4

         C.     Class Counsel's Fees May be Excessive ............................................5

         D.     The Service Awards Still Appear to be Excessive .............................6

         E.     The Amended Settlement Extends the Claims Period Past Final Approval, Obscuring the Class's Actual Relief..................................7

CONCLUSION ..........................................................................................................7

i

*DREMAK V. IOVATE HEALTH SCIENCES GROUP, INC., ET AL.*, NO. 09-CV-1088-BTM-KSC
PRELIMINARY OBSERVATIONS & OBJECTIONS CONCERNING AMENDED SETTLEMENT

**NOTICE OF INTENT TO APPEAR AT PRELIMINARY APPROVAL HEARING**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE, that pursuant to the Court's April 22, 2014 Order Setting Preliminary Approval ("April 22 Order"), Objector Michelle Rodriguez intends to appear through her counsel at the Preliminary Approval Hearing presently scheduled for May 20, 2014 at 3:30 pm.

Ms. Rodriguez's name, address, and telephone number are as follows:

Michelle Rodriguez
814 Little Angel Cove
San Antonio, TX 78245
Phone: (210) 367-2499

Ms. Rodriguez's is represented by the following counsel:

| C. Benjamin Nutley (SBN 177431) | Jack Fitzgerald (SBN 4294401) | Ronald A. Marron (SBN 175650) |
|---|---|---|
| nutley@zenlaw.com | jack@jackfitzgeraldlaw.com | ron@consumersadvocates.com |
| Kendrick & Nutley | The Law Office of Jack Fitzgerald, PC | Law Offices of Ronald A. Marron, APLC |
| 1055 E Colorado Blvd., 5th Fl. | The Palm Canyon Building | 651 Arroyo Drive |
| Pasadena, CA 91106 | 2870 4th Ave., Ste. 205 | San Diego, California 92103 |
| Phone: (626) 204-4060 | San Diego, CA 92103 | Phone: (619) 696-9006 |
| Fax: (626) 204-4061 | Phone: (619) 692-3840 | Fax: (619) 564-6665 |
| | Fax: (619) 362-9555 | |

As the Court previously found, Ms. Rodriguez is a class member who purchased the subject Hydroxycut Products.

1

*DREMAK v. IOVATE HEALTH SCIENCES GROUP, INC., ET AL.*, NO. 09-CV-1088-BTM-KSC
PRELIMINARY OBSERVATIONS & OBJECTIONS CONCERNING AMENDED SETTLEMENT

## PRELIMINARY OBSERVATIONS & OBJECTIONS

## I.     OBJECTIONS

### A.    The Proposed Notice Should be Revised to Reflect the True Procedural Posture of the Action & Proposed Settlement

The Parties proposed notice states that "[t]he deadline for Class Members who have not filed a lawsuit for personal injuries has passed. Therefore, this objection opportunity is limited to those Class Members who also have claims for personal injuries." Dkt. No. 311-2, Ex. 3 at 6.[1] Since, in light of the Court's disapproval of the previous settlement (Dkt. No. 291) this is a new settlement, with a new round of notice, claims, opt-outs, and objections, this statement is incorrect and objectionable. *Compare* April 22 Order at 2-3 ("Settlement Class Members[2] may . . . raise any objections to the Settlement on or before the Objection Deadline that will be set pursuant to an order granting preliminary approval . . . in advance of the Final Approval Hearing.").

### B.    Any Purported Requirement to Objection Prior to Preliminary Approval is Objectionable, and Ms. Rodriguez Expressly Reserves the Right to Make a Full Objection Under Rule 23 if Necessary

The Court's April 22 Order provides that "any Settlement Class Member . . . who desires to object to the proposed Settlement, . . . may file with the Clerk . . . a notice of the objection(s), together with all papers that the Settlement Class Member desires to submit to the Court." Dkt. No. 313 at 2. But the Order also provides that "Settlement Class Members may also raise any objections to the Settlement on or before the Objection Deadline that will be set pursuant to an order granting preliminary approval, if any, in advance of the Final Approval Hearing." *Id.* at 2-3. Although the reason for the unusual provision of an objection procedure before preliminary approval is unclear, this brief

---

[1] All docket references in this brief are to *Dremak*.

[2] Defined as "those persons who purchased in the United States any of the Hydroxycut Products between May 9, 2006 and May 1, 2009, inclusive," with certain exclusions. Dkt. No. 311-2 at 13 ¶ 47.

2

*DREMAK V. IOVATE HEALTH SCIENCES GROUP, INC., ET AL.*, NO. 09-CV-1088-BTM-KSC
PRELIMINARY OBSERVATIONS & OBJECTIONS CONCERNING AMENDED SETTLEMENT

contains only preliminary observations and objection relating to the Amended Settlement. It does not constitute nor waive any more developed or additional substantive objections Ms. Rodriguez may have, nor her right to participate in the usual objection procedure set forth in Rule 23 and applicable case law, typically occurring *after* class notice. Indeed, while it is commendable that the parties afforded class members the opportunity to share thoughts prior to preliminary approval, so that they might address any such issues before expending resources making notice—if that was their goal—Ms. Rodriguez does not take the dual-objection procedure set forth in the April 22 Order as placing any obligation on any class member to object outside the normal objection procedure; to the extent the parties construe the Order that way, Ms. Rodriguez would object on grounds that this does not comport with Rule 23 and applicable case law.

## II.     OBSERVATIONS

### A.     The Amount Offered in Settlement May be Inadequate

The parties' proposed Amended Settlement that is substantially different from the previous, disapproved proposed settlement. The most obvious difference is the reduction in the total face value of the settlement. Originally, the parties valued the settlement at $25.3 million, comprised $10 million in cash, $10 million in product, and $5.3 million in attorneys' fees and costs. The proposed Amended Settlement now presented for approval has a face value of $14 million, comprised of $7 million in cash and $7 million in product. Unlike the previous iteration, attorneys' fees and costs of $3.8 million come out of the cash component, instead of separately from Iovate. The amount available to class members (as opposed to Class Counsel) has therefore been reduced from a purported $20 million to $10.2 million (49% reduction), with the "cash" portion available to the class (as opposed to Class Counsel) reduced from $10 million to around $3.2 million (68% reduction).

Thus, the "amount offered in settlement" has seemingly, on its face, decreased materially from the prior settlement, though it does not appear that the basic prospects of the case have changed. *See generally* Rodriguez Objection, Dkt. No 246 at 9-10 (arguing that high volume of sales, FDA involvement, and product recall indicate a strong case).

3

*DREMAK V. IOVATE HEALTH SCIENCES GROUP, INC., ET AL.*, NO. 09-CV-1088-BTM-KSC
PRELIMINARY OBSERVATIONS & OBJECTIONS CONCERNING AMENDED SETTLEMENT

1  Although this reduction in total value may in part be a consequence of the parties removing
2  the previous settlement's reversion provisions, which Ms. Rodriguez successfully argued
3  were objectionable, *see generally id.* at 1, 10-13, she respectfully requests that the Court
4  elicit from the parties a cogent and thorough explanation of why this revised settlement
5  meets the standard. Ms. Rodriguez would like to consider the parties' arguments in this
6  regard before deciding ultimately whether the current Settlement amount offered is, in fact,
7  objectionable. Further, Ms. Rodriguez believes that it would be appropriate to take limited
8  discovery into Iovate's sales and related financial information to determine the true
9  strength of the amount offered in settlement, and hereby respectfully requests leave to serve
10 on Iovate and/or plaintiff document requests, and to take a deposition of a person
11 knowledgeable.

12 **B.     There May be Issues Relating to the In-Kind Product Component Relief**

13 Rodriguez initially objected that the product component of the settlement was
14 effectively a "claims-made" arrangement where unclaimed product stayed with Iovate
15 (who could then convert it to money to satisfy its obligations to individuals with personal
16 injury claims), and not a true common fund. Dkt. No. 246 at 8-9, 10-11 n.6. In the revised
17 settlement, Iovate has addressed this objection by committing to dispense unclaimed,
18 "Additional Product" "to the general public," at retail. Dkt. No. 312 at 18 ¶ IV.C.6.d. The
19 Additional Product will be bundled with product offered at its normal retail price, including
20 discounts, sales, "Bonus size" amounts, "buy 2 get 1 free" promotions, and any other
21 promotions, and "will not replace or be in lieu of any promotion, additional product or
22 discounting occasionally offered by Iovate." *Id.*

23 This distribution strategy is overtly promotional in nature, and thus there is a concern
24 that the relatively large ratio of product to cash in the settlement may result in a substantial
25 amount of the settlement's value being devoted to increasing Iovate's good will among the
26 general public, many of whom may not even be class members. This is particularly so
27 since, after attorneys' fees, only $3.2 million of cash is left—and some of that has to pay
28 notice, administration, and $80,000 in incentive awards, leaving very little for class

4

*DREMAK V. IOVATE HEALTH SCIENCES GROUP, INC., ET AL.*, NO. 09-CV-1088-BTM-KSC
PRELIMINARY OBSERVATIONS & OBJECTIONS CONCERNING AMENDED SETTLEMENT

members to actually claim.[3] Moreover, the settlement requires Iovate to submit to Class Counsel a distribution plan within 60 days of the Effective Date. Dkt. No. 311-2 at 21-22. Delaying identification of the product may be justified because it is difficult to predict the specific products that will be available and conform to the Settlement at the time of the Effective Date, but additional product making up the remaining value is determined later, the products involved do not get pre-approval of the Court, and the exact products distributed may not even be disclosed. Ms. Rodriguez would like to hear from the parties why they think this is an appropriate means of dealing with excess product and what benefit they believe it brings to the class before determining whether it is ultimately objectionable.

Finally, Ms. Rodriguez continues to note that the proposed products comprising the product component are subject to other lawsuits alleging that they are falsely advertised as safe and effective. Therefore, she believes some limited discovery into Iovate's efficacy claims is appropriate to evaluate the strength of the settlement—after all, providing aggrieved class members with ineffective product is no relief at all. Thus, she respectfully requests leave to serve some document requests and take a deposition of someone knowledgeable about the efficacy, and any clinical testing, of the product component.

### C. Class Counsel's Fees May be Excessive

Commensurate with the reduction in the overall settlement value, Class Counsel's proposed fee award has increased as a ratio of the settlement. Previously, its request of $5.3 million represented a 20.9% share of the $25.3 million constructive common fund. Now, its request of $3.8 million represents a 27.1% share of the class relief. Especially given what the procedural posture wherein the previous settlement seemed to enrich Iovate and Class Counsel at the expense of the class, Class Counsel's request for a larger proportionate share may be inappropriate. Moreover, the fee and expense request amounts to more than 54% of the class's cash component, disproportionately reducing the portion of the fund that class members previously overwhelmingly chose. This is especially troublesome since the

---

[3] The Court may recall that class members overwhelmingly chose cash, in a ratio of "maybe 80/20, . . . 90/10. Something like that." Dkt. No. 275, Oct. 22, 2013 Hrg. Tr. at 42.

*DREMAK v. IOVATE HEALTH SCIENCES GROUP, INC., ET AL.*, NO. 09-cv-1088-BTM-KSC
PRELIMINARY OBSERVATIONS & OBJECTIONS CONCERNING AMENDED SETTLEMENT

cash component must also pay for notice, administration, and incentive awards.

Ms. Rodriguez acknowledges that the smaller raw amount means that, if such an award is approved, Class Counsel may be receiving a smaller proportion of its lodestar, but this is not the only relevant consideration. Indeed, with respect to any lodestar cross-check, Ms. Rodriguez suggests that the quality of the billed time will vary greatly. For example, much of counsel's work in securing and advocating for the original settlement would not be compensable in an actual lodestar calculation, since Court determined that settlement was unfair, unreasonable, and inadequate.

Ms. Rodriguez would like to understand from Class Counsel why it believes it is entitled to an amount greater than the 20.9% it originally wanted (which would be equal to a fee and expense award of $2,926,000 on the $14 million fund), particularly when it has not really brought any incremental value to the class through the revised settlement.[4]

### D.   The Service Awards Still Appear to be Excessive

As Ms. Rodriguez argued, the prior settlement provided for $3,000 service awards to 40 plaintiffs named in the 21 false advertising cases—regardless of their level of participation—totaling a whopping $120,000. Dkt. No. 246 at 19. The proposed Amended Settlement now reduces the amount of the awards by 33%, to $2,000 each. But it still seeks those awards on behalf of both the 20 plaintiffs identified as the "Consolidated Complaint Plaintiffs" in the Stipulation of Settlement, and the 20 so-called "Other Class Plaintiffs," meaning "those persons, other than the Plaintiff and Consolidated Complaint Plaintiffs, who were named as a plaintiff in the MDL Class Actions." *See* Dkt. No. 311-2 at 7 ¶ 14; *id.* at 32-33 ¶ X.C. Thus, the total incentive awards is still quite high, $80,000. Ms.

---

[4] The $7 million cash component appears to be essentially exactly what Iovate was previously obligated to pay, perhaps even less. Previously, Iovate agreed to pay $5.3 million to Class Counsel, $1.4 million in class member claims, $120,000 in incentive awards (totaling $6.82 million), and some notice and administration costs. Given that a miniscule number of claimants will chose product, and that the product component mostly benefits Iovate in terms of good will, it is not clear there has been any incremental increase in the overall benefit to the class, in practical terms.

6

*DREMAK V. IOVATE HEALTH SCIENCES GROUP, INC., ET AL.*, NO. 09-CV-1088-BTM-KSC
PRELIMINARY OBSERVATIONS & OBJECTIONS CONCERNING AMENDED SETTLEMENT

Rodriguez believes that $2,000 incentive awards to so many plaintiffs, the vast majority of whom did nothing more than lend their names to tag-along lawsuits, may be objectionable, and is unsatisfied with the parties' previous response. *See generally* Dkt. No. 254 at 19-20 (arguing merely that "[t]he fact that some plaintiffs were not included in an amended complaint for strategic reasons does not mean they played no role," and that "[e]ach . . . stepped forward to protect the interests of the class by agreeing to represent class members in an original, transferred class action"). Ms. Rodriguez would like the parties to more adequately address the work each proposed incentive award recipient has done, whether there are significant differences among the recipients in terms of involvement, and what about their participation entitles them to $2,000 apiece—more than 44 times the amount unnamed class members, like Ms. Rodriguez, are entitled to recover under the Amended Settlement.

### E. The Amended Settlement Extends the Claims Period Past Final Approval, Obscuring the Class's Actual Relief

Ms. Rodriguez is concerned that the parties have set the "Claims Deadline" at "30 days after the date first set by the Court for the Final Approval Hearing." Dkt. No. 311-2 at 6 ¶ 9. By doing so, the parties can obscure the claims rate and actual benefit to the class, since that rate will not be known until well after the proposed settlement is up for final approval. Ms. Rodriguez would urge the parties to consider closing the claims period at least a week before Final Approval so that all interested parties may evaluate the settlement with the fullest information possible.

## CONCLUSION

Ms. Rodriguez acknowledges that the parties have made considerable progress toward a class settlement that is fair, reasonable, and adequate. However, she still has some question as to whether certain aspects can be improved for the class, and whether certain provision really are fair, reasonable, and adequate, especially in light of the prior proposed settlement agreement history here. After filing this preliminary brief, Ms. Rodriguez intends to work reasonably with the parties' counsel—to the extent they are willing—to

7

*DREMAK V. IOVATE HEALTH SCIENCES GROUP, INC., ET AL.*, NO. 09-CV-1088-BTM-KSC
PRELIMINARY OBSERVATIONS & OBJECTIONS CONCERNING AMENDED SETTLEMENT

obtain information that may assuage her concerns, or to suggest changes that everyone can live with, which benefit the Class. Thus, Ms. Rodriguez does not now intend to suggest that any aspect of the proposed Amended Settlement—aside from the two issues set forth in Point I—are actually objectionable at this point, while reserving the right to raise substantive objections in the event that the parties cannot resolve the above concerns.

Pursuant to the Court's April 22, 2014 Order Setting Preliminary Approval Hearing (Dkt. No. 313 at 2), I, Michelle Rodriguez, hereby set forth my handwritten, dated signature.

_____     5/6/14
Michelle Rodriguez           Date

DATED: May 6, 2014

Respectfully Submitted,
/s/ C. Benjamin Nutley
C. Benjamin Nutley
nutley@zenlaw.com
Kendrick & Nutley
1055 E Colorado Blvd., 5th Floor
Pasadena, CA 91106

Jack Fitzgerald (SBN 4294401)
jack@jackfitzgeraldlaw.com
The Law Office of Jack Fitzgerald, PC
2870 Fourth Avenue, Suite 205
San Diego, California 92103

Ronald A. Marron (SBN 175650)
ron@consumersadvocates.com
Law Offices of Ronald A. Marron, APLC
651 Arroyo Drive
San Diego, California 92103

**Counsel for Objector Michelle Rodriguez**

8